1  JOHN W. SPIEGEL (CA Bar No. 078935)
   LAWRENCE C. BARTH (CA Bar No. 123002)
2  TODD J. ROSEN (CA Bar No. 203156)
   MUNGER, TOLLES & OLSON LLP
3  355 South Grand Avenue, Suite 3500
   Los Angeles, CA  90071
4  Telephone:     (213) 683-9100
   Facsimile:     (213) 683-5152
5  Email:  John.Spiegel@mto.com
              Lawrence.Barth@mto.com
6              Todd.Rosen@mto.com

7  Counsel for Louis E. Caldera, Stuart A. Gabriel,
   Lyle E. Gramley, Gabrielle E. Greene, Hugh M.
8  Grant, Patrick C. Haden, Terrance G. Hodel,
   Robert L. Hunt II, Lydia H. Kennard, John F.
9  Seymour, and Bruce G. Willison

10 (Additional counsel listed on next page)

11            UNITED STATES BANKRUPTCY COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                 LOS ANGELES DIVISION

14

15 In re                                Case No.: 2:08-21752-BB

16 **INDYMAC BANCORP, INC.,**            Chapter 7
   **a Delaware corporation,**
17                                       **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT OF**
18              Debtor.                  **MOTION OF CURRENT AND/OR**
                                         **FORMER INDYMAC DIRECTORS AND**
19                                       **OFFICERS FOR DETERMINATION**
                                         **THAT CERTAIN INSURANCE**
20                                       **PROCEEDS ARE NOT SUBJECT TO THE**
                                         **AUTOMATIC STAY AND/OR RELIEF**
21                                       **FROM THE AUTOMATIC STAY UNDER**
                                         **11 U.S.C. § 362; DECLARATION OF TODD**
22                                       **J. ROSEN IN SUPPORT THEREOF**

23                                       Hearing Date and Time:
                                         Date:   October 28, 2008
24                                       Time:  10:00 a.m.
                                         Ctrm:  1475
25

26

27

28

5964997.4

1   D. JEAN VETA
    MICHAEL ST. PATRICK BAXTER
2   DAVID BAYLESS (CA Bar No. 189235)
    COVINGTON & BURLING LLP
3   1201 Pennsylvania Avenue, NW
    Washington, DC 20004
4   Telephone:    (202) 662-6000
    Facsimile:    (202) 662-6291
5   Email:  jveta@cov.com
              mbaxter@cov.com
6             dbayless@cov.com

7   Counsel for Michael W. Perry

8

9   ROBERT H. FAIRBANK (CA Bar No. 076359)
    RICHARD D. GLUCK (CA Bar No. 151675)
10  FAIRBANK & VINCENT
    11755 Wilshire Boulevard, Suite 2320
11  Los Angeles, CA 90025
    Telephone:    (310) 996-5520
12  Facsimile:    (310) 996-5530
    Email:  rfairbank@fairbankvincent.com
13            rgluck@fairbankvincent.com

14  Counsel for S. Blair Abernathy

15

16  JOHN K. VILLA
    STEPHEN D. ANDREWS (CA Bar No. 205961)
17  JASON T. WRIGHT
    WILLIAMS & CONNOLLY LLP
18  725 Twelfth Street, NW
    Washington, DC 20005
19  Telephone:    (202) 434-5117
    Facsimile:    (202) 434-5705
20  Email:  jvilla@wc.com
              jtwright@wc.com
21            sandrews@wc.com

22  Counsel for Richard H. Wohl

23

24

25

26

27

28

GREGORY S. BRUCH
JULIE A. SMITH (CA Bar No. 147178)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC  20006
Telephone:    (202) 303-1205
Facsimile:    (202) 303-2205
Email:  jasmith@willkie.com
         gbruch@willkie.com

MITCHELL J. AUSLANDER
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, N.Y. 10019.
Telephone:    (212) 728-8000
Facsimile:    (212) 728-8111
Email:  mauslander@willkie.com

Counsel for A. Scott Keys

# **TABLE OF CONTENTS**

**Page**

I.    FACTUAL BACKGROUND .......................................................................................... 2

    A.    The Bankruptcy Proceedings ................................................................ 2

    B.    The Actions .............................................................................................. 2

    C.    The D&O Policies ................................................................................... 3

    D.    The Fiduciary Policy ............................................................................. 5

    E.    Demands On The Insurance Policies And Current Status ...................... 6

II.    ARGUMENT ............................................................................................................. 7

    A.    The D&O Policies ................................................................................... 7

        (i)    Proceeds Payable To Insured Persons From The D&O Policies Are Not Subject To The Automatic Stay .......................................... 8

        (ii)    The Debtor's Status As A Potential Plaintiff Does Not Confer Upon It A Property Interest In The D&O Policies' Proceeds, Thus Rendering Them Subject To The Automatic Stay ................................... 10

        (iii)    Even If D&O Policy Proceeds Are Property Of The Debtor's Estate, Cause Exists To Grant Immediate Relief From The Automatic Stay .......................................................................... 11

    B.    The Fiduciary Policy ............................................................................. 13

        (i)    Cause Exists To Grant Relief From The Automatic Stay Because The Insured Persons Will Be Substantially Harmed If The Fiduciary Insurer Is Prevented From Paying Their Relevant Defense Costs ........... 14

III.    CONCLUSION ......................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Butner v. United States*,
   440 U.S. 48 (1979) ..................................................................................................... 11

*In re A Partners, LLC*,
   344 B.R. 114 (Bankr. E.D. Cal. 2006) ...................................................................... 14

*In re Adelphia Commc'ns. Corp.*,
   302 B.R. 439 (Bankr. S.D.N.Y. 2003) ....................................................................... 14

*In re Aheong*,
   276 B.R. 233 (B.A.P. 9th Cir. 2002) ......................................................................... 14

*In re Allied Digital Techs., Corp.*,
   306 B.R. 505 (Bankr. D. Del. 2004) .......................................................... 11, 13, 15

*In re Anchorage Nautical Tours*,
   102 B.R. 741 (B.A.P. 9th Cir. 1989) ...................................................................... 8, 10

*In re Benz*,
   368 B.R. 861 (B.A.P. 9th Cir. 2007) ...................................................................... 10, 12

*In re Boston Reg'l Med. Ctr.*,
   285 B.R. 87 (Bankr. D. Mass. 2002) ....................................................................... 10, 14

*In re CHS Elecs., Inc.*,
   261 B.R. 538 (Bankr. S.D. Fla. 2002) .............................................................. 10, 13, 14

*In re Circle K Corp.*,
   121 B.R. 257 (Bankr. D. Ariz. 1990) ....................................................................... 13

*In re Cybermedica, Inc.*,
   280 B.R. 12 (Bankr. D. Mass. 2002) ..................................................................... 14, 15

*In re Daisy Sys. Sec. Litig.*,
   132 B.R. 752 (N.D. Cal. 1991) .................................................................................. 8

*In re Enron Corp.*,
   No. 01-16034, 2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002).............................. 12, 13

*In re Imperial Corp. of Am.*,
   144 B.R. 115 (Bankr. S.D. Cal. 1992) ..................................................................... 8, 16

*In re Laminate Kingdom, LLC*,
   No. 07-10279, 2008 WL 1766637 (Bankr. S.D. Fla. March 13, 2008) ................. 9, 10, 11, 15

*In re Louisiana World Exposition Inc.*,
   832 F.2d 1391 (5th Cir. 1987).................................................................................... 8

*In re Minoco Group of Cos. Ltd.*,
   799 F.2d 517 (9th Cir. 1986)..................................................................................... 8

*In re Sacred Heart Hosp. of Norristown*,
   182 B.R. 413 (Bankr. E.D. Pa. 1995)...................................................................... 8, 14

*In re World Health Alternatives*,
   369 B.R. 805 (Bankr. D. Del. 2007) ..................................................................... 9, 10, 11

*Matter of Cont'l Airlines, Inc.*,
  134 B.R. 536 (Bankr. D. Del. 1991) ...................................................................................... 12

### STATUTES AND RULES

11 U.S.C. § 362 ...................................................................................... 1, 3, 7, 12, 14, 16

1    This motion is brought by the following current and/or former directors and

2  officers of IndyMac Bancorp, Inc. ("IndyMac" or "Debtor") and/or IndyMac Bank, F.S.B.: Louis

3  E. Caldera, Stuart A. Gabriel, Lyle E. Gramley, Gabrielle E. Greene, Hugh M. Grant, Patrick C.

4  Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, John F. Seymour, Bruce G.

5  Willison, Michael W. Perry, S. Blair Abernathy, Richard H. Wohl, and A. Scott Keys

6  (collectively, "Movants").  By this motion, Movants seek an order declaring that the automatic

7  stay does not apply to certain proceeds of IndyMac insurance policies or, in the alternative,

8  granting immediate relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), so that

9  Movants (and other Insured Persons)[1] may enforce their right to receive payments, advances

10  and/or reimbursements under the policies.

11    The insurance policies at issue were specifically negotiated and purchased to

12  protect Movants against losses — including defense costs — arising from certain types of claims

13  that might be made against them in their capacity as officers and/or directors of IndyMac.

14  Precisely those sorts of claims have now been leveled against them.  As described below, they

15  have been individually named in numerous lawsuits, and certain of them have been subpoenaed in

16  connection with ongoing governmental investigations, all directly relating to their positions as

17  officers and/or directors of IndyMac (or its subsidiaries).  Yet, Movants are being denied access

18  to the funds necessary to defend themselves, solely because of uncertainty regarding the

19  application of the automatic stay.[2]   In situations such as this, Courts routinely have granted the

20  relief sought by this motion, to eliminate uncertainty and allow directors and officers to access

21  insurance proceeds.

22    As set forth in detail below, there are two groups of insurance policies addressed

23  by this motion.  The first — defined below as the "D&O Policies" — contains "priority-of-

---

[1] All present and former directors, officers and employees of the Debtor (or any Debtor subsidiary) who are covered by the applicable Insurance Policies, including but not limited to each of the Movants, are referred to collectively as the "Insured Persons."  The determination of who is covered under the applicable Insurance Policies is not before the Court, and is a matter ultimately to be determined between the insureds and the relevant insurance companies

[2] As disclosed to the Debtor, counsel for certain Movants received pre-petition retainers from IndyMac for defense costs, totaling, in the aggregate, $950,000.  The current unpaid defense costs incurred by Movants, however, already exceed that amount.  Rosen Decl., ¶ 14.

payments" provisions, which expressly and unambiguously subordinate any rights the Debtor may have in policy proceeds to the rights of directors and officers.  In cases involving such express priority-of-payments provisions, courts routinely have concluded that policy proceeds are *not* the property of the debtor's estate, and thus have issued declarations stating that the automatic stay does not preclude directors and officers from accessing policy proceeds to pay their defense costs and other covered losses.  This Court should do the same, or it may reach the same result by finding that cause exists to lift or modify the automatic stay to allow Movants to enforce their contractually superior rights to policy proceeds.

The second type of policy at issue — referred to as the "Fiduciary Policy" — also contains an express priority-of-payments provision, while the application of that provision is more limited than the one contained in the D&O Policies.  Although the automatic stay arguably may apply to the proceeds of such policy, clear authority exists for the proposition that good cause exists to lift or modify the stay, so as to allow Movants immediate access to insurance proceeds to which they are contractually entitled, and without which their ability to defend against pending litigation (and other proceedings) may be irreparably harmed.

## I.
## FACTUAL BACKGROUND

### A.    The Bankruptcy Proceedings

On July 31, 2008 (the "Petition Date"), IndyMac filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, shortly after the Office of Thrift Supervision had shut down its subsidiary bank — IndyMac Bank, F.S.B. — and appointed the Federal Deposit Insurance Corporation as receiver.  Declaration of Todd J. Rosen (the "Rosen Declaration"), ¶ 4.

### B.    The Actions

Both prior to and following the Petition Date, numerous lawsuits were filed against IndyMac, Movants, and other individual defendants.  Rosen Decl., ¶ 12.  The lawsuits relevant to this motion fall into two categories: (1) purported class actions alleging violations of the securities laws (the "Securities Actions"), and (2) purported class actions alleging breaches of

fiduciary duty under the Employee Retirement Income Securities Act ("<u>ERISA</u>") ("the "<u>Fiduciary</u>

<u>Actions</u>").  Together, the Securities Actions and the Fiduciary Actions are referred to as the

"<u>Actions</u>."[3]  In addition, certain Movants are also subjects of ongoing active governmental

investigations (and have been subpoenaed to produce documents to the Securities Exchange

Commission), for which Movants' defense costs are covered by the D&O Policies discussed

below.  Rosen Decl., ¶ 12.

Although the Actions are stayed as to the Debtor pursuant to 11 U.S.C. § 362, they

are not stayed as to Movants.[4]  Thus, in defending the Actions, Movants have incurred and are

continuing to incur legal fees and related expenses.  Although Movants believe that the

allegations of the Actions are without merit, they nevertheless remain exposed to mounting

defense costs and potential adverse judgments.  Rosen Decl., ¶ 13.

## C.    <u>The D&O Policies</u>

For many years prior to the Petition Date, the Debtor purchased director and

officer liability insurance ("<u>D&O Insurance</u>"), specifically for the benefit of its directors, officers

and employees, and, under certain circumstances, the Debtor itself.  Rosen Decl., ¶ 6.

Among the D&O Insurance policies purchased to cover claims made in the 2007-

08 coverage year were the following:

- Directors, Officer, and Company Liability Policy, policy number QA006807, as amended and modified, from time to time ($10 million in coverage), with Lloyd's of London;

- Zurich American Insurance Company, policy number DOC-9035134-00 ($10 million in excess coverage);

---

[3]    Although every attempt has been made to include in Exhibit K (attached to the Rosen Declaration) all pending law suits at the time that this motion was filed, it is possible that there are other matters that have not been listed.  The term "Actions" is therefore intended to be construed broadly to include not only matters listed in Exhibit K but all other matters, investigations, and actions filed, pending, or initiated, now or in the future, against any Insured Persons (as defined below).

[4]    Even if certain actions were to be stayed in the future against the individual defendants, Movants already have incurred substantial unreimbursed defense costs and would need to incur significant additional costs in preparation for the resumption of litigation against them.  *See* Rosen Decl., ¶ 13.

- Federal Insurance Company, policy number 8208-0386 ($10 million in excess coverage); and

- National Union Fire Insurance Co. of Pittsburg, Pa. (AIG), policy number 966-82-76 ($10 million in excess coverage).

For claims made during the 2008-09 coverage year, IndyMac purchased D&O Insurance with the same coverage limits as the year before, although two of the excess policies were written by different carriers:

- Directors, Officer, and Company Liability Policy, policy number QA011608/1, as amended and modified, from time to time (together with 2007-08 Lloyd's of London policy, the "Primary D&O Policy"[5]) ($10 million in coverage), with Lloyd's of London (the "Primary Insurer");

- Zurich American Insurance Company, policy number DOC-9035134-01 ($10 million in excess coverage);

- Twin City Fire Insurance Company, policy number 00-DA-0248886-8 ($10 million in excess coverage); and

- Continental Casualty Company, policy number DOX-287221440 ($10 million in excess coverage).

For purposes of this motion, the six excess policies described above (covering both the 2007-08 and 2008-09 coverage years) are referred to as the "Excess D&O Policies." The Primary D&O Policy and the Excess D&O Policies are referred to collectively as the "D&O Policies." The six carriers who issued the D&O Policies are referred to collectively as the "D&O Insurers." A true and correct copy of each Primary D&O Policy is attached to the Rosen Declaration as Exhibits A and E. True and correct copies of the Excess D&O Policies are attached to the Rosen Declaration as Exhibits B, C, D, F, G, and H.

Subject to certain conditions that are not relevant to this motion, Insured Persons (including directors and officers) are entitled (1) to have legal fees and expenses incurred in the defense of covered claims and actions advanced to them by the D&O Insurers; and (2) to be indemnified for certain other types of losses suffered in connection with covered claims,

---

[5] Because the 2007-08 and 2008-09 Lloyd's of London policies do not differ in any material respect, they are referred to collectively in the singular for ease of reference.

including damages, judgments and settlements up to policy limits.  *See* Rosen Decl., Exhs. A &

E, Clause I (Insuring Clauses).

Notably for purposes of this motion, the Primary D&O Policy contains a "priority-

of-payments" provision that expressly requires the Primary Insurer to pay covered losses —

including defense costs — of all Insured Persons *before* it pays any covered losses of the Debtor:

> Payments of **Loss** by Underwriters shall reduce the Limit of Liability.
> Underwriters shall pay **Loss** in the order in which **Loss** incurred.  However, if
> **Loss** payable under Insuring Clause 1.A. [Director and Officer Loss] and one
> or more of the other Insuring Clauses is incurred contemporaneously,
> Underwriters shall pay **Loss** payable under Insuring Clause I.A.  After such
> **Loss** has been paid, if the Limit of Liability has not been exhausted,
> Underwriters shall then pay **Loss** payable under Insuring Clause
> I.B.[Company Loss due to Director and Officer Indemnification].  After such
> Loss has been paid, if the Limit of Liability has not been exhausted,
> Underwriters shall then pay **Loss** payable under Insuring Clause I.C.
> [Company Loss].  Underwriters have no obligation to pay **Loss** after
> exhaustion of the Limit of Liability.

Rosen Decl., Exhs. A & E, Clause IV.E. (hereinafter, the "D&O Priority-of-Payments

Provision").  By virtue of that express provision, the rights of Insured Persons in the proceeds of

the D&O Policies are superior to any rights of the Debtor to the proceeds of such policies.

The Excess D&O Policies "follow form," *i.e.,* they incorporate the Primary D&O

Policy's terms, conditions and exclusions unless expressly provided otherwise.  *See, e.g.*, Rosen

Decl., Exh. B, Clause I (Insuring Agreement).  The Excess D&O Policies do not expressly

provide that they do not follow the form of the D&O Priority-of Payments Provision and,

accordingly, that provision effectively is made a part of all the D&O Policies.

**D.    The Fiduciary Policy**

The D&O Policies specifically exclude coverage for claims against Insured

Persons for violations of ERISA (or similar provisions federal, state, or local law).  *See* Rosen

Decl., Exhs. A & E, Clause III.E.  To fill that gap, the Debtor purchased stand-alone, excess

fiduciary insurance that specifically covers Insured Persons (and, under certain circumstances, the

Debtor) for such claims.  Rosen Decl., ¶ 10.  Among the policies purchased to cover claims for

the 2007-08 coverage year was the following:

- XL Specialty Insurance Company, policy number ELU096702-07 ($10 million in excess fiduciary coverage).

And for the 2008-09 coverage year, IndyMac purchased a nearly identical policy:

- XL Specialty Insurance Company, policy number ELU103334-08 ($10 million in excess fiduciary coverage).

For purposes of this motion, the two above-described fiduciary policies are collectively referred to as the "Fiduciary Policy"[6] (and, together with the D&O Policies, as the "Insurance Policies").  The carrier on the Fiduciary Policy is referred to as the "Fiduciary Insurer."  A true and correct copy of each Fiduciary Policy is attached to the Rosen Declaration as Exhibit I and J.  As with the D&O Policies, and again subject to certain conditions that are not relevant to this motion, Insured Persons under the Fiduciary Policy (including directors and officers) are entitled (1) to have legal fees and expenses incurred in the defense of covered claims and actions advanced to them; and (2) to be indemnified for certain other types of losses suffered in connection with covered claims, including damages, judgments and settlements.  *See* Rosen Decl., Exhs. I & J, Clause I (Insuring Agreements).

The Fiduciary Policy contains a priority-of-payments provision like the one in the D&O Policies, with one relevant difference.  *See* Rosen Decl., Exhs. I & J, Endorsement No. 6 (Priority of Payments Endorsement).  Specifically, the provision in the Fiduciary Policy is triggered only when claimed losses exceed the policy's remaining limits of liability, which is not presently the case.  Accordingly, for purposes of this motion, the Fiduciary Policy is treated as though it does not contain a priority-of-payments provision.[7]

**E.    Demands On The Insurance Policies And Current Status**

In accordance with the Insurance Policies, Movants have made demand on the D&O Insurers and the Fiduciary Insurer to advance the defense costs incurred (and to be

---

[6]    Because the 2007-08 and 2008-09 XL fiduciary policies do not differ in any relevant, material respect, for ease this motion refers to them collectively in the singular.

[7]    Though not the subject of this motion, Movants note that there are additional excess insurance policies that provide additional, direct coverage for Insured Persons only (and not the Debtor), in the event that the Policies' limits are exhausted or that defense costs or other loss is not paid by the D&O Insurers and Fiduciary Insurer.  Movants reserve all rights with respect to those policies.

5964997.4

incurred) in the Actions.[8]  Rosen Decl., ¶ 15.

Movants are informed and believe that, prior to advancing such costs, both the Primary Insurer and Fiduciary Insurer will require an affirmative order of this Court declaring that advancing such defense costs and other covered losses will not expose them to liability for violating the automatic stay imposed by 11 U.S.C. § 362.  Rosen Decl., Exh. 16.

## II.
## ARGUMENT

As discussed above, certain of the Actions are covered by the D&O Policies. The Fiduciary Actions are covered by the Fiduciary Policy.  Accordingly, Movants require access to the proceeds of both sets of policies if they are to defend themselves adequately in the litigation now pending against them.  Clear authority supports their immediate right to proceeds of both sets of policies.

Because the D&O Policies contain a slightly different priority-of-payments provision from that of the Fiduciary Policy, this motion addresses Movants' rights of access to the proceeds of each set of policies separately.

A.    **The D&O Policies**

Under the D&O Priority-of-Payments Provision described (and set forth) above, Movants' *present* rights to the proceeds of the D&O Policies are expressly superior to any *contingent* rights that the Debtor *may* have in such proceeds.  Proceeds of the D&O Policies payable to Movants are not subject to the automatic stay, and, therefore, relief from the automatic stay is unnecessary before Movants may access the proceeds of those policies.  Alternatively, if the automatic stay is deemed to apply for any reason, then cause exists for this Court to lift or modify the stay to the extent necessary to allow Movants to enforce their contractual rights under the D&O Policies.

---

[8]    This motion does not require the Court to determine whether the Actions are covered by the 2007-08 or the 2008-09 Insurance Policies.  Movants seek to access policy proceeds from *either* coverage year.  Because the coverage provided by the Insurance Policies did not change in any relevant respect between the two years, the arguments presented in this memorandum apply to both.  The parties reserve all rights and do not seek a determination as to which coverage year is applicable to any covered loss.

(i)     Proceeds Payable To Insured Persons From The D&O Policies Are Not Subject To The Automatic Stay

A determination as to whether the proceeds of an insurance policy are subject to the automatic stay requires an analysis of the particular facts of a case, including the particular terms and conditions of the policies at issue.  Where an insurance policy provides direct coverage to directors and officers, but not to the debtor itself, the prevailing view is that policy proceeds will not be considered property of the estate and, therefore, not subject to the automatic stay.  *See, e.g., In re Louisiana World Exposition Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987) (debtor has no ownership interest in proceeds from a liability policy where the obligation of the insurance company is only to the directors and officers);  *In re Daisy Sys. Sec. Litig.*, 132 B.R. 752, 755 (N.D. Cal. 1991) (following *Louisiana World Exposition Inc*); *In re Imperial Corp. of Am.*, 144 B.R. 115, 118 (Bankr. S.D. Cal. 1992) (following *Louisiana World Exposition Inc.*).

At the other end of the spectrum, where a policy provides direct, unsubordinated coverage to the debtor — and thus (i) proceeds are payable either to the debtor; (ii) or depletion of proceeds would have an adverse effect on the estate — then proceeds generally will be considered property of the estate and subject to the automatic stay.  *See, e.g., In re Minoco Group of Cos. Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 419-21 (Bankr. E.D. Pa. 1995).

Both logic and the unambiguous terms of the policy language reveal that the D&O Policies at issue here provide direct, primary coverage to only directors and officers and are not subject to the automatic stay.  In this case, the D&O Priority-of-Payments Provision expressly dictates that Insured Persons must be paid policy proceeds first.  In other words, it expressly subordinates any potential claim of the Debtor to proceeds of the D&O Policies to claims of the Insured Persons.  The Debtor thus having subordinated itself contractually, the rights to which it is subordinated cannot be deemed property of its bankruptcy estate.  *See, e.g., In re Anchorage Nautical Tours*, 102 B.R. 741, 744-45 (B.A.P. 9th Cir. 1989) ("When a purchaser of a policy assigns the proceeds elsewhere, the assignee owns the proceeds as opposed to the bankruptcy estate of the policy owner; the broad concepts of estate property and its proceeds under [§] 541 do

- 8 -

1    not bring into the estate property that the debtor would not own if solvent.") (citing *Louisiana*

2    *World Exposition*, 832 F.2d at 1401).

3                This conclusion — in addition to being entirely logical — is consistent with the

4    Bankruptcy Court for the District of Delaware's recent decision in *In re World Health*

5    *Alternatives*, 369 B.R. 805, 811 (Bankr. D. Del. 2007).  There, the court found that proceeds of

6    debtor's D&O insurance policy were *not* property of the estate, where the policy contained a

7    priority-of-payments endorsement.  In that case, the bankruptcy trustee initiated an adversary

8    proceeding against the company's former directors and officers alleging, among other things,

9    breaches of fiduciary duty and unjust enrichment.  The trustee petitioned the bankruptcy court to

10   enjoin the approval of a separate shareholder-litigation settlement agreement to be funded with

11   proceeds for the D&O insurance policies and, instead, to direct the transfer of the proceeds of the

12   policy to the trustee.  The court refused, noting that the estate had "no right to any Coverage A

13   proceeds, which insures only World Health's officers and directors."  *Id*.  The court found that the

14   existence of a priority-of-payments endorsement — which, as here, subordinates the debtor's

15   coverage to that of the directors and officers under Coverage A — rendered such subordinated

16   coverage so remote that it was not reasonably probable that the trustee could succeed in arguing

17   that policy proceeds were property of the estate, or that the trustee had even a co-equal interest in

18   the proceeds.  *Id*.  Just as in  *World Health*, Movants here seek to enforce their rights under

19   "Coverage A" of the D&O Policies, which insures only the Debtor's directors and officers, and to

20   which the Debtor's potential claims as an additional insured are expressly subordinate.

21               The result urged by Movants is also consistent with that reached by the

22   Bankruptcy Court for the Southern District of Florida in *In re Laminate Kingdom, LLC*,  No. 07-

23   10279, 2008 WL 1766637 (Bankr. S.D. Fla. March 13, 2008) (attached as Appendix A).  There,

24   as here, the insurance policy at issue provided coverage to the directors, officers and debtor.  *Id*.

25   There, as here, the relevant policy contained a priority-of-payments provision specifically

26   subordinating the debtor's interest in policy proceeds to that of the directors and officers, leaving

27   the debtor with "only a contingent, residual interest in the Policy's proceeds."  *Id*. at *3.  The

28   court held that insurance proceeds payable under the policy were not property of the estate, and

- 9 -

1    thus not subject to the automatic stay. *Id.* The court explained that, because of the priority-of-

2    payments provision, any depletion of proceeds to pay the officers and directors' defenses costs

3    would *not* diminish the protection afforded the debtor under the clear terms of the insurance

4    policy. *Id.* The same can be said in this case. Depletion of the D&O Policies' proceeds to pay

5    the Insured Persons' defense costs and other loss may diminish limits available to the Debtor, but

6    it will *not* vitiate any property interest or reasonable contractual expectation that the Debtor may

7    have in the D&O Policies. *Id.*; *Anchorage Nautical Tours*, 102 B.R. 744-45; s*ee also, e.g.*, *In re*

8    *Benz*, 368 B.R. 861, 867 (B.A.P. 9th Cir. 2007) ("[T]he Bankruptcy Code does not and should not

9    grant a debtor greater rights and powers under the contract than he had outside of bankruptcy.")

10   (citation omitted).

11          Just as in *World Health* and *Laminate Kingdom*, the automatic stay does not apply

12   to prevent payments by the D&O Insurers to Movants and other Insured Persons.

13   (ii)    The Debtor's Status As a *Potential* Plaintiff Does Not Confer Upon It a Property
              Interest In the D&O Policies' Proceeds, Thus Rendering Them Subject To the
14            Automatic Stay

15          The Debtor cannot assert a cognizable property interest in proceeds of the D&O

16   Policies — which might subject such proceeds to the automatic stay — simply by alleging that it

17   *may* hypothetically become a plaintiff and seek to recover from the D&O Policies at some point

18   in the future. *World Health*, 369 B.R. at 811 (citing *In re Allied Digital Techs., Corp.*, 306 B.R.

19   505, 512 (Bankr. D. Del. 2004)); *accord*, *e.g.*, *In re Boston Reg'l Med. Ctr.*, 285 B.R. 87, 91

20   (Bankr. D. Mass. 2002) ("[Debtor] can have an interest in the proceeds of the policy only if it has

21   a claim *as an insured*, not merely as a plaintiff against a defendant who is an insured . . . ."); *In re*

22   *CHS Elecs., Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2002) ("[T]he [Bankruptcy] Code provides

23   the Trustee no different status than a non-bankruptcy plaintiff with an unliquidated claim [that]

24   may be covered by insurance proceeds."); *id.* ("[T]he estate is merely another litigant wishing to

25   pursue claims against the Ds and Os.") (citation omitted).

26          Simply put, any assertion by the Debtor that its recovery from a *potential* suit

27   against Movants *may* be diminished by permitting them access to the D&O Policies' proceeds

28   does not provide a basis for limiting Movants' rights to such proceeds to defend the Actions. *See,*

1      *e.g.*, *World Health*, 369 B.R. at 811 ("In this way, [Debtor] is no different than any third party

2      plaintiff suing defendants covered by a wasting Policy.").

3          (iii)    Even If D&O Policy Proceeds Are Property Of The Debtor's Estate, Cause Exists
                    To Grant Immediate Relief From The Automatic Stay

4
5                   Reason and authority lead to the conclusion that D&O Policy proceeds are not

6      subject to the automatic stay.   If, however, the Court chooses to view them as subject to the stay,

7      Movants are entitled to immediate relief to access those proceeds for defense purposes.

8                   As the Court well knows, it is within its discretion to grant relief from the automatic stay

9      on request from a party in interest for "cause." 11 U.S.C. § 362(d)(1).  In *Allied Digital*, after

10     holding that insurance proceeds there were *not* property of the estate subject to the automatic stay,

11     the court went on to hold, in the alternative, that, even if the proceeds were deemed property of

12     the estate, the stay should be lifted for cause.  *Allied Digital*, 306 B.R. at 513.  Movants seek the

       same alternative relief here.

13
14                  Cause sufficient to lift the stay is manifest.  First, even if the Debtor's estate is

15     deemed to have some contingent or hypothetical property interest in proceeds of the D&O

16     Policies, that limited interest should not preclude Movants (and other Insured Persons) from

17     exercising their *present* rights to proceeds in which they have first priority under the express

18     terms of those policies.  *See* Exh. __, Clause IV.E; *see also Laminate Kingdom*, 2008 WL

19     1766637, at *3 ("[T]he estate has only a contingent, residual interest in the Policy's proceeds;

20     and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does

21     not diminish the protection the Policy affords the estate, as such protection is only available after

       the Costs of Defense are paid.").

22
23                  In or out of bankruptcy, the D&O Policies are like any other contract — governed

24     by the express terms of the policies, including the D&O Priority-of-Payments Provision and

25     applicable state law.  *See, e.g.*, *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property

26     interests are created and defined by state law.  Unless some federal interest requires a different

27     result, there is no reason why such interests should be analyzed differently simply because an

28     interested party is involved in a bankruptcy proceeding.").  Moreover, even if the Debtor has

5964997.4

1    some interest in the proceeds that is deemed property of the estate, "[t]o the extent that such an

2    interest is limited in the hands of the debtor, it is equally limited in the hands of the estate . . . ."

3    *Matter of Cont'l Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) (citation omitted);

4    *accord, e.g.*, *Benz*, 368 B.R. at 867 ("[T]he Bankruptcy Code does not and should not grant a

5    debtor greater rights and powers under the contract than he had outside of bankruptcy.") (citation

6    omitted). The Debtor's estate is bound by the D&O Priority-of-Payments Provision and does not

7    have any greater interest in the policy proceeds than it had prior to the bankruptcy filing.

8          Under circumstances substantially similar to those presented here, the Bankruptcy

9    Court for the Southern District of New York granted relief from the automatic stay so that

10    directors and officers could unconditionally exercise their contractual rights to payment of

11    defense costs under an insurance policy that contained a priority-of-payments endorsement. *In re*

12    *Enron Corp.*, No. 01-16034, 2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002) (Oral Decision,

13    Transcript of Hearing of April 11, 2002, at 15 (ECF #3278) (attached as Appendix B)). In *Enron*,

14    Judge Gonzalez ruled that the automatic stay should be lifted precisely because the insurance

15    policy at issue contained a priority-of-payments endorsement, permitting the unconditional

16    advancement of defense costs to the directors and officers:

17
18        The D&O Policy provides for coverage of the directors and officers, indemnification coverage for the Debtor, and entity coverage for the Debtor.

19        Pursuant to the terms of the D&O Policy, the directors have a right to advancement of defense costs under a priority of payments endorsement.

20
21        The Debtors' entity coverage and its indemnification coverage are expressly subordinated to the rights of the directors and officers under the [insurance] policy.

22        As the Debtors' property rights are defined by state law, it is that law that
23    governs the contractual obligation; thus, any directors and officers currently due defense costs covered by the policy must be paid from the proceeds of the
24    policy first. The Debtors are then entitled to have their own claims for defense costs paid.

25        . . . .

26        With respect to the payment of officers and directors' defense costs, to the
27    extent that any such payments would negatively impact the Debtors' interest in the proceeds of the D&O policy, that result is dictated by the negotiated terms
28    of the policy.

- 12 -

> As certain officers and directors may have present rights to payment of defense costs, the fact that certain parties may in the future assert claims and potentially become entitled to payment from the insurance policies does not preclude those who are currently entitled to payment from receiving it.
>
> In any case, the parties are bound by the contractual provisions of the policy. The Debtors' interest in the policy is limited by its contractual provisions including a priority advancement and payment obligations contained in those policies. The court cannot rewrite the provisions of the contract.

*Id*. at 11-13. As in *Enron*, the parties here are bound by the D&O Priority-of-Payments Provision, which entitles Movants to a present right of payment of defense costs, notwithstanding that other parties may become entitled to payment under the same insurance policies pursuant to a subordinated interest.

The Court may also consider the impact of the stay on the interested parties, and relative harm if the stay is not lifted. *See, e.g.*, *Allied Digital*, 306 B.R. at 514 ("[W]ithout funding, the Individual Defendants will be prevented from conducting a meaningful defense . . . and may suffer substantial and irreparable harm."). As in *Allied Digital*, Movants will suffer substantial and irreparable harm if their defense costs are not promptly funded as litigation against them proceeds, and they are unable to adequately defend against the litigation. By contrast, the Debtor will not be harmed if the stay is lifted because it is contractually subordinated in the proceeds, and thus entitled to nothing from the D&O Policies *until and unless* Movants' claims have been satisfied. Accordingly, even if the automatic stay is deemed to apply, cause exists for this Court to lift or modify it to the extent necessary to allow the Insured Persons to enforce their contractual rights.

**B.      The Fiduciary Policy**

As with the D&O Policies, the Fiduciary Policy provides entity coverage in addition to coverage for the individual Insured Persons. Although the Fiduciary Policy contains a priority-of-payments provision in favor of Movants — providing them with a superior right to the Debtor in policy proceeds for certain kinds of covered losses — the priority-of-payments provision is not applicable to defense costs. Accordingly, it is less clear that Movants can access the proceeds of that policy solely for the payment of defense costs without relief from the automatic stay. *See, e.g.*, *In re Circle K Corp.*, 121 B.R. 257, 261 (Bankr. D. Ariz. 1990); *CHS*

- 13 -

1  *Elecs.*, 261 B.R. at 544; *Sacred Heart Hosp. of Norristown*, 182 B.R. at 419-21.

2          Nonetheless, courts routinely grant such stay relief.  *E.g., Boston Reg'l Med. Cent.*,

3  285 B.R. at 97-98; *In  re Cybermedica, Inc.*, 280 B.R. 12, 18-19 (Bankr. D. Mass. 2002); *CHS*

4  *Elecs.*, 261 B.R. at 544; *see also In re Adelphia Commc'ns. Corp.*, 302 B.R. 439, 443-46 (Bankr.

5  S.D.N.Y. 2003) (approving of payment of limited D&O defense costs, despite policy at issue *not*

6  including a priority-of-payments provision).

7      (i)    <u>Cause Exists To Grant Relief From The Automatic Stay Because The Insured</u>

8              <u>Persons Will Be Substantially Harmed If The Fiduciary Insurer Is Prevented From</u>
<u>Paying Their Relevant Defense Costs</u>

9          As discussed above, this Court, in its discretion, may grant relief from the

10  automatic stay on request from a party in interest for "cause."  11 U.S.C. § 362(d)(1).  The term

11  "cause" as used in § 362(d)(1) "is a broad and flexible concept [that] permits a bankruptcy court,

12  as a court of equity, to respond to inherently fact-sensitive situations."  *In re A Partners, LLC*,

13  344 B.R. 114, 127 (Bankr. E.D. Cal. 2006).  Cause to lift the automatic stay may exist where (i)

14  the stay harms the movant, and (ii) lifting the stay will not unjustly harm the debtor or other

15  creditors.  *In re Aheong*, 276 B.R. 233, 250 (B.A.P. 9th Cir. 2002).  Just as discussed in the

16  previous section, Movants need immediate access to the proceeds of the Fiduciary Policy to

17  defend themselves against the Fiduciary Actions (which are excluded from coverage under the

18  D&O Policies).   Any potential harm to the Debtor is just that — potential and speculative.  The

19  equities tip decidedly in favor of Movants.

20          On facts similar to those presented here, the court in *Boston Regional Medical*

21  *Center* granted a motion to allow an insurer to fund directors and officers' defense costs from the

22  proceeds of an insurance policy that contained both individual and entity coverage, but no

23  priority-of-payments provision.  *Boston Reg'l Med. Cent.*, 280 B.R. at 97-98.  The court viewed

24  the motion as one for a preliminary injunction, and concluded that the directors and officers

25  would be *irreparably harmed* if they could not access insurance proceeds in sufficient time to

26  conduct their defense.  By contrast, the court observed that any potential harm to the debtor was

27  uncertain, less severe than the opposing harm, and likely not irreparable.  *Id.* at 95.  In reaching

28  this conclusion, the court reasoned that (i) the proposed payment would not exhaust the policy

            - 14 -

1    limits, (ii) there would in fact be no harm to the debtor if claims against the policy did not exceed

2    the policy limit, and (iii) there would be no harm to the debtor to the extent that the defense costs

3    being paid were among the claims for which the debtor would ultimately be obligated to

4    indemnify the directors and officers.  *Id*. at 96-98.  Therefore, the court held that there was cause

5    to grant relief from the automatic stay for the purpose of using the insurance proceeds to pay the

6    directors' and officers' expert costs.  *Id.*

7    Here, as in *Boston Regional Medical Center,* cause exists to lift the automatic stay

8    with respect to proceeds of the Fiduciary Policy.  Movants require immediate access to the

9    proceeds of that policy to mount a meaningful defense in the Fiduciary Actions.  This need is

10   pressing — without access to their bargained-for coverage, Movants may suffer irreparable harm.

11   In the words of the *Boston Regional Medical Center* court:

12   The [directors and officers] need for the proceeds to be distributed to them *now*,
     so that they can procure the services of experts in time to effectively defend
13   themselves in the D & O action. If the costs of defense are not disbursed in time
     to provide the defense, a significant part of their value and of their function will
14   have been lost. Time is of the essence.

15   *Id.* at 96;  *see also, e.g.*, *Allied Digital*, 306 B.R. at 514 ("[W]ithout funding, the Individual

16   Defendants will be prevented from conducting a meaningful defense . . . and may suffer

17   substantial and irreparable harm").  On the other hand, if the automatic stay is lifted, the Debtor

18   will suffer only de minimis harm, if any at all.  Presently, Movants seek only payment of their

19   current defense costs.  *See Boston Reg'l Med. Cent.*, 280 B.R. at 97.  Moreover, to the extent that

20   the defense costs are among the claims that the Debtor is obligated to indemnify the Insured

21   Persons, any payments from the Fiduciary Policy would reduce on a dollar-for-dollar basis the

22   indemnification claims the Insured Persons would have against the Debtor.  *See id.*

23   In sum, the potential harm that the Debtor may suffer if the stay is lifted is

24   speculative and pales in comparison to the immediate harm that Movants *will* suffer if denied

25   access to the proceeds of the Fiduciary Policy to cover costs of defending the Fiduciary Actions.

26   *See, e.g.*, *Laminate Kingdom*, 2007 WL 1766637, at *4 ("[B]ankruptcy courts should be wary of

27   impairing the contractual rights of directors and officers even in cases where the policies provide

28   entity coverage.").  "D & O policies are obtained for the protection of individual directors and

- 15 -

officers . . . .  In essence and at its core, a D & O policy remains a safeguard of officer and
director interests and not a vehicle for corporate protection." *In re First Cent. Fin. Corp.*, 238
B.R. 9, 16 (Bankr. E.D.N.Y. 1999).  Such a profound imbalance of equities is more than
sufficient to establish cause for lifting the automatic stay.  *See, e.g., Cybermedica, Inc.*, 280 B.R.
at 18-19 (granting stay relief where insureds would suffer irreparable harm if prevented from
exercising their rights to defense payments and there was no immediate risk of the insurance
policy being depleted); *Imperial Corp. of Am.*, 144 B.R. at 119 (approving of payment of
insurance proceeds to directors and officers where there was no showing of immediate and
irreparable harm to the pool of insurance proceeds).

### III.
### CONCLUSION

For all the foregoing reasons,  Movants respectfully request that the Court enter an
order as follows:

(1)    Declaring that the proceeds payable under the D&O Policies to the Insured
Persons — as distinct from the D&O Policies themselves — are not subject to the
automatic stay, and that the automatic stay of 11 U.S.C. § 362(a) does not
preclude, or subject to any liability, any of the insurers from advancing past,
present and/or future defense costs and other losses incurred by any Insured Person
in connection with the Actions or any other action or claim covered by the D&O
Policies;

(2)    Alternatively, granting relief from or modifying the automatic stay under 11
U.S.C. §362(d)(1), to the extent that it may be deemed applicable, for all purposes,
with regard to the proceeds of the D&O Policies and the Fiduciary Policy as to all
Insured Persons, and without limiting the generality of the foregoing, directing that
the automatic stay shall not preclude, or subject to any liability, any of the D&O

Insurers or the Fiduciary Insurer for advancing any past, present or future defense

costs or other loss incurred by any Insured Persons in connection with the Actions

or any other action covered by the Policies;

(3)    Providing that any disputes that may arise out of this Order shall be subject to the

jurisdiction of this Court; and

(4)    Granting Movants any other just and proper relief.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Respectfully submitted,

DATED: September 22, 2008

MUNGER, TOLLES & OLSON LLP
   JOHN W. SPIEGEL
   LAWRENCE C. BARTH
   TODD J. ROSEN

By: _____
       TODD J. ROSEN

Counsel for Louis E. Caldera, Stuart A. Gabriel,
Lyle E. Gramley, Gabrielle E. Greene, Hugh M.
Grant, Patrick C. Haden, Terrance G. Hodel,
Robert L. Hunt II, Lydia H. Kennard, John F.
Seymour, and Bruce G. Willison

DATED: September ___, 2008

COVINGTON & BURLING LLP
   D. JEAN VETA
   MICHAEL ST. PATRICK BAXTER
   DAVID BAYLESS

By: _____
       DAVID BAYLESS

Counsel for Michael W. Perry

DATED: September ___, 2008

FAIRBANK & VINCENT
   ROBERT H. FAIRBANK
   RICHARD D. GLUCK

By: _____
       ROBERT H. FAIRBANK

Counsel for S. Blair Abernathy

5964997.4

Respectfully submitted,

DATED: September ___, 2008

MUNGER, TOLLES & OLSON LLP
  JOHN W. SPIEGEL
  LAWRENCE C. BARTH
  TODD J. ROSEN


By:_____
            TODD J. ROSEN

Counsel for Louis E. Caldera, Stuart A. Gabriel,
Lyle E. Gramley, Gabrielle E. Greene, Hugh M.
Grant, Patrick C. Haden, Terrance G. Hodel,
Robert L. Hunt II, Lydia H. Kennard, John F.
Seymour, and Bruce G. Willison


DATED: September 22, 2008

COVINGTON & BURLING LLP
  D. JEAN VETA
  MICHAEL ST. PATRICK BAXTER
  DAVID BAYLESS

By:_____
           DAVID BAYLESS

Counsel for Michael W. Perry


DATED: September ___, 2008

FAIRBANK & VINCENT
  ROBERT H. FAIRBANK
  RICHARD D. GLUCK


By:_____
           ROBERT H. FAIRBANK

Counsel for S. Blair Abernathy

Respectfully submitted,

DATED: September ___, 2008

MUNGER, TOLLES & OLSON LLP
JOHN W. SPIEGEL
LAWRENCE C. BARTH
TODD J. ROSEN

By:_____
                TODD J. ROSEN

Counsel for Louis E. Caldera, Stuart A. Gabriel,
Lyle E. Gramley, Gabrielle E. Greene, Hugh M.
Grant, Patrick C. Haden, Terrance G. Hodel,
Robert L. Hunt II, Lydia H. Kennard, John F.
Seymour, and Bruce G. Willison

DATED: September ___, 2008

COVINGTON & BURLING LLP
D. JEAN VETA
MICHAEL ST. PATRICK BAXTER
DAVID BAYLESS

By:_____
                DAVID BAYLESS

Counsel for Michael W. Perry

DATED: September 2‌2 2008

FAIRBANK & VINCENT
ROBERT H. FAIRBANK
RICHARD D. GLUCK

By:_____
                ROBERT H. FAIRBANK

Counsel for S. Blair Abernathy

- 18 -

5964997.1

1   DATED: September 22, 2008                WILLIAMS & CONNOLLY LLP
                                               JOHN K. VILLA
2                                              STEPHEN D. ANDREWS
                                               JASON T. WRIGHT
3

4
                                             By: _____
5                                                  STEPHEN D. ANDREWS

6                                            Counsel for Richard H. Wohl

7

8

9   DATED: September ___, 2008               WILLKIE FARR & GALLAGHER LLP
                                               GREGORY S. BRUCH
10                                             JULIE A. SMITH
                                               MITCHELL J. AUSLANDER
11

12
                                             By: _____
13                                                  JULIE A. SMITH

14                                           Counsel for A. Scott Keys

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5964997.4

1   DATED: September __, 2008

WILLIAMS & CONNOLLY LLP
   JOHN K. VILLA
2       STEPHEN D. ANDREWS
   JASON T. WRIGHT
3

4

By:_____
5            STEPHEN D. ANDREWS
6   Counsel for Richard H. Wohl

7

8

9   DATED: September 22, 2008

WILLKIE FARR & GALLAGHER LLP
   GREGORY S. BRUCH
   JULIE A. SMITH
10     MITCHELL J. AUSLANDER

11

12  By:_____
13          JULIE A. SMITH

14  Counsel for A. Scott Keys

5964997.4

- 19 -