LEE R. BOGDANOFF (SBN 119542)
KLEE TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
LBogdanoff@ktbslaw.com

Bankruptcy Counsel for
Alfred H. Siegel, Chapter 7 Trustee

VAN C. DURRER II (SBN 226693)
KURT RAMLO (SBN 166856)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, #3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
vdurrer@skadden.com

Proposed Special Counsel for
Alfred H. Siegel, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>INDYMAC BANCORP, INC., a Delaware corporation,<br><br>Debtor. | Case No. 2:08-bk-21752-BB<br><br>Chapter 7<br><br>**MOTION FOR ORDER CONFIRMING INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**<br><br>Date: October 30, 2008<br>Time: 10:00 a.m.<br>Place: Edward R. Roybal Courthouse<br>255 E. Temple Street, Los Angeles<br>Courtroom 1482 |

Alfred H. Siegel (the "<u>Trustee</u>" or "<u>Movant</u>"), duly appointed interim chapter 7 trustee in

the above-captioned case (the "<u>Case</u>"), hereby moves (the "<u>Motion</u>") this Court for an order,

substantially in the form attached hereto as <u>Exhibit A</u>, confirming that the Trustee shall serve as

trustee in this Case pursuant to Rule 2003(b)(3) of the Federal Rules of Bankruptcy Procedure ("FRBP").

On September 23, 2008, counsel for the Office of the United States Trustee ("UST") filed a Report of Disputed Election of Trustee (the "UST Report") pursuant to FRBP 2003(b)(3) to inform this Court of a disputed election (the "Disputed Election") of a trustee and the nature of the dispute. [Docket No. 92]. Specifically, the UST Report describes the Disputed Election of Jeffrey H. Beck ("Mr. Beck"). Id. Consistent with his duties, the Trustee has filed the instant Motion to protect the estate from the harm that would result from a improper and illegitimate election. Specifically, the Disputed Election (including the votes purported to be cast) failed to comply with the requirements of § 702 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and Rule 2003, and the proposed candidate, Mr. Beck, is ineligible to serve as chapter 7 trustee in the Central District of California.

## SUMMARY OF RELIEF REQUESTED

Pursuant to § 702(b) of the Bankruptcy Code, the election of a permanent chapter 7 trustee may be requested at the meeting of creditors held under § 341(a) of the Bankruptcy Code (the "Creditors' Meeting"). 11 U.S.C. § 702(b). Such an election will take place if it is requested by creditors that: (1) may vote for a candidate for trustee and (2) hold at least twenty percent (20%) in amount of the "allowable, undisputed, fixed, liquidated, unsecured claims" (the "Qualifying Claims"). 11 U.S.C. § 702. A creditor may vote in a chapter 7 trustee election only if it: (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim; (2) is not an insider; and (3) does not have an interest materially adverse to the interest of other creditors holding Qualifying Claims. Id. at (a)(2)-(3).

A candidate for trustee is elected if the candidate receives the votes of creditors holding a majority in amount of Qualifying Claims that are held by voting creditors, and the creditors who

2

actually vote hold at least 20 percent of the Qualifying Claims that are held by creditors eligible to

vote. 11 U.S.C. § 702(c). If a permanent chapter 7 trustee is not elected in a valid election held

pursuant to § 702 of the Bankruptcy Code, "then the interim trustee shall serve as trustee in the

case." 11 U.S.C. § 702(d).

In the instant Case, the Trustee requests the Court's determination that the Disputed

Election is void on three separate grounds: (1) the party requesting the Disputed Election did not

establish the quorum required by section 702 of the Bankruptcy Code, and thus no valid election

could have occurred; (2) the party purporting to cast votes in the Disputed Election possessed

neither the legal authority to vote the claims nor any valid proxies; and (3) the proffered candidate

is not eligible to serve as a chapter 7 trustee in the Central District of California. Any of these

three grounds alone is sufficient to invalidate the Disputed Election, and therefore the Trustee

should be confirmed as the permanent chapter 7 trustee in the Case as provided by § 702(d).

## CONCLUSION

**WHEREFORE**, for the reasons discussed in this Motion and the accompanying

"Memorandum of Points and Authorities," the Trustee respectfully requests that the Court enter an

Order confirming that the Trustee shall serve as the chapter 7 trustee in the Case and granting such

other and further relief as the Court deems necessary.

Respectfully submitted,

KLEE, TUCHIN, BOGDANOFF & STERN,
LLP

By: _____
LEE BOGDANOFF
Bankruptcy Counsel for Alfred H. Siegel,
Chapter 7 Trustee

3

1

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP

2

3

By: _____/s/ Van C. Durrer II_____

4

VAN C. DURRER II
KURT RAMLO

5

Proposed Special Counsel for
Alfred H. Siegel, Chapter 7 Trustee

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR ORDER CONFIRMING INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

JURISDICTION AND VENUE ...................................................................................1

BACKGROUND ........................................................................................................1

    The Schedules Are Inaccurate...............................................................................2

    Wilmington Trust's Defective Claims....................................................................3

    The Creditors' Meeting And Disputed Election ....................................................6

RELIEF REQUESTED ..............................................................................................9

ARGUMENT .............................................................................................................9

    1.     No Valid Election Was Called Due to Absence of A Quorum ........................12

           A.    Wilmington Trust Failed To Demonstrate It Controlled 20% of Qualifying Claims ................................................................12

           B.    The Trust Claims Are Defective on Their Face to Establish a Quorum ..............................................................14

    2.     Wilmington Trust Was Not Entitled to Vote the Trust Claims ...........................17

           A.    The Trust Documents Do Not Authorize Wilmington Trust to Vote in Place or on behalf of Beneficial Holders .................................17

           B.    Wilmington Trust Failed to Satisfy the Proxy Solicitation Rules............19

    3.     Mr. Beck Is Not Eligible to Serve as Chapter 7 Trustee .....................................21

CONCLUSION...........................................................................................................22

1

## TABLE OF AUTHORITIES

2

3

In re American Eagle,
    231 B.R. 320 (B.A.P. 9th Cir. 1999) ...............................................................17

4

In re Blanchard Management Corp.,
    10 B.R. 186 (Bankr. S.D.N.Y. 1981).................................................. 11, 12, 13

5

6

In re Brent Industries, Inc.,
    96 B.R. 193 (Bankr. N.D. Iowa 1989) ........................................................ 11, 16

7

8

In re City of Colorado Springs Spring Creek General Improvement District,
    177 B.R. 684 (Bankr. D. Colo. 1995) .............................................................18

9

In re Eddie Haggar Ltd.,
    190 B.R. 281 (Bankr. N.D. Tex. 1995) ................................................ 9, 10, 20

10

11

Grella v. Zimmerman (In re Art & Co.),
    179 B.R. 757 (Bankr. D. Mass. 1995) ...........................................................11

12

13

In re I.J.F., Inc.,
    6 Bankr. Ct. Dec. (LRP) 139,B 1 Collier Bankr. Cas. 2d (MB) 907 B
    (Bankr. S.D. Fla. 1980) ...............................................................................14

14

15

J.P. Morgan Investment Management v. United States Trustee (In re Martech USA),
    188 B.R. 847 (B.A.P. 9th Cir. Alaska 1995), aff'd by 90 F.3d 408, (9th Cir. 1996)....21, 22

16

17

In re Lake States Commodities, Inc.,
    173 B.R. 642 (Bankr. N.D. Ill. 1994) ..................................................... 4 n.1, 14

18

19

Lines v. Falstaff Brewing Co.,
    233 F.2d 927 (9th Cir. 1956)..........................................................................9

20

21

In re Michelex Ltd.,
    195 B.R. 993 (Bankr. W.D. Mich. 1996)..................................................... 4 n.1

22

23

In re: Mid Atlantic Retail Group, Inc.,
    No. 07-81745, 2008 Bankr. LEXIS 1895 (Bankr. M.D.N.C. June 18, 2008)....................22

24

25

In re New York Produce American & Korean Auction Corp.,
    106 B.R. 42 (Bankr. S.D.N.Y. 1989)......................................................... 10 n.6

26

In re Oxborrow,
    104 B.R. 356 (E.D. Wash. 1989).......................................................... 10 n.6, 12

27

28

In re Pioneer Finance Corp,
    246 B.R. 626 (Bankr. D. Nev. 2000) ................................................................ 18, 19

In re Sforza,
    174 F.R. 656, 658 (Bankr. D. Mass 1994) ............................................... 17 n.12

In re San Diego Symphony Orchestra Association,
    201 B.R. 978 (Bankr. S.D. Cal. 1996) ...................................................... 4 n.1

In re Southland Corp.,
    124 B.R. 211 (Banks. N.D. Tex. 1991) ..................................................... 19

In re Tenn-Fla Partners,
    1993 Bankr. LEXIS 789 (Bankr. W.D. Tenn. Apr. 29, 1993) ..................... 18, 19

**STATUTES**

11 U.S.C. § 321(a)(1) .................................................................................... 21, 22

11 U.S.C. § 702 ........................................................................... 1, 9, 12, 13

11 U.S.C. § 702(a) .................................................................. 9, 15, 16, 20

11 U.S.C. § 702(b) ...................................................................................... 9

11 U.S.C. § 702(c) ...................................................................................... 3

11 U.S.C. § 702(d) ............................................................... 3, 9, 11, 22, 23

12 U.S.C. § 1821(d)(2)(A)(i) ..................................................................... 2

28 U.S.C. §§ 157 ......................................................................................... 1

28 U.S.C. § 157(b)(2) ................................................................................ 1

28 U.S.C. § 1334 ........................................................................................ 1

28 U.S.C. §§ 1408-1409 ............................................................................ 1

Fed. R. Bankr. P. 2003(b)(3) ................................................. 14, 15, 16, 17

Fed. R. Bankr. P. 2006 ............................................................................ 20

Fed. R. Bankr. P. 5005(c) ....................................................................... 16

**MOTION FOR ORDER CONFIRMING INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

1

2

**MISCELLANEOUS**

3 Collier on Bankruptcy ¶ 321.02[2] (15th ed. Rev. 2008)........................................................21

6 Collier on Bankruptcy ¶ 702.05 (15th ed. rev. 2008)...................................................... 10 n.6

9 Collier on Bankruptcy ¶ 2006.06 n.1 (15th ed. rev. 2008)......................................................16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR ORDER CONFIRMING INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this matter is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory base for the relief sought herein is 11 U.S.C. § 702 (the "Bankruptcy Code").

### BACKGROUND

2.      On July 17, 2008, the Federal Deposit Insurance Corporation (the "FDIC") placed IndyMac Bank, F.S.B. (the "Bank") into federal conservatorship, seizing control of the Bank's books and records.  Declaration of Alfred H. Siegel ("Siegel Decl.") ¶ 5, filed contemporaneously herewith.  On July 31, 2008, IndyMac Bancorp, Inc., (the "Debtor") filed a petition for relief under chapter 7 of the Bankruptcy Code.  [Docket No. 1].  On August 4, 2008, Alfred H. Siegel (the "Trustee") was duly appointed interim chapter 7 trustee in the above-captioned case (the "Case"). [Docket No. 11].  Shortly after the Trustee's appointment, he learned the FDIC is in possession of substantially all of the Debtor's books and records.  Siegel Decl. ¶ 6.  During the short time since his appointment, the Trustee has worked diligently with the then sole remaining officer of the Debtor, the former professionals of both the Debtor and the Bank and, most significantly, the FDIC in order to obtain access to critical information regarding the Debtor's financial affairs.  Id. ¶ 7. The Trustee has timely filed the Debtor's federal and state income tax returns, and the Trustee has developed an orderly approach to governmental investigations pursued by the US Department of Justice and the Securities and Exchange Commission.  Id.

**The Schedules Are Inaccurate**

3.      On August 11, 2008, the Debtor filed its schedules of assets and liabilities and

statement of financial affairs (the "Schedules") pursuant to section 521 of the Bankruptcy Code.

[Dockets No. 14-23].  Each of the Schedules contains the following disclaimer:

> IndyMac is the sole owner of IndyMac Intermediate Holdings, Inc. ("IndyMac
> Intermediate"), a corporation whose sole purpose is to hold all of the outstanding
> common stock of IndyMac Bank, F.S.B. (the "Bank").  The Federal Deposit
> Insurance Corporation ("FDIC") was appointed receiver for the Bank on July 11,
> 2008.  As a result of the appointment, the FDIC succeeded to all of IndyMac
> Intermediate's rights and powers as stockholder, see 12 U.S.C. § 1821(d)(2)(A)(i),
> although IndyMac Intermediate continues to hold the shares of the stock of the Bank.
>
> All of the books and records of IndyMac were maintained by the Bank (and
> employees of the Bank) on IndyMac's behalf, pursuant to an intercompany
> servicing agreement and, since July 11, 2008, the FDIC has been in sole possession,
> custody and control of all of the books and records of the Bank which include all, or
> virtually all, of IndyMac's books and records….
>
> Although reasonable effort has been made to ensure that the Schedules and
> Statements are as accurate and complete as practicable under these unique
> circumstances, subsequent information or discovery (including, potentially, access
> to records now in the sole possession, custody and control of the FDIC) may result
> in material changes to these Schedules and Statements, and inadvertent errors or
> omissions may exist because, in addition to such books and records not being
> available to IndyMac, the Schedules and Statements contain unaudited information,
> which is subject to further review and potential adjustment.  For all of the foregoing
> reasons, there can be no assurance that these Schedules and Statements are complete
> and substantial errors or omissions may exist.  The Debtor reserves all rights to
> amend and/or supplement the Schedules and Statements as is necessary or
> appropriate.

E.g. [Docket No. 12, 1].  Given the lack of information available to the Debtor's then sole

remaining officer who prepared the Schedules, the Trustee would not be willing to testify that the

financial information contained therein is accurate, particularly with respect to identifying holders

of claims against the Debtor's estate.  Siegel Decl. ¶ 8.

4.      Schedule F, the Schedule of Creditors Holding Unsecured Nonpriority Claims, lists

several claims of an unknown amount and several claims for which an approximate amount was

2

determined, along with those for which a fixed value is known.  [Docket No. 19, 2-10].  The sum

of those claims for which an amount was listed, whether fixed or undetermined is approximately

$442,632,033.  Id., 10.

5.      In addition to uncertainty with respect to the amounts of many unsecured

nonpriority claims, the holder or holders of at least one significant liquidated unsecured claim were

not identified in the Schedules.  Id., 10.  Schedule F lists a liquidated unsecured claim of

$223,459,000, which was based on Debtor's 10-K for the period ending December 31, 2007, and

indicates that Debtor cannot identify the holder of the claim; rather it is listed as "unknown."  Id.

This "unknown" claim represents over half of the $442,632,033 in liquidated general unsecured

claims identified on Schedule F.  Id.

**Wilmington Trust's Defective Claims**

6.      On September 9, 2008, Wilmington Trust Company ("Wilmington Trust") filed four

proofs of claim (the "Trust Claims") in the instant Case on behalf of IndyMac Capital Trust I

("Trust I"), IndyMac Capital Trust VI ("Trust VI"), IndyMac Captial Trust X ("Trust X"), and

IndyMac Capital Trust XIII ("Trust XIII").  [Claims Register Nos. 12-15].  A summary of the

relevant information regarding the Trust Claims is annexed to the Declaration of Lee Bogdanoff at

Exhibit 1.  Declaration of Lee Bogdanoff ("Bogdanoff Decl."), Ex. 1, filed contemporaneously

herewith.  The Trust Claims, in the aggregate, total approximately $172,216,800.  [Claims Register

Nos. 12-15].  The Trust Claims fail to designate, on their face, whether the claims asserted are

general unsecured, non-priority, administrative, priority, or secured claims.  In fact, none of the

lengthy "addenda" attached to the Trust Claims (and incorporated into the front page of the Trust

Claims) specify the type or priority of the claims.  Unique among the four Trust Claims, the

addenda submitted with respect to the claim for Trust I, which asserts a claim in the amount of

$45,657,000, states that it is "a general unsecured claim, except to the extent to which Wilmington

3

Trust is entitled to the benefits of administrative treatment pursuant to bankruptcy law and/or applicable non-bankruptcy law." [Claims Register No. 12 ¶ 13] (emphasis added). None of the other claims contain even this (circular) statement concerning the type of claim being asserted. The Trust Claims simply do not disclose whether they are secured, unsecured or priority and therefore do not specify any basis upon which Wilmington Trust would be entitled to vote such claims.[1]

7.    Apparently, prepetition, the Debtor issued certain junior debentures or promissory notes (the "Debentures"). Various trust agreements were promulgated as part of these same transactions whereby various trusts (the "Trusts") issued preferred trust securities to various holders (the "Holders"). See Bogdanoff Decl., Ex. 2 § 6.1(a); Ex. 3 § 6.1(a); Ex. 4 § 5.3; and Ex. 5 § 5.3. The proceeds from the sale of the preferred securities to the Holders were used to purchase the Debentures issued by the Debtor. Id., Ex. 2 § 6.1(a); Ex. 3 § 6.1(a); Ex. 4 § 5.3; and Ex. 5 § 5.3. As set forth in the Trust Claims, the Debentures are held in trust "for the benefit of the Trust[s] and the Holders." [Claims Register Nos. 12-15, addenda ¶ 5]; See also Bogdanoff Decl., Ex. 2 § 3.5; Ex. 3 § 2.5; Ex. 4 § 2.7; and Ex. 5 § 2.7. The Holders, therefore, hold a beneficial interest in those Debentures.

---

[1] While the Schedules list certain claims of Wilmington Trust, the Trust Claims supercede what was scheduled and control for purposes of application of FRBP 2003. See, e.g., In re Lake States Commodities, Inc., 173 B.R. 642, 646 (Bankr. N.D. Ill. 1994) (applying plain language of Fed. R. Bankr. P. 2003(b)(3) requiring party to file claim or writing demonstrating entitlement to vote). Fed. R. Bankr. P. 3001(f) provides, "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim," and "a proof of claim executed and filed in accordance with these rules shall supersede any scheduling of that claim or interest pursuant to Section 521(1) of the Code." See In re San Diego Symphony Orchestra Ass'n, 201 B.R. 978, 982 (Bankr. S.D. Cal. 1996); In re Michelex Ltd., 195 B.R. 993, 1008 (Bankr. W.D. Mich. 1996) ("When a proper proof of claim is filed before, or at, the § 341 meeting, it supersedes the debtor's schedules."). Indeed, the notice of the § 341 meeting expressly stated that: "To be paid, you must file a Proof of Claim even if your claim is listed in the schedules filed by the Debtor." [Docket No. 7, 2]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

8.      Among other things, pursuant to the trust documents related to the Debentures

issued in connection with these transactions, upon the Debtor's bankruptcy, Wilmington Trust is

required to wind up the relevant trusts, and distribute the Debentures to each of the Holders "as

expeditiously as [Wilmington Trust] shall determine to be possible." Bogdanoff Decl., Ex. 2 §§

8.1; 8.2; Ex. 3 § 7.1; Ex. 4 §§ 9.2, 9.4; and Ex. 5 §§ 9.2, 9.4.  Wilmington Trust is required to

furnish notice of any bankruptcy to its Holders.  See id., Ex. 2 § 2.7 (Wilmington Trust is required

to give notice of the Debtor's bankruptcy filing to the Holders); Ex. 3 § 5.08 (same); Ex. 4 § 8.6

(same); and Ex. 5 § 8.6 (same).  Pending the distribution of such Debentures, Wilmington Trust

continues to act as the nominal title holder of the Debentures, subject to the terms of the trust

documents.  See id., Ex. 2 § 3.15; Ex. 3 § 5; Ex. 4 § 8.15(a); Ex. 5 § 8.15(a).

9.      Prepetition, the Debtor issued unconditional and irrevocable guarantees in favor of

the Holders to pay the amounts owing under the Trusts to the Holders until the Debentures are

distributed to the Holders.  Id., Ex. 6 § 5.1; Ex. 7 § 5.4(b); and Ex. 8 § 5.4(b).[2]  The guarantees

obligate the Debtor to pay the same amount to the Holders as is owing under the Debentures, which

as noted above, must be distributed by Wilmington Trust to the Holders as expeditiously as

possible now that the Debtor has filed bankruptcy.  As set forth in the Trust Agreements, the

Guarantees are terminated when Debentures are distributed out to Holders.  E.g. id., Ex 2, § 8.2; Ex

3 § 7.1; Ex. 4 §§ 9.2, 9.4; and Ex. 5 §§ 9.2, 9.4.  Thus, before bankruptcy, the Holders held a direct

claim against the Debtor based upon the guarantees in an amount equal to what the Debtor owed on

the Debentures.  Upon the bankruptcy, the Debentures are required to be delivered to the Holders,

and until that happens the Debtor's guarantees remain in effect.

---

[2] Ex. 6, 7, and 8 represent the Guarantee agreements for Trusts I, X, and XIII, respectively.
The Trustee has not been provided a copy of the Guarantee agreement pertaining to Trust VI.

5

10.    Although Wilmington Trust does not append the underlying documentation giving rise to the claims to the Trust Claims, copies of the relevant trust documents are attached to the Bogdanoff Declaration.[3]  As described above, those documents plainly demonstrate that it is the Holders of the so-called "trust preferred securities" issued under those documents, and not Wilmington Trust, that are entitled to vote on a trustee election.  It is the Holders that hold the entire economic interest in the claims asserted by Wilmington Trust.  Finally, the trust documents expressly empower the Holders, and not Wilmington Trust, to vote on bankruptcy matters.  E.g. id., Ex. 2 § 11.2(b); Ex. 3 § 11.2(b); Ex. 4 § 8.15; and Ex. 5 § 8.15. (Wilmington Trust expressly not authorized to "to vote in respect of the claim of any Holder in any [bankruptcy] proceeding.").

**The Creditors' Meeting And Disputed Election**

11.    The meeting of creditors for this Case was originally scheduled for August 28, 2008, and notice of the meeting was served on known creditors, including Wilmington Trust, on August 3, 2008.  [Docket Nos. 7 and 8].  The meeting of creditors was not held on August 28, rather it was continued to September 11, 2008.  [Docket No. 13].  On August 20, 2008, Wilmington Trust was served with notice that the meeting was continued to September 11, 2008.  [Docket No. 14].  On September 11, 2008, at the continued meeting of creditors held under § 341(a) of the Bankruptcy Code (the "Creditors' Meeting") in the Case, Wilmington Trust appeared through counsel and requested that the office of the United States Trustee (the "UST") conduct a chapter 7 trustee election.  [Docket No. 93, Ex. 1-2, 37:25-38:14].  Specifically, Wilmington Trust's counsel presented a "power of attorney" executed by a representative of Wilmington Trust purporting to authorize counsel to vote the Trust Claims.  Id., 8:1-9:4.

---

[3] Copies of such documents for Trusts VI, X and XIII were provided by Wilmington Trusts's counsel and for Trust I were obtained from the Debtor's SEC filings.  Bogdanoff Decl. ¶ 6.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

12. Other than presenting the Trust Claims and the power of attorney, Wilmington Trust presented no evidence in support of its request for the election or its votes during the election. Bogdanoff Decl., Ex. 10 (Trustee Letter (defined below), 1). Wilmington Trust asserted that "the Holders of the Preferred Share[s] have directed Wilmington Trust to seek an election and to vote in that election." [Docket No. 93, Ex. 1-2, 38:11-39:7]. This statement was not accurate. After the meeting, Wilmington Trust disclosed that Holders of only <u>one of the four series</u> of trust preferred securities (Trust I) apparently issued some sort of direction to Wilmington Trust. Bogdanoff Decl., Ex. 11 (Wilmington Trust Response Letter (defined below), 2). In other words, Wilmington Trust acknowledges that it obtained no direction whatsoever from any other series of its Trusts; the one issuance as to which Wilmington Trust alleges it did receive a direction from some Holders, Trust I, totals approximately $45,000,000 and, therefore, constitutes far less than 20% of the amount listed as liquidated unsecured debt in the Debtor's Schedule F (both identified and unidentified holders included).[4]

13. Although the UST and the Trustee requested copies of any such directions, Wilmington Trust to date has only supplied a copy of that direction to the UST, and only on the condition that the UST maintain the submission "confidential." Bogdanoff Decl. ¶ 14. Wilmington Trust has ignored the Trustee's repeated requests for copies of any notices or communications between Wilmington Trust and the Holders, along with any letters of direction purportedly issued by any Holders. <u>Id.</u>

14. At the Disputed Election, Wilmington Trust purported to vote the Trust Claims in favor of Jeffrey H. Beck ("<u>Mr. Beck</u>") as chapter 7 trustee. [Docket No. 93, Ex. 1-2,. 40:12-42:20].

---

[4] It should be noted that although the claim of Trust I is approximately $45,000,000, it is highly unlikely that Wilmington Trust received direction from all of the Holders with respect to even that claim.

7

No party joined with Wilmington Trust in so voting. Id.  Mr. Beck resides in Florida, has an office in Boca Raton, Florida, and the website of his company, J Beck & Associates, Inc., http://www.becktrustee.com (last visited September 23, 2008), lists business offices in Florida, and relates Mr. Beck's involvement as a trustee in various matters. See http://www.becktrustee.com/recentcases (last visited September 23, 2008).  It is notable that the only experiences Mr. Beck lists in which he served as a chapter 7 trustee took place in Florida.  Id.

15.    At the conclusion of the Disputed Election, the Trustee reconvened the Creditors' Meeting and swore in Mr. Perry as the Debtor's representative.  [Docket No. 93, Ex. 1-2, 43:16-45:9].  The Trustee and others, including Wilmington Trust, examined Mr. Perry.  [Docket No. 93, Ex. 1-2, 45:9-103:25].  Shortly after the conclusion of the Creditors' Meeting, the UST requested that parties submit additional information regarding the election by September 16, 2008, so that the UST could prepare the report required by FRBP 2003.  Bogdanoff Decl. ¶ 15.  On September 16, 2008, the Trustee submitted to the UST its objections regarding the Disputed Election.  Id., Ex. 10 (the "Trustee Letter").  On September 22, 2008, Wilmington Trust submitted its tardy position statement regarding the Disputed Election.  Id., Ex. 11 ( the "Wilmington Trust Response Letter").  In the interests of brevity, this Motion does not repeat the arguments set forth in counsel's September 16, 2008, letter, and instead focuses on responding to the arguments set forth in the Wilmington Trust Response Letter.[5]  The Trustee therefore respectfully requests that the Court now review the Trustee Letter and the Wilmington Trust Response Letter, as much of the balance of this Motion responds to Wilmington Trust's various arguments.

---

[5] The Trustee will not respond in this forum, however, to the various unprofessional attacks levied against the Trustee and its counsel in that letter as they are not relevant to the issues raised in the Motion.

8

16.    On September 23, 2008, the UST filed its "Report of Disputed Election of Trustee" ("UST Report"), setting forth the fact of the disputed election, the nature of the dispute, and the UST's tabulations relating to the requirements for eligibility to request a chapter 7 trustee election or vote in such an election.  See [Docket 92, 8-9].

### RELIEF REQUESTED

17.    The Trustee respectfully requests that the Court enter an Order pursuant to § 702(d) of the Bankruptcy Code finding that no proper election was held, confirming the Trustee is the permanent trustee and shall continue in his role as the chapter 7 trustee in the Case and granting such other and further relief as the Court deems necessary.

### ARGUMENT

Before a creditor or group of creditors may elect a chapter 7 trustee, the Bankruptcy Code requires confirmation that a quorum is present to participate in such an election.  11 U.S.C. § 702(b) (An election for chapter 7 trustee cannot be held, and is not valid, unless creditors holding at least twenty percent in amount of Qualifying Claims so request and vote.).  In addition, and not surprisingly, only holders of valid claims enumerated in 11 U.S.C. § 702(a) may vote at a proper election.  Id. (providing that Qualifying Claims must be allowable and undisputed, and that the creditor purporting to vote such a claim actually hold the claim.).  "Voting restrictions in the Bankruptcy Code and [FRBP] are intended to prevent the election of a trustee who will not protect the interest of all creditors."  In re Eddie Haggar Ltd., 190 B.R. 281, 284 (Bankr. N.D. Tex. 1995); see also Lines v. Falstaff Brewing Co., 233 F.2d 927, 928 (9th Cir. 1956) (Commenting, with respect to a disputed election for a Bankruptcy trustee, that "'The punctilio of an honor the most sensitive must be observed in the selection of [Bankruptcy] trustees as well as in their own discharge of their duties.'") (quoting Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928)).  Finally, Congress has established clear and specific eligibility requirements for service as a chapter

9

7 trustee.  These requirements prevent a chapter 7 estate from being endangered by the agenda or

designs of an ineligible group of creditors, and are aimed at protecting the value in the estate for

legitimate creditors.  In re Eddie Haggar Ltd., 190 B.R. at 284; see also In re Blanchard

Management Corp., 10 B.R. 186, 189 (S.D.N.Y. 1981) ("The Code's 20 percent requirement

discourages attorney control and attempts to revitalize the idea of true creditor control.").  The

Trustee has a duty to protect the estate from these potential threats arising from an improper or

illegitimate election.[6]  The potential harm here is exacerbated by the negative impact it may have

on the continuing discussions with the FDIC and other government regulators.  Siegel Decl. ¶¶ 7-8.

       Against that backdrop, the Trustee objects to the Disputed Election for three reasons, each

independently sufficient to show that Mr. Beck was not elected and the Trustee should be

confirmed as the permanent chapter 7 trustee.  First, Wilmington Trust, as the party requesting the

Disputed Election, bore the burden to demonstrate that the quorum requirement was satisfied

before any election could occur.  Wilmington Trust failed to so and instead demanded that an

election proceed, despite unequivocal evidence in the Schedules that a valid election could not

occur based upon the state of the record going in to the Creditors' Meeting.  The case law is crystal

clear that it is the burden of the party seeking an election to ensure that a valid election can occur.

Wilmington Trust failed to do that here.  Second, Wilmington Trust has no power to vote the Trust

Claims, nor did it even attempt to satisfy the proxy solicitation requirements of the Bankruptcy

Code and the FRBP.  Third, even assuming that a valid election otherwise took place, Wilmington

Trust's proposed candidate, Mr. Beck, is not eligible to serve as a chapter 7 trustee in the Central

---

[6] There is no dispute in the Ninth Circuit that an interim chapter 7 trustee has standing to object to the purported election.  See In re Oxborrow, 104 B.R. 356, 356 n.2 (E.D. Wash. 1989); see also 6 Collier on Bankruptcy ¶ 702.05 (15th ed. rev. 2008) ("An interim trustee has standing to object to the election of a chapter 7 trustee; the chapter 7 debtor does not."); In re New York Produce American & Korean Auction Corp., 106 B.R. 42, 45 (Bankr. S.D.N.Y. 1989).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING
INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

District of California.  For each of these reasons, the Trustee should be confirmed as the permanent

chapter 7 trustee in this Case.

The consequences of Wilmington Trust's failure to comply with the Bankruptcy Code and

FRBP provisions compels that Mr. Siegel be confirmed as the permanent trustee.  Bankruptcy

Code § 702(d) provides, "[i]f a trustee is not elected under this section, then the interim trustee

shall serve as trustee in the case."  The opportunity afforded under the Bankruptcy Code to elect a

new trustee expires when the debtor's representative is sworn in to provide testimony.  If a proper

election does not occur before the debtor's representative is sworn in, then the interim trustee

becomes the permanent trustee, whether or not the examination of the debtor is continued to

another date.  See e.g., Grella v. Zimmerman (In re Art & Co.), 179 B.R. 757, 762 (Bankr. D. Mass.

1995) ("In the present case, the trustee became permanent trustee by operation of law at the § 341

meeting that was actually held on October 7, 1992, notwithstanding the absence of debtor's counsel,

and the continuation of the meeting.").  In light of Wilmington Trust's failure to call a proper

election, the Trustee should be named the permanent trustee in this Case.  In re Brent Industries,

Inc., 96 B.R. 193, 197 (Bankr. N.D. Iowa 1989) ("The Bankruptcy Code provides that in the event

there is not a valid election of a permanent trustee at the first meeting of creditors that the interim

trustee will automatically be appointed to serve as the permanent trustee in a case.") (citing 11

U.S.C. § 702(d).); In re Blanchard Management Corp., 10 B.R. 186, 189 (Bankr. S.D.N.Y. 1981)

("Since the creditors failed at the first meeting to elect a trustee, they have exhausted their

opportunity to do so and the interim trustee Barbara Balaber-Strauss shall continue to serve as the

trustee in this case.") (citing 11 U.S.C. § 702(d)).

1.    <u>**No Valid Election Was Called Due to Absence of a Quorum**</u>

    A.    **Wilmington Trust Failed To Demonstrate It Controlled 20% of Qualifying Claims**

As amply demonstrated in the Trustee Letter, if a party wishes to request an vote in an election, that party bears the burden of meeting the statutory requirements to request and conduct an election before that election occurs.[7] <u>See e.g.</u>, <u>In re Oxborrow</u>, 104 B.R. at 361-62 ("In affirming the bankruptcy court's decision [that an election was not properly requested], the Court notes that appellants and their attorney . . . were aware of the requirements of § 702 well before the election took place.  Nevertheless, appellants failed to ensure that a sufficient percentage of eligible claims were noted as requesting an election.").  In the instant case, Wilmington Trust failed to meet its burden insofar as it failed to show that it held twenty percent or more of the Qualifying Claims because Wilmington Trust failed to show, and indeed made no effort to determine the magnitude of claims in the Case, <u>i.e.</u>, the denominator of the equation to determine whether Wilmington Trust controls 20% of Qualifying Claims.  <u>See</u> <u>In re Blanchard Management Corp.</u>, 10 B.R. 186, 188-89 (Bankr. S.D.N.Y. 1981) (finding even where no schedules were filed, the burden was on creditors requesting an election to show that the requirements of § 702 had been met in order for a quorum to be present and the election valid).

In this Case, as was the situation in <u>Blanchard</u>, there is no accurate picture of the universe of qualifying claims.  The Debtor's lack of access to its books and records for the purposes of preparing the Schedules in this Case resulted in serious inaccuracies and deficiencies in the Schedules relating to the value of many likely unsecured nonpriority debts and the identities of some large creditors, and the Schedules do not provide an accurate picture of the total amount of claims that are eligible to vote pursuant to § 702.  Siegel Decl. ¶ 8.  Accordingly, it is impossible to

---

[7] Bogdanoff Decl., Ex. 10, 3-9.

1   determine, from the Schedules, or any other evidence filed with the Court at or prior to the

2   Creditors' Meeting, whether the Trust Claims (even if they are Qualifying Claims) comprise

3   twenty percent or more of the total universe of Qualifying Claims.  In this case, just as in

4   Blanchard, the creditor requesting the election

5

6           had available to [it] and failed to utilize[] measures under Rule 205 of the Rules of
            Bankruptcy Procedure (e.g. a subpoena seeking production of the debtor's books
7           and records or a deposition of an officer or bookkeeper of the debtor) which
            measures would have assisted the United States Trustee in determining the
8           approximate amount of claims for § 702 purposes.

9   In re Blanchard, 10 B.R. at 188.  As in Blanchard, Wilmington Trust failed to do what was

10  necessary to demonstrate the total amount of Qualifying Claims, with the result that the purported

11  election of Mr. Beck failed to meet the statutory requirements of § 702, and the Trustee should thus

12  be confirmed as the chapter 7 trustee.

13          These deficiencies were apparent from the Schedules, filed nearly a month before the

14  scheduled Creditors' Meeting, which showed that over half of the listed, liquidated claims were

15  held by "unknown" holders.  Wilmington Trust needed to simply look at the Schedules to

16  determine that that Wilmington Trust would have to do much more than simply rely on them and

17  the claims on file to show that (a) Wilmington Trust held at least 20% of the claims entitled to vote

18  for a trustee, (b) Wilmington Trust did not hold an interest adverse to other unsecured creditors,

19  and (c) at least 20% of the eligible holders had voted to elect the trustee.  Wilmington Trust's

20  contention that it bore no burden to ensure that these predicates were satisfied stands in stark

21  contrast to the above-cited case law.  See Bogdanoff Decl., Ex. 11, 11.

22          In light of the obvious deficiency in the Schedules, and the fact that an amount greater than

23  the claims voted by Wilmington Trust listed in the Debtor's last public filing as existing as of

24  December 31, 2007 (and as to which Mr. Perry testified had not been repaid since, see [Docket No.

25  93, Ex. 1-2, 60:24-61:16]), are unidentified, it was manifestly apparent to Wilmington Trust that if

26  it wished to conduct an election, it needed to take action before the Creditors' Meeting to ensure

27  that a valid election could occur.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING
INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE

1    Although Wilmington Trust failed to inquire on this point at the Creditors' Meeting,

2  Wilmington Trust now speculates that because the Schedules only list two of the series of

3  Wilmington Trust's claim, it is possible that a "good portion" of the $222 million in liquidated,

4  unidentified claims listed in the Schedules could pertain to the remaining two Trust Claims.  Id., Ex.

5  9, 10.  The Schedules, however, list two of the four series of Wilmington Trust's claims.  Thus, of

6  the $222 million in unidentified liquidated claims, the most that could be accounted for by the two

7  remaining Trust Claims is only about $75 million in claims (which is made up of the amounts for

8  Trust I and Trust VI that are not listed in the Schedules).  This means that at least $148 million in

9  liquidated claims listed in the Schedules remain unidentified and could not constitute Trust Claims,

10 more than the claims purportedly voted by Wilmington Trust.

11    Yet, in the face of this circumstance, which was known to Wilmington Trust at the time it

12 demanded that the election to proceed, Wilmington Trust not only refused to withdraw that request

13 but now actually maintains that it validly elected a permanent trustee.  The above-cited case law

14 and common sense dictate otherwise.

15    **B.    The Trust Claims Are Defective on Their Face to Establish a Quorum**

16    FRBP 2003(b)(3) requires that, in order to be eligible to request an election, a creditor must

17 have filed a proof of claim or writing in advance of the §341(a) meeting "setting forth facts

18 evidencing a right to vote pursuant to § 702(a)."  Fed. R. Bankr. P. 2003(b)(3) (claim or writing

19 fails to meet this requirement if it is "insufficient on its face").  As discussed at length in the

20 Trustee Letter (7-9), these requirements are strictly enforced.

21

22    In order for a creditor to be "entitled to vote" a proof of claim or a writing setting
         forth facts evidencing a right to vote pursuant to Section 702(a) must be filed at or
23    before the Section 341(a) meeting.  Further, as the rule clearly indicates, oral claims
         are not eligible to vote.  Therefore, the Court agrees with the line of cases which
24    look to the proofs of claim on file as of the date of the Section 341(a) meeting to
         determine the base of eligible claims.
25

26 In re Lake States Commodities, Inc., 173 B.R. 642, 646 (Bankr. N.D. Ill. 1994) (emphasis in

27 original) (citing Fed. R. Bankr. P. 2003(b)(3); In re I.J.F., Inc., 6 Bankr. Ct. Dec. (LRP) 139, 1

28
                                              14

Collier Bankr. Cas. 2d (MB) 907 (Bankr. S.D. Fla. 1980); In re Saul Foos, 93 B 25069

(February 16, 1994, oral ruling); Baton Rouge, 57 Bankr. 19).

Wilmington Trust simply did not meet its burden to show its eligibility under FRBP

2003(b)(3) to request an election, as there is no showing that the Wilmington Trust controlled 20%

of Qualifying Claims, i.e., the numerator of the quorum calculation.  11 U.S.C. § 702(a).  First, the

Trust Claims, although "filed," do not qualify because they simply did not identify the type of

claims they represent.  Although it would have been a simple matter to simply mark the

"unsecured" designation on the cover sheet of the Trust Claims, Wilmington Trust failed to do so.

Wilmington Trust failed to even assert, much less demonstrate, that the claims were "allowable,

undisputed, fixed, liquidated, unsecured claim[s] of a kind entitled to distribution under section

726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766," of the Bankruptcy Code.  11 U.S.C. §

702(a).  At the Creditors' Meeting, the UST gave Wilmington Trust an opportunity to explain how

the Trust Claims were Qualifying Claims by reference to the face of documents, as required by

FRBP 2003(b)(3). [Docket No. 93, Ex. 1-2, 10:17-12:11].  Despite being afforded this opportunity,

Wilmington Trust failed to point to any specific parts of the Trust Claims which would

demonstrate that the claims are Qualifying Claims. [8]  Id.  Thus, the Trust Claims are insufficient for

this purpose, and Wilmington Trust's contention that it is "readily apparent" that its claims

constitute Qualifying Claims is just plain wrong. [9]  The only thing "readily apparent" from those

claims is that Wilmington Trust failed to meet the requirements of FRBP 2003(b)(3).

---

[8] The (circular) language in the claim of Trust I does not save Wilmington Trust.  Assuming that the reference to an "unsecured" claim found in that claim were sufficient to comply with section 702, the amount of that claim, $45,675,000, falls far short of the 20% quorum requirement.

[9] Bogdanoff Decl., Ex. 11, 9.

Second, Wilmington Trust may not rely on its written request to the UST initially requesting the Disputed Election.  Bogdanoff Decl., Ex. 9.  Such a writing does not comply with the statute because it was not filed with the Court.  <u>Collier on Bankruptcy</u> explains that "file" in the Bankruptcy Rules means "file with the court:"

> 'File' for purposes of the Bankruptcy Rules means file 'with the clerk in the district where the case under the Code is pending.'  'Clerk' means the bankruptcy clerk for the district, or the district court clerk if a bankruptcy clerk has not been appointed. Submitting the documents to the United States Trustee as required by Fed. R. Bankr. P. 2006(e) does not fulfill the requirement that the documents also be 'filed' with the clerk.

9 <u>Collier on Bankruptcy</u> ¶ 2006.06 n.1 (15th ed. rev. 2008). (citing Fed. R. Bankr. P. 5005(a)(1); Fed. R. Bankr. P. 9001(3); <u>In re Brent Indus.</u>, 20 C.B.C.2d 814, 819, 96 B.R. 193, 196 (Bankr. N.D. Iowa 1989)); <u>but</u> <u>see</u> Fed. R. Bankr. P. 5005(c) (erroneous filing).

Third, Wilmington Trust's contention that the Trust Claims assert "fixed" and "liquidated" claims does not fix the deficiency. [10]  Holding a fixed or liquidated claim is only <u>one</u> of the requirements necessary to vote a claim under Bankruptcy Code section 702(a)(1), which specifies that only certain types of "fixed" and "liquidated" claims are entitled to vote in a trustee election. On their face, the Trust Claims fail to specify the type of claim asserted.

Likewise, Wilmington Trust's contention that the Trust Claims are "deemed allowed" does not advance its assertions. [11]  The Trust Claims are utterly silent on what kind of claim was being asserted and therefore could be "deemed allowed."  More fundamentally, not every holder of an "allowed claim" is entitled to vote for a trustee, just claims of the type enumerated in Code § 702(a)(1), and that is why Fed. R. Bankr. P. 2003(b)(3) is very clear regarding what a holder must do in order to vote a claim.  A "creditor is entitled to vote at a meeting, if, at or before the meeting, the creditor has filed a proof of claim or writing setting forth facts evidencing a right to vote

---

[10] <u>Id.</u>, Ex. 11, 9.

[11] <u>Id.</u>, Ex. 11, 9.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

1  pursuant to § 702(a) of the Code unless objection is made to the claim <u>or the proof of claim is</u>

2  <u>insufficient on its face</u>." Fed. R. Bankr. P. 2003(b)(3) (emphasis added).

3      As a result, any votes attempted to be cast in an election by Wilmington Trust cannot be

4  counted.  <u>In re American Eagle</u>, 231 B.R. 320, 329 (B.A.P. 9th Cir 1999).[12]

5  **2.    <u>Wilmington Trust Was Not Entitled to Vote the Trust Claims</u>**

6      **A.    The Trust Documents Do Not Authorize Wilmington Trust to Vote in Place or
        on behalf of Beneficial Holders**

7

8      Based upon the relevant documents governing the claims asserted by Wilmington Trust, it

9  has no right to cast votes on the election of a chapter 7 trustee even if Wilmington Trust had

10  complied with FRBP 2003(b)(3).  As noted above, the Holders of the Debentures for whose benefit

11  Wilmington Trust filed the proofs of claim, not Wilmington Trust, hold the right to vote the Trust

12  Claims.  Specifically, the relevant documents provide: "[n]othing herein shall be deemed to

13  authorize [Wilmington Trust] to . . . consent to . . . on behalf of any Holder any plan of

14  reorganization, adjustment or composition effecting the Trust Securities or the rights of any Holder

15  thereof to authorize [Wilmington Trust] to vote in respect of the claim of any Holder in the event of

16  any such proceeding."  E.g. Bogdanoff Decl., Ex. 2 § 3.15; Ex. 3 § 5.02; Ex. 4 § 8.15(b); and Ex. 5

17  § 8.15(b).  The documents are therefore clear that Wilmington Trust is not authorized "to vote in

18  respect of the claim . . . in the event of any such proceeding."  <u>Id.</u>, Ex. 2 § 3.15; Ex. 3 § 5.02; Ex. 4

19  § 8.15(b); and Ex. 5 § 8.15(b).

20      In the Wilmington Trust Response Letter, Wilmington Trust contradicts the plain language

21  of its own governing documents by contending that while the Holders are entitled to vote the trust

22  preferred securities, Wilmington Trust may vote the Debentures <u>without even asking the Holders</u>

23  <u>for directions or proxies to so vote</u>.[13]  But the provisions of its own governing documents belie any

24  _____

25      [12] It is not required that the proof of claim be the subject of a formal objection to claim
26  filed with the Court in order for the claim to be deemed to fail to comply with the requirements of §
    702.  <u>In re Sforza</u>, 174 F.R. 656, 658 (Bankr. D. Mass 1994).

27      [13] <u>See</u> Bogdanoff Decl., Ex. 9, 3-8.

28

17

1    such distinction.  First, Wilmington Trust paraphrases and cites to a laundry list of largely

2    irrelevant provisions from the trust agreements that authorize Wilmington Trust to take actions

3    "under the [trust agreements]" in connection with a bankruptcy, including authorization to initiate

4    legal action and "enforce its rights" under the Trusts.  Bogdanoff Decl., Ex. 11, 4-8.  But each

5    Trust also requires Wilmington Trust to comply with the terms of the Trust.  See id., Ex. 2 § 3.6;

6    Ex 3 § 2.6; Ex. 4 § 2.5(a); and Ex. 5 § 2.5(a).  As discussed at length above, it is the Holders who

7    are entitled to vote under the Trusts.  None of the provisions cited by Wilmington Trust says

8    anything to the contrary.  Moreover, none of the provisions cited by Wilmington Trust is in any

9    way unique or different from those addressed by courts in the several voting cases cited in the

10    Trustee Letter.  See e.g., In re: Pioneer Finance Corp, 246 B.R. at 634-35 ("The Indenture, however,

11    does not control who has the authority to vote for a plan of reorganization under the Bankruptcy

12    Code.  While record holders may vote on behalf of beneficial holders outside of bankruptcy under

13    the federal securities laws, under § 1126 of the Bankruptcy Code it is the 'holder of a claim or

14    interest' who is entitled to receive a plan solicitation package and to vote."); In re City of Colorado

15    Springs Spring Creek Gen. Improvement Dist., 177 B.R. 684, 692 (Bankr. D. Colo. 1995); In re

16    Tenn-Fla Partners, 1993 Bankr. LEXIS 789, *3 (Bankr. W.D. Tenn. Apr. 29, 1993) ("the beneficial

17    bondholders are the real creditors for whom First Union acts in its trustee and fiduciary capacity as

18    indenture trustee").

19        Second, the entire structure of the trust documents further confirms that the Holders (and

20    not Wilmington Trust) are the only persons entitled to vote with respect to an election of a chapter

21    7 trustee on account of the Trust Claims.  As discussed at length in the Trustee Letter:  (a) the

22    Holders hold a beneficial interest in the Debentures; (b) until bankruptcy, by virtue of the guarantee,

23    the Holders all possess direct claims against the Debtor; (c) upon bankruptcy, Wilmington Trust is

24    required to distribute the Debentures to the Holders and (d) immediately upon such distribution, the

25    guarantee is cancelled in favor of the new direct obligation from the Debtor to the Holders, i.e., the

26

27

28

18

1  Debentures themselves.[14]  See Bogdanoff Decl., Ex. 2 § 3.15; Ex 3 § 7.1; Ex. 4 §§ 9.2-9.4; and Ex.

2  5 §§ 9.2-9.4.  Accordingly, the Holders were entitled to the actual Debentures upon the Debtor's

3  filing of a petition with the Court.  The fact that Wilmington Trust, as trustee, failed to perform this

4  duty required under the trust documents does not alter the substance—the Holders hold the rights

5  to the Trust Claims.  Id., Ex. 2 § 3.15; Ex 3 § 7.1; Ex. 4 §§ 9.2-9.4; and Ex. 5 §§ 9.2-9.4 (payments

6  on the Debentures to be received by the Holders).

7        The point is clear: certainly upon the filing of the bankruptcy case, the Holders became (and

8  in all likelihood were before) in every sense, the creditors, holding direct guarantees from the

9  Debtor and all of the rights under the Debentures.  And it is only those Holders that are entitled to

10  vote the claims.  Wilmington Trust's contention that it is entitled to vote the Debentures now that

11  the Debtor is in bankruptcy finds no support in the documents or common sense.

12        Third, the fact that the Trusts authorize Wilmington Trust to file proofs of claim in no way

13  means that Wilmington Trust is entitled to vote those claims.  In re Pioneer Finance Corp, 246 B.R.

14  626, 633 (Bankr. D. Nev. 2000) (beneficial holders had the right to vote and noted, "[p]lainly, it is

15  the beneficial holder, not a holder of record, who has the "claim" and the "right to payment"); see

16  In re Southland Corp., 124 B.R. 211, 225 (Banks. N.D. Tex. 1991).

17        The plain language of the trust documents, the structure of the transactions as well as

18  common sense make clear that if Wilmington Trust desired to vote the Trust Claims it was required

19  to do one simple thing:  ask the Holders.  At the Creditors' Meeting, counsel for Wilmington Trust

20  admitted that Wilmington Trust did not solicit proxies from the Holders.  [Docket No. 93, Ex. 1-2,

21  39:3-4]; [Docket No. 92, 7].  Accordingly, Wilmington Trust had no authority to exercise any right

22  to request an election or vote the Trust Claims.

23        **B.    Wilmington Trust Failed to Satisfy the Proxy Solicitation Rules**

24        Wilmington Trust was not authorized to vote the Trust Claims, and no Holder appeared at

25  the Disputed Election to vote on its own behalf.  Unless Wilmington Trust held valid proxies from

26  _____

27        [14] Id., Ex. 8, 9-14.

28
                                    19

1   the Holders, the Trust Claims could not be voted. Fed. R. Bankr. P. 2006; 11 U.S.C. § 702(a).

2   FRBP 2006 provides that the owner of a claim may authorize another person or entity "to vote the

3   claim or otherwise act as the owner's attorney in fact in connection with the administration of the

4   estate" in a case under chapter 7 of the Bankruptcy Code. Fed. R. Bankr. P. 2006. Just as the

5   control of the election of a chapter 7 trustee is "intended to prevent the election of a trustee who

6   will not protect the interests of all creditors," soliciting proxies is regulated to "ensure that

7   creditors' control is not subverted," and is required to be done in writing. Eddie Haggar, 290 B.R.

8   at 284-85.

9       Counsel for Wilmington Trust admitted at the Creditors' Meeting that no proxies were filed

10   with the Court at any time prior to the conclusion of the Creditors' Meeting. [Docket No. 92, 7].

11   Indeed, counsel for Wilmington Trust also admitted at the Creditors' Meeting that Wilmington

12   Trust had not solicited any proxies from any Holders before the meeting. See [Docket No. 93, Ex.

13   1-2, 38:11-39:4]. Wilmington Trust entirely failed to comply with the requirements of FRBP 2006,

14   and has no tenable grounds upon which to base its claim that it had the right to vote in the election

15   with respect to the Trust Claims.

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING
INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

3.        **Mr. Beck Is Not Eligible to Serve as Chapter 7 Trustee**

Ignoring the numerous defects in the Disputed Election itself, Wilmington Trust's proposed

candidate, Mr. Beck, is ineligible to serve as chapter 7 trustee in the Central District of California

in any event.  "A person may serve as trustee in a case . . . only if such person is . . . an individual

that . . . resides or has an office in the judicial district within which the case is pending, or in any

judicial district adjacent to such district."  11 U.S.C. § 321(a)(1).

> The phrase 'reside or have an office' has historically meant a fixed, readily
> accessible place of daily business rather than a legal or voting residence, since, as
> indicated by one court interpreting the former Bankruptcy Act, the provision is
> intended to insure that the trustee will be sufficiently present in the judicial district
> to be reasonably available for advice and consultation.

3 Collier on Bankruptcy ¶ 321.02[2] (15th ed. Rev. 2008) (citing In re Drummond, 416 F.2d 931

(9th Cir. 1969)).  In order to comply with this requirement, the person must "be physically

available on a regular basis in or near the district in which the case [will] be administered."  J.P.

Morgan Inv. Management v. United States Trustee (In re Martech USA), 188 B.R. 847, 851 (B.A.P.

9th Cir. Alaska 1995), aff'd by 90 F.3d 408, (9th Cir. 1996).

The record in this Case is replete with data that demonstrates that Mr. Beck is a resident of

Florida with his principal place of business in Florida.  For example, the website for Mr. Beck's

company, www.becktrustee.com, lists offices in Florida (not anywhere in California).  Indeed, Mr.

Beck's own staff disclaimed any knowledge of offices in California.  The same website, while it

lists several engagements as trustee in other bankruptcy matters, does not list any chapter 7

engagements in California.  The website lists his "contact" information as an address in Boca

Raton, Florida.   Finally, in every pleading filed by Mr. Beck that the Trustee could locate where an

address is indicated, a Florida address is listed, not a California address.  Bogdanoff Decl., Ex. 10,

17-21.

1    Mr. Beck's professional associations show an affiliation with Florida, not California.  For

2 example, Mr. Beck is a Florida lawyer.  As with most state bars, Florida requires that every

3 attorney maintain an address with the bar.  Mr. Beck lists his Florida office with The Florida Bar.

4 The Trustee could not locate any listing with The California State Bar.  Mr. Beck's membership in

5 the Turnaround Management Association list him with the Florida chapter.  Mr. Beck's firm is

6 registered to do business in Florida, but not in California.  Although Mr. Beck does appear to own

7 unit 1 at 303 Carnation Avenue in Corona Del Mar, California, he lists his Boca Raton home as his

8 "Tax Billing Address."  Id., Ex. 10, 17-21.  If Mr. Beck were "physically available" in California

9 on a "regular" basis, presumably he would be willing to receive his tax bills in California as well.

10    Mr. Beck's personal details confirm the same: his drivers license, voting registration, and

11 tax returns make clear that his primary residence is in Florida.  His home is in Boca Raton.  See id.,

12 Ex. 10, 17-21.

13    Wilmington Trust's assertion that Mr. Beck has a "home-office" in Orange County, see

14 [Docket No. 93, Ex. 1-2,16:18-20], is insufficient to overcome all of the foregoing facts, let alone

15 prove that he is regularly located in the Central District of California or any district adjacent thereto.

16 The "mere payment of rent for property in [the judicial district] does not assure [the potential

17 trustee's] presence and availability [in that judicial district]."  Martech USA, 188 B.R. at 851.

18 Accordingly, Mr. Beck is not eligible to serve as a chapter 7 trustee in the Central District of

19 California under § 321(a)(1), and not eligible to serve as chapter 7 trustee in this Case.  Therefore,

20 as no eligible person was elected chapter 7 trustee, § 702(d) dictates that the interim chapter 7

21 trustee should remain in that office.  In re Mid Atlantic Retail Group, Inc., No. 07-81745, 2008

22 Bankr. LEXIS 1895 *10 (Bankr. M.D.N.C. June 18, 2008).

23    **CONCLUSION**

24    The Trustee should retain his position as chapter 7 trustee because (1) no valid election was

25 called due to the absence of a quorum; (2) Wilmington Trust was not entitled to vote with respect

26 to the Trust Claims; and (3) Mr. Beck is not eligible to serve as a chapter 7 trustee in the Central

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING
INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

1 | District of California.  Any of the three grounds for relief is sufficient for a conclusion that,

2 | pursuant to § 702(d), the Trustee should serve as the chapter 7 trustee in the Case.

3 |      **WHEREFORE**, the Trustee respectfully requests that the Court enter an Order,

4 | substantially in the form attached hereto as Exhibit A, confirming the Trustee as the permanent

5 | chapter 7 trustee in the above-captioned Case and granting such other and further relief as the

6 | Court deems appropriate.

7 | October 1, 2008

9 |                Respectfully submitted,

10 |                KLEE, TUCHIN, BOGDANOFF & STERN, LLP

12 |                By: _____

13 |                      LEE BOGDANOFF
               Bankruptcy Counsel for Alfred H. Siegel,
                       Chapter 7 Trustee

15 |                SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

17 |                By: _____
                     VAN C. DURRER II

18 |                       KURT RAMLO
                  Proposed Special Counsel for
               Alfred H. Siegel, Chapter 7 Trustee

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING
INTERIM CHAPTER 7 TRUSTEE AS PERMANENT CHAPTER 7 TRUSTEE**

1   District of California.  Any of the three grounds for relief is sufficient for a conclusion that,

2   pursuant to § 702(d), the Trustee should serve as the chapter 7 trustee in the Case.

3        **WHEREFORE**, the Trustee respectfully requests that the Court enter an Order,

4   substantially in the form attached hereto as Exhibit A, confirming the Trustee as the permanent

5   chapter 7 trustee in the above-captioned Case and granting such other and further relief as the

6   Court deems appropriate.

7   September 24, 2008

8

9                                    Respectfully submitted,

10                                   KLEE, TUCHIN, BOGDANOFF & STERN,
                                     LLP

11

12                                   By:

13                                   _____
                                            LEE BOGDANOFF
                                     Bankruptcy Counsel for Alfred H. Siegel,
14                                            Chapter 7 Trustee

15                                   SKADDEN, ARPS, SLATE, MEAGHER &
                                     FLOM, LLP

16

17                                   By:  _____*/s/ Van C. Durrer II*_____
                                            VAN C. DURRER II
18                                          KURT RAMLO
                                     Proposed Special Counsel for
19                                   Alfred H. Siegel, Chapter 7 Trustee

20

21

22

23

24

25

26

27

28
                                         23