Nossaman LLP
Allan H. Ickowitz (SBN 110797)
Thomas D. Long (SBN 105987)
John W. Kim (SBN 216251)
445 S. Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: 213.612.7800
Facsimile: 213.612.7801
aickowitz@nossaman.com
tlong@nossaman.com
jkim@nossaman.com

Attorneys for The Federal Deposit Insurance Corporation

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>INDYMAC BANCORP, INC.<br><br>Debtor, | Case No: 08-21752-BB<br><br>Chapter 7<br><br>**FDIC'S SUPPLEMENTAL OPPOSITION TO MOTION OF CERTAIN DIRECTORS AND OFFICERS OF DEBTOR FOR RELIEF FROM AUTOMATIC STAY TO ACCESS D&O AND FIDUCIARY LIABILITY INSURANCE POLICY PROCEEDS FOR DEFENSE OF CLAIMS**<br><br><u>Original Hearing:</u><br>Date:    October 28, 2008<br>Time:    10:00 a.m.<br><br><u>Continued Hearing:</u><br>Date:    December 17, 2008<br>Time:    11:00 a.m.<br>Place:   Courtroom 1475<br>         255 East Temple St.<br>         Los Angeles, CA 90012 |

366625_1.DOC

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.  FACTUAL BACKGROUND ........................................................................... 2

III. THE D&O POLICIES AND THE FIDUCIARY POLICIES ARE PROPERTY OF THE BANKRUPTCY ESTATE AND OF THE FDIC'S RECEIVERSHIP OF THE BANK. ................................................. 5

IV.  MOVANTS HAVE NOT SHOWN CAUSE FOR RELIEF FROM STAY. .............................................................................................................. 9

V.   CONCLUSION. ........................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Brandt v. Superior Court* 37 Cal.App.3d 813 ........................................................................ 2

*In Re Louisiana World Exposition, Inc.* 832 F.2d. 1391 (5th Cir. 1987) ................. 6

*In Re Minoco Group of Companies, Ltd.* 799 F.2d. 517 (9th Cir. 1986) ................. 5

*In the Matter of Vitek, Inc.* 51 F.3d. 530 (5th Cir. 1995) ......................................... 6, 7

366625_1.DOC    ii

FDIC'S SUPPLEMENTAL OPPOSITION TO MOTION OF CERTAIN DIRECTORS AND OFFICERS OF DEBTOR FOR RELIEF FROM
AUTOMATIC STAY TO ACCESS D&O AND FIDUCIARY LIABILITY INSURANCE POLICY PROCEEDS FOR DEFENSE OF CLAIMS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT.

The Movants[1] argue that the D&O Policies are not property of the bankruptcy estate. The FDIC believes the Court resolved this issue at the initial hearing on October 28th. The real remaining question is whether the Movants have demonstrated cause for relief from the automatic stay. The FDIC contends they have not for several reasons.

First, Movants did not tender their claims to the D&O A-Side Policies which are the subject of a motion scheduled to be heard concurrently with this Motion. To the extent those Policies pay Movants' defense costs there is no need for relief from stay.

Second, even if relief from stay is granted, the Court should take appropriate steps to condition such relief to protect the assets of the estate. No one with claims against proceeds from the Policies is entitled to retain the proceeds unless such a claim proves to be covered under the Policy. "Insured Persons,"[2] such as the Movants, are entitled to the advancement of costs which may ultimately prove to be covered defense costs. However, the right to retain such advances under the Policies is contingent upon the proof of a covered claim just like any other claim against the Policies. No covered claims have been proven. Under these circumstances the insurers under the Policies have reserved their rights to seek recoupment of any costs advanced to the Movants.

Since the Movants have only a contingent right to access the policy proceeds (contingent upon their overcoming the insurers' reservation of rights and proving that they have suffered a "Loss" covered by the Policies), the bankruptcy court should make sure to protect the estate's assets. This requires proving what an appropriate level of advancement of defense costs is *and* establishing some means by which the Movants would secure repayment of reimbursement advanced to them that ultimately proves not to

---

[1]   All terms which are capitalized have the same definitions in this brief as set forth in the FDIC's original opposition [Docket No. 110] filed October 14, 2008.

[2]   This term is used as defined in the Policies.

be covered under the terms of the Policies.

## II.    FACTUAL BACKGROUND.

Movants have incurred an aggregate of about $830,000 in attorneys' fees monthly, on average, since the commencement of defense activities in July through October 31, 2008.[3] This reaffirms Movants' counsel's representation that an estimate of $1 million per month for attorneys' fees would be on the "high side" and assumes that the litigated matters "go forward very actively." (Hearing Transcript of October 28, 2008 "Transcript" at 19:21-20:10.)

Of Movants' fees incurred so far, a significant portion may not be defense costs. Some portion of the fees relate to this Motion and the mediation pertaining to this Motion. Those expenses do not relate to the defense of any claims against the Movants but rather to obtain a comfort order in order to receive access to insurance proceeds. Movants contend that these fees are defense costs. However, the cost of proving an entitlement to proceeds under an insurance policy is not a defense cost and cannot be recovered from insurance carriers under the policy absent a showing of bad faith on the part of the insurance carriers. (See, e.g., *Brandt v. Superior Court* 37 Cal.App.3d 813, 819 (1985).) Movants have not even alleged, much less attempted to prove, bad faith on the part of any of the insurers.

Movants continue to provide little detail about their fees. Up to now, the Court's order permitting access to the policy proceeds allocated access to the D&O Policies and the Fiduciary Policies prorated by policy limits, rather than based upon the nature of the tasks actually performed. The FDIC contends that the defense of the Fiduciary Actions should be charged against the Fiduciary Policies. In addition, the FDIC contends that the Fiduciary Actions make allegations which rely in part on SEC filings and have been characterized by one insurer as "SEC Related" claims. (Spiegel Supp. Decl., Exh. D at p.

---

[3]    This monthly estimate was calculated from the supplemental declarations submitted by Movants on or about November 24, 2008.

366625_1.DOC                                                    2


32.) Accordingly, at least some of the activities being carried out by Movants' attorneys in responding to the SEC Investigations, particularly where the Movants are defendants in the Fiduciary Actions, but also where the Movants are likely to be named defendants to the Fiduciary Actions in the future, are reasonable and necessary costs of defending the Fiduciary Actions as well and should be allocated between the D&O Policies and the Fiduciary Policies.[4]

The Movants assert that the D&O insurers "have expressly acknowledged their obligation to pay without requiring the insured persons to execute any kind of contractual undertaking to repay such amounts." (Movants' Supplemental Memorandum at 4:27-48, fn. 8.) However, the insurers are not acknowledging that the Movants have any unconditional rights.

> "Our clients [the D&O primary insurers] have agreed not to condition their advancement of defense costs on the inclusion in the interim fee advancement and mutual reservation of rights agreement of a contractual obligation to repay in the event of a determination of no coverage under the Policy. Instead, our clients will advance defense costs pursuant to a reservation of their rights under the Policy and at law to seek reimbursement of any advancement in the event of a determination of no coverage. We will include such a reservation in the interim fee advancement and reservation of rights agreement, with the precise language to be determined." (Villa Declaration, Exhibit A.)[5]

---

[4]  The FDIC understands that the insurers under the Fiduciary Policies have not accepted defense of the SEC Investigations. However, those insurers have not denied defense of the SEC Investigations either. More importantly, the insurers under the Fiduciary Policies have accepted defense of the Fiduciary Actions and therefore must pay for all defense costs which are "reasonable and necessary" for the defense of those actions even if those costs also happen to benefit the defense of the SEC Investigations. Since the insurers under the D&O Policies are defending the SEC Investigations, some of the costs of defending those activities should be equitably allocated between the two groups of insurers.

[5]  These comments are consistent with other comments by the insurers. The primary D&O insurers accepted defense of the Securities Actions and SEC Investigations "subject to a full reservation of rights and pending the ultimate establishment of a claim under the Policy's terms. . . ." (Spiegel Supp. Decl., Exh. C at p. 20.) Similarly, the primary Fiduciary insurer reserved its right "to recoup any fees and costs advanced upon a

The language of any proposed "interim fee advancement and reservation of rights agreement" between Movants and the D&O insurers has not been disclosed to the FDIC. Nonetheless, the insurers' intent remains clear. If the facts of any particular claim develop such that the claim is not covered, the insurers will seek to recover funds they have advanced relating to the defense of that claim from the Movants on the grounds that those costs are not covered under the Policies. Thus, the payments which Movants are seeking to have made may include both losses covered under the Policies and losses not covered under the Policies. The FDIC contends that payments which are not covered under the Policies should not erode the policy limits, regardless of whether or not they are recouped once coverage is determined.

At the initial hearing on this Motion on October 28, 2008, Movants admitted that they had not sought coverage under the D&O A-Side Policies and argued that those policies provided purely excess insurance coverage. (Transcript at 58:12-16.) Since then, Movants have brought a motion seeking relief from the automatic stay in bankruptcy to pursue the D&O A-Side Policies asserting that the D&O A-Side Policies are not only excess but "also contain an express and unambiguous 'drop-down' provision that requires the Side A Only carriers to respond on behalf of directors and officers as if it were primary if losses are not paid by the primary carriers ("Drop-Down Provision".)" (Movants' Relief from Stay Motion re: D&O A Side Policies at 5:7-13.) Movants' Motion for Relief from Stay regarding the D&O A-Side Policies is set to be heard concurrently with this Motion.[6]

In sum, Movants are seeking release of $1 million or more, and perhaps even an unlimited amount, from the D&O Policies each month. The strength of Movants' showing is that they are spending so far an average of $830,000 per month, no portion of which has been demonstrated to be related to covered claims under the Policies and an

---

determination that no coverage exists." (*Id.*, Exh. D at p. 35)

[6] The FDIC responds separately to that motion.

undetermined portion of which clearly relates to pursuing coverage and is therefore likely not covered under the Policies. To the extent the expenses relate to the defense of claims, coverage has not been proven and therefore it has not been demonstrated that the Movants have anything more than a right to borrow against the Policies. The insurers clearly contend that any defense costs advanced for uncovered claims will have to be repaid. That the insurers are not insisting upon any practical means of securing repayment does not mean that this Court should ignore the possible dissipation of the assets of the debtor's estate and of the Bank. As this Court acknowledged, if some or all of the directors are found to be guilty of intentional misconduct "then ultimately not only do they not get the liability indemnified, but in fact they would owe the money back to the extent they got cost of defense paid." (Transcript at 14:21-25.) The importance of preserving these recoupment rights is emphasized by Movants' counsel's candid remark that it would be "impossible to get the money back in our view." (Transcript at 41:23-42:9.)

### III. THE D&O POLICIES AND THE FIDUCIARY POLICIES ARE PROPERTY OF THE BANKRUPTCY ESTATE AND OF THE FDIC'S RECEIVERSHIP OF THE BANK.

Both on this Motion and the motion seeking relief from stay with respect to the D&O A-Side Policies, Movants simply ignore the controlling Ninth Circuit authority. The Ninth Circuit does not distinguish between proceeds of insurance policies and the policies themselves except insofar as proceeds of such policies are payable only pursuant to the terms of the Policies. Instead, where the debtor is one of the insureds under the policy then the policy is property of the debtor's estate if the "estate is worth more with them [the insurance policies] then without them." (*In Re Minoco Group of Companies, Ltd.* 799 F.2d. 517, 519 (9th Cir. 1986).) Since the underlying Securities Actions and Fiduciary Actions frequently name Bancorp as a defendant and seek to impose joint and several liability, the availability of insurance under the D&O Policies and the Fiduciary Policies is important to protect both the bankruptcy and receivership estates. Moreover,

the rights of the bankruptcy and receivership estates to the proceeds are no more contingent than the Movants' rights since neither have yet been proven to be covered under the terms of the Policies. In this sense, the entire discussion of priority of payments is of academic interest only. Expenses constitute a "Loss" under the Policies only if they are in fact covered by the Policies. That coverage determination has not yet been made and cannot yet be made.

Even if the Ninth Circuit accepted the Fifth Circuit's reasoning in *In Re Louisiana World Exposition, Inc.* 832 F.2d. 1391 (5th Cir. 1987), it seems unlikely that the Fifth Circuit would treat this situation as the Movants desire. The Movants suggested that proceeds of the D&O Policies should be declared not to be property of the estate and should be released to them without limitation and without oversight by the bankruptcy court even though the Debtor is a named insured under the Policies. One rationale is that the Movants' losses take priority. Of course, as discussed above, the Movants have not proven a covered "Loss" under the Policies. Moreover, the Fifth Circuit has never directly addressed a situation comparable to this one. As the Fifth Circuit itself explained "the policies at issue in at case [*Louisiana World Exposition*] provided liability coverage *only* for the Debtor's directors and officers and for the obligation of the corporation to indemnify those directors and officers . . . the policies did *not* afford the Debtor any direct coverage for liability to third party claimants." (*In the Matter of Vitek, Inc.* 51 F.3d. 530, 534 (5th Cir. 1995), emphasis in original.) For this reason, the Fifth Circuit has acknowledged that it has not decided this precise case.

> "In this circuit, we are therefore in the position of knowing how to resolve cases on either end of the continuum, but we have not yet decided how to resolve cases lying somewhere along the continuum. On one extreme, when a Debtor corporation owns a liability policy that *exclusively* covers its directors and officers, we know from *World Exposition* that the proceeds of that D&O policy are *not* part of the Debtor's bankruptcy estate. On the other extreme, when a Debtor corporation owns an insurance policy that covers its own liability *vis-à-vis* third parties, we – like almost all other courts that have considered the issue – declare or at least imply that both the policy *and* the proceeds of that policy are property of the Debtor's bankruptcy estate. But we have not yet grappled with how to treat the proceeds of a liability

policy when (1) the policy-owning Debtor is but one of two or more coinsureds or additional named insureds, (2) the rights of the other coinsured(s) or additional named insured(s) are *not* merely derivative of the rights of one primary named insured, and (3) the aggregate potential liability substantially exceeds the aggregate limits of available insurance coverage.

"When ultimately we are faced with such a mid-continuum case, we shall have to decide which one of two positions to take: either (1) the proceeds of a liability policy should be wholly included in the bankruptcy estate of the Debtor that owns the liability policy – even though there are other coinsureds or additional named insureds who have some 'interest' in the proceeds, or (2) the proceeds should be divided among all coinsureds, either per capita or in proportion to the potential or actual liability faced by each insured party." (Emphasis in original.) (*In the Matter of Vitek, Inc.*, *supra*, 51 F.3d. at 535.)

This case is what the Fifth Circuit calls a "mid-continuum" case. The Fifth Circuit does not even suggest that the proper outcome in such a case is what the Movants urge here. Instead, the Fifth Circuit ponders whether the entirety of the insurance policies should be included in the bankruptcy estate or if the proceeds should be divided equitably among all coinsureds which would include the FDIC as receiver and/or conservator, as the FDIC would assert. Regardless of which of the two positions the Fifth Circuit has indicated are appropriate in a case such as this, either involves an acknowledgement that the bankruptcy estate has at least some interest in the policy proceeds.]

Movants' right to have defense costs advanced to them even though they have not proved that they have suffered a covered "Loss" under the Policies is every bit as much a contingent right to proceeds of the Policies as are the rights of the debtor Bancorp and the Bank. Ultimately, to be entitled to retain proceeds under the Policies, Movants, the Bancorp, Bank and any claimants will have to prove that they have incurred expenses which constitute a covered "Loss" under one or more of the Policies. These determinations are likely to be made only after the claims are finally settled or adjudicated. Certainly, no effort has been made to prove a covered "Loss" now.

It is important to realize that the allocation of policy proceeds is not purely an issue of the Movants versus the trustee versus the FDIC. Indeed, the issue may ultimately

become one pitting the Movants against each other. If the claims against the Policies for both defense and indemnity ultimately exceed the policy limits, then situations could emerge as follows: Some of the moving defendants could find their defense and indemnity costs, which otherwise would be covered by the Policies, arguably not covered because the carriers will have paid out defense costs to other Movants who ultimately proved to not be entitled to payments under the Policies because of intentional misconduct. Movants not found responsible for intentional misconduct could have their clear entitlement to policy proceeds impaired through the unrestricted advancement of defense costs to other Movants.

The FDIC agrees generally with the Movants' suggestion that the *New Century* bankruptcy provides some appropriate components of a framework for release of insurance policy proceeds to Movants. One concern that is not addressed in the *New Century* bankruptcy case that is of concern to the FDIC, and should be of concern to the Trustee and perhaps some of the Movants is the absence of any method to address the disbursement of "proceeds" from the Policies to cover items which are not in fact covered by the Policies. As discussed above, the Policies provide for an advance of defense costs on the assumption that those costs *may* ultimately prove to be covered "Loss" under the Policies. The insurers address the possibility that such expenses are not covered by providing for the recoupment of defense costs if a claim is ultimately determined not to be covered under the Policies. If adequate protections are not made to provide for recoupment of any uncovered advances, then the rights of the FDIC, the Trustee and any claimants under the Policies could be impaired. The limits of the Policies should not be considered reduced through the payment of uncovered claims. Yet it can be anticipated that the insurers will argue for such a reduction in the policy limits in the event that they are unable to recoup payments they advance to Movants as sought by this Motion. If a reduction in policy limits is held to result, it will operate to the detriment of the FDIC, the Trustee, claimants and Movants whose losses actually were covered under the Policies. The FDIC submits that a mechanism should be found to address this concern.

## IV. MOVANTS HAVE NOT SHOWN CAUSE FOR RELIEF FROM STAY.

The Movants acknowledge that they must demonstrate cause for relief from stay. Yet this cause may not exist if, as Movants now claim in their companion motion for relief from stay with respect to the D&O A-Side Policies, other insurance policies are available to respond to the very expenses they seek to have covered through this motion for relief from stay. As the Movants candidly admit they have no response one way or the other from the Side A Only D&O insurers. The Drop-Down Provision of the D&O A-Side Policies may only apply if the Court denies access altogether to the Policies at issue on this Motion. Only then will we be able to clearly test the hypothesis of Movants' companion motion that other insurance proceeds are available.[7] This Motion is premature until the Movants can demonstrate the outcome of their efforts to obtain coverage from the D&O A-Side Policies.

## V. CONCLUSION.

For the foregoing reasons, the FDIC requests that the Movants' motion for relief from stay with respect to the D&O Policies and the Fiduciary Policies be denied without prejudice. Alternatively, if the Motion is granted, the method for addressing disbursements outlined in the New Century bankruptcy case are generally acceptable to the FDIC. However, the rights of all parties to challenge any payments made under the Policies for claims that ultimately prove not to be covered should be preserved. In addition, some provision must be made to recover any payments made under the Policies as an advance for expenses which subsequently are determined not to be covered under

---

[7] Movants' proposition that they should be allowed to collect some expenses from the policies at issue on this Motion and other expenses from the policies at issue on the companion motion relating to the D&O A-Side Policies is wishful thinking and double-dipping on Movants' part. Drop-down provisions of an insurance policy normally bring that policy into play only if the underlying policy is not applicable for whatever reason. If the reasonable defense costs subject to reimbursement are determined to be payable from the policies at issue on this Motion, there is no reason to believe that the D&O A-Side Policies would apply.

the Policies. Alternatively, assurance must be obtained that if any such payments are made that prove ultimately not to be covered under the terms of the Policies and which end up being unrecoverable, said payments will not reduce the limits available under the Policies for payment of properly covered claims to other insureds such as the debtor and the FDIC.

Dated: December 3, 2008

NOSSAMAN LLP
Allan H. Ickowitz
Thomas D. Long
John W. Kim

By: _____
THOMAS D. LONG
JOHN W. KIM
Attorneys for The Federal Deposit Insurance Corporation

# PROOF OF SERVICE

The undersigned declares:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is c/o Nossaman LLP, 445 S. Figueroa Street, 31st Floor, Los Angeles, CA 90071.

On December 3, 2008, I served the foregoing **FDIC'S SUPPLEMENTAL OPPOSITION TO MOTION OF CERTAIN DIRECTORS AND OFFICERS OF DEBTOR FOR RELIEF FROM AUTOMATIC STAY TO ACCESS D&O AND FIDUCIARY LIABILITY INSURANCE POLICY PROCEEDS FOR DEFENSE OF CLAIMS**

on parties to the within action as follows:

☒ **(By U.S. Mail)** On the same date, at my said place of business, a true copy thereof enclosed in a sealed envelope, addressed as shown on the attached service list was placed for collection and mailing following the usual business practice of my said employer. I am readily familiar with my said employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service, and, pursuant to that practice, the correspondence would be deposited with the United States Postal Service, with postage thereon fully prepaid, on the same date at Los Angeles, California.

☐ **(By Overnight Service)** I served a true and correct copy by overnight delivery service for delivery on the next business day. Each copy was enclosed in an envelope or package designated by the express service carrier; deposited in a facility regularly maintained by the express service carrier or delivered to a courier or driver authorized to receive documents on its behalf; with delivery fees paid or provided for; addressed as shown on the accompanying service list.

☐ **(By Electronic Service)** By emailing true and correct copies to the persons at the electronic notification address(es) shown on the accompanying service list. The document(s) was/were served electronically and the transmission was reported as complete and without error.

Executed on December 3, 2008.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Mitchi Shibata

366625_1.DOC                    1

FDIC'S SUPPLEMENTAL OPPOSITION TO MOTION OF CERTAIN DIRECTORS AND OFFICERS OF DEBTOR FOR RELIEF FROM AUTOMATIC STAY TO ACCESS D&O AND FIDUCIARY LIABILITY INSURANCE POLICY PROCEEDS FOR DEFENSE OF CLAIMS

# SERVICE LIST

Office of the U.S. Trustee
Peter C. Anderson
United States Trustee
725 S. Figueroa Street, 26th Floor
Los Angeles, CA  90017

Debtor
IndyMac Bancorp, Inc.
c/o Edwin Woodson
Orrick, Harrington & Suttliffe, LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017

Co-Counsel for Debtor
John C. Weitnauer, Esq.
Alston & Bird LLP
1201 W. Peachtree Street
Atlanta, GA  30309-3424

Chapter 7 Trustee
Alfred H. Siegel, Esq.
Siegel, Gottlieb, Mangel & Levine
15233 Ventura Boulevard, 9th Floor
Sherman Oaks, CA  91403-2201

Attorney for Chapter 7 Trustee
Lee Bogdanoff, Esq.
Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA  90067

Joseph A. Eisenberg, Esq.
Jeffers, Mangels, Butler & Marmaro LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Kurt Ramlo, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Attorneys for Debtor
Dean G. Rallis, Jr., Esq.
Lieb M. Lerner, Esq.
Weston Benshoof Rochefort Rubalcava MacCuish LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071

Leib M. Lerner, Esq.
Alston & Bird, LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071

# REQUEST FOR SPECIAL NOTICE

Attorney for Michael W. Perry
D. Jean Veta, Esq.
Michael St. Patrick Baxter, Esq.
Aisha L. William, Esq.
Covington & Burling LLP
1201 Pennsylvania Ave NW
Washington, DC  20004-2401

Richard Hopp
Post Office Box 3601
Van Nuys, CA  91407

Attorneys for Hewlett Packard Company
Anne Marie Kennelly, Esq.
Corporate Counsel
Hewlett-Packard Company
3000 Hanover St., MS 1050
Palo Alto, CA  94304

Ramona Neal, Esq.
Corporate Counsel
Hewlett-Packard Company
11311 Chinden Blvd., MS 314
Boise, ID  83714-0021

366625_1.DOC

2

FDIC'S SUPPLEMENTAL OPPOSITION TO MOTION OF CERTAIN DIRECTORS AND OFFICERS OF DEBTOR FOR RELIEF FROM AUTOMATIC STAY TO ACCESS D&O AND FIDUCIARY LIABILITY INSURANCE POLICY PROCEEDS FOR DEFENSE OF CLAIMS

| | |
|---|---|
| Mr. Ken Higman<br>Sr. Default & Recovery Analyst<br>Hewlett-Packard Company<br>2125 E. Katella Avenue<br>Anaheim, CA 92086 | Attorneys for Spherion Corporation<br>Aram Ordubegian, Esq.<br>Gil Mikalian, Esq.<br>Richardson & Patel LLP<br>10900 Wilshire Blvd., Suite 500<br>Los Angeles, CA 90024 |
| Attorney for Wilmington Trust Company<br>Alan Z. Yudkowsky, Esq.<br>Stroock & Stroock & Lavan LLP<br>2029 Century Park East<br>Los Angeles, CA 90067-3086 | Attorneys for Wilmington Trust Company<br>Kristopher M. Hansen, Esq.<br>Sayan Bhattachryya, Esq.<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, NY 10038-4982 |
| Attorneys for Virgen Cedeno<br>Joseph L. Paller, Jr., Esq.<br>Michael D. Weiner, Esq.<br>Gilbert & Sackman<br>3699 Wilshire Boulevard, Suite 1200<br>Los Angeles, CA 90010 | Joseph P. Guglielmo, Esq.<br>Whatley, Drake & Kallas, LLC<br>1540 Broadway, 37th Floor<br>New York, NY 10036 |
| Attorneys for The Bank of New York Mellon Trust Company<br>Ronald L. Cohen, Esq.<br>Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, NY 10004 | Creditor Ken Burton, Jr.<br>Susan D. Profant, CFCA, CLA, Paralegal<br>Ken Burton, Manatee County Tax Collector<br>P.O. Box 25300<br>Bradenton, FL 34206 |
| Attorneys for Iron Mountain Information Management<br>Frank F. McGinn, Esq.<br>Bartlett Hackett Feinberg P.C.<br>155 Federal Street, 9th Floor<br>Boston, MA 02110 | International Business Machines Corporation<br>Vicky Namken<br>IBM Corporation<br>13800 Diplomat Drive<br>Dallas, TX 75234 |
| Attorneys for the Internal Revenue Service<br>Thomas P. O'Brien, Esq., U.S. Attorney<br>Sandra R. Brown, Esq., Assistant U.S. Attorney<br>Room 7211, Federal Building<br>300 North Los Angeles Street<br>Los Angeles, CA 90012 | Elaine T. Fuller, Esq.<br>Special Assistant U.S. Attorney<br>Room 3018, Federal Building<br>300 North Los Angeles Street<br>Los Angeles, CA 90012 |
| Attorneys for Plaintiffs<br>Kenneth A. Wexler, Eq.<br>Edward A. Wallace, Esq.<br>Melisa Twomey, Esq.<br>Wexler, Toriseva, Wallace LLP<br>55 West Monroe, Suite 3300<br>Chicago, IL 60603 | Robert B. Weiser, Esq.<br>Brett D. Stecker, Esq.<br>Jeffrey J. Ciarlanto, Esq.<br>121 North Wayne Avenue, Suite 100<br>Wayne, PA 19087 |

366625_1.DOC    3

FDIC'S SUPPLEMENTAL OPPOSITION TO MOTION OF CERTAIN DIRECTORS AND OFFICERS OF DEBTOR FOR RELIEF FROM
AUTOMATIC STAY TO ACCESS D&O AND FIDUCIARY LIABILITY INSURANCE POLICY PROCEEDS FOR DEFENSE OF CLAIMS

| | |
|---|---|
| Daniel L. Keller, Esq.<br>Keller, Fishback & Jackson LLP<br>18425 Burbank Blvd., Suite 610<br>Tarzana, CA 91356 | Thomas J. McKenna, Esq.<br>Gainey & McKenna<br>295 Madison Avenue, 4th Floor<br>New York, NY 10017 |
| Attorneys for Claimant, Burnet CAD, Denton County and Williamson County | [NOTE - Include Counsel for all Moving Parties] |

Michael Reed, Esq.
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 1269
Round Rock, TX 78680

John W. Spiegel, Esq.
Lawrence C. Barth, Esq.
Todd J. Rosen, Esq.
Munger, Tolles & Olsen LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071

Gregory S. Bruch, Esq.
Julie A. Smith, Esq.
Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, D.C. 20006

Robert H. Fairbank, Esq.
Richard D. Gluck, Esq.
Fairbank & Vincent
11755 Wilshire Blvd., Suite 2320
Los Angeles, CA 90025

John K. Villa, Esq.
Stephen D. Andrews, Esq.
Jason T. Wright, Esq.
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, D.C. 20005

Mitchell J. Auslander, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Attorneys for certain current and former officers of IndyMac Bancorp, Inc. and/or IndyMac Bank, F.S.B.
Robert L. Corbin, Esq.
Michael W. Fitzgerald, Esq.
Joel M. Athey, Esq.
Corbin Fitzgerald & Athey LLP
601 West Fifth Street, Suite 1150
Los Angeles, CA 90071