ORIGINAL

1  Alfred H. Siegel
   Crowe Horwath LLP
2  15233 Ventura Blvd., 9th Floor
   Sherman Oaks, Ca 91403
3  Telephone: 818-325-8441
4  Facsimile: 818-501-7040

5  Chapter 7 Trustee
   :lli/#00431344
6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

                        LOS ANGELES DIVISION
10

11 | In re                    | CASE NO.: 2:08-bk-21752 BB

12 | INDYMAC BANCORP, INC.,   | CHAPTER 7

13 |                          | **FIRST INTERIM REPORT AND
14 |                          | ACCOUNT OF ALFRED H. SIEGEL,
   |                          | CHAPTER 7 TRUSTEE; AND
15 |       Debtor.            | APPLICATION OF CHAPTER 7
   |                          | TRUSTEE FOR AWARD OF INTERIM
16 |                          | COMPENSATION AND
   |                          | REIMBURSEMENT OF EXPENSES**
17
18 |                          | [August 3, 2008 through January 29, 2009]

19 |                          | **DATE:** March 12, 2009
   |                          | **TIME:** 2:00 PM
20 |                          | **CTRM:** 1482

21

22 **TO THE HONORABLE SHERRI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE,**

23 **THE UNITED STATES TRUSTEE AND TO OTHER PARTIES OF INTEREST:**

24     Alfred H. Siegel, the Chapter 7 Trustee herein, (the "Trustee" or "Applicant") certifies to the

25 Court and to the U.S. Trustee that the Trustee's fees and expenses are reasonable and necessary as

26 specified in 11 U.S.C. § 326. The Trustee also respectfully represents as follows:

27

28

{00431344.DOC / 1}

[FILED FEB 17 2009 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY: Deputy Clerk]

1. **INTRODUCTION**

Applicant seeks an award of interim compensation of $107,768.47 and reimbursement of expenses of $883.06 for the period from August 3, 2008 through January 29, 2009 (the "Subject Period"). The bases of Applicant's fee request are more fully described below:

2. **HISTORY OF CASE:**

On July 31, 2008 (the "Petition Date"), the Debtor filed its petition for relief under chapter 7 of the Bankruptcy Code. On that day, the U.S. Trustee appointed Alfred H. Siegel (the "Trustee") to serve as Chapter 7 Trustee in this case. The meeting of creditors and appearance of Debtor in this case was scheduled for September 11, 2008 and has been continued.

Through the Trustee's investigation and review of the Debtor's Schedules and Statement of Affairs and information obtained from creditors and others, this case appears to have assets and potential actions that may be liquidated for the benefit of creditors. Consistent with my duties to investigate the financial affairs of the Debtor and to collect and reduce to money the property of the estate and with the assistance of Klee, Tuchin, Bogdanoff & Stern ("KTBS"), Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), and my other professionals, I immediately commenced my investigation of the events and transactions culminating in seizure of IndyMac Bank, F.S.A., which is an indirect subsidiary of the Debtor (the "Bank"), by the Federal Deposit Insurance Corporation ("FDIC") and, subsequently, this chapter 7 bankruptcy case.

From the Schedules and Statement of Financial Affairs and testimony adduced at the § 341(a) meeting, it appears that these documents were prepared from the memory of Mr. Michael Perry (a former director and officer of the Debtor), discussions with the Debtor's counsel, and an incomplete review of a limited number of documents.

This is a unique case, involving not only a bankruptcy proceeding for the Debtor but also a separate proceeding, conducted under a different law, for the Bank. Numerous interactions must occur

{00431344.DOC / 1}

between the Trustee's and the FDIC's representatives, and complex issues must be identified, analyzed and addressed. The issues implicate bankruptcy, banking, insurance, tax and many other areas. Further complicating these matters is the fact that no employee remains at the Debtor to assist me in understanding the facts.

**Potential Assets:**

Based upon the incomplete Schedules and Statement of Financial Affairs filed by the Debtor, the estate owns 100% equity interest in IndyMac Intermediate Holdings, Inc., which owns all of the outstanding common stock in the Bank. The Schedules indicate that there was insufficient information to determine whether the Debtor owned any real estate and the Debtor had personal property valued at approximately $20.4 million on the petition date. This personal property appears to have consisted mainly of $19.15 million in cash in the Debtor's bank accounts and $1,250,000 in debts owed to the Debtor by certain professionals, which I learned related to prepetition payments to those firms by the Debtor. I obtained approximately $19.57 million from the Debtor's Wells Fargo bank account, and, as discussed in more detail below, have have recovered approximately $399,000 in prepetition payments by the Debtor to certain professionals. An additional $900,000 was recovered from counsel to former directors and officers, pursuant to a stipulated interim resolution regarding the directors' and officers' insurance policies.

Through formal and informal discovery processes, I am obtaining information concerning additional potential assets, including potential causes of action available to the estate.

**Claims Against the Debtor:**

Based upon the incomplete Schedules and Statement of Financial Affairs filed by the Debtor, the Debtor's scheduled liabilities of funded indebtedness appear to exceed $440 million. Schedule F (Schedule of Creditors Holding Unsecured Nonpriority Claims) lists a liquidated unsecured claim of $223,459,000, which was based on the Debtor's 10-K for the period ending December 31, 2008, and

indicates that the Debtor cannot identify who holds the claim; the creditor is listed as "unknown." Schedule F at p. 10. This "unknown" claim was over half of the $442,632,033.61 in liquidated general unsecured claims identified on Schedule F.

As I understand from Counsel, Bankruptcy Rule 3002(c) sets a bar date for prepetition claims that is 90 days after the first date set for the § 341(a) meeting of creditors, but if the creditors is a governmental unit, a claim is timely filed if it is filed not later than 180 days after the date of the order for relief. Claimants have timely filed sixty-four proofs of claim in the Debtor's case: three proofs of claim (including one that appears to assert an interest in the amount of $800,000 rather than a claim, were filed after the bar date but may be considered timely if they meet an exception to the general rule. These claims include liquidated claims in excess of $249.5 million, but this amount is considerably lower than the actual amounts asserted in these claims because many of them are unliquidated. For example, the Federal Deposit Insurance Corporation ("FDIC") filed a claim that is not liquidated on its face but asserts its claim exceeds $5 billion; Wilmington Trust and Bank of America (as successor to LaSalle Bank) as trustees under indentures, pursuant to which certain debentures were issued, have filed claims for at least $333,990,000 as well as unliquidated amounts; claimants asserting class actions have filed unliquidated claims for breaches of fiduciary duty under the Employee Retirement Income Security Act; and the Pension Benefit Guaranty Corporation has filed claims related to termination of the IndyMac Bank, F.S.B. Defined Benefit Pension Plan for at least $14,418,000 as well as unliquidated amounts.

**Efforts to Obtain Information about the Debtor:**

After my appointment I and my professionals attempted to obtain a better preliminary understanding of the Debtor's assets and liabilities. KTB&S conducted initial discussions with one of the Debtor's counsel, Alston & Bird, who furnished some information and documents to KTB&S and the Trustee's other professionals. I also learned that Orrick, Herrington & Sutcliffe LLP (assisted by

Pricewaterhouse Coopers), who had represented the Debtor and insiders pre-filing, had "downloaded" various documents at the Bank's headquarters shortly before the FDIC's seizure of the Bank; KTB&S made initial arrangements to obtain those documents (this matter subsequently was handled by co-counsel upon its engagement). Shortly thereafter, I sought and obtained Court authority to use estate funds to pay an outside vendor, Techlaw, to process these electronic documents into a reviewable form as well as authority to pay for (i) outside photocopying services in connection with document requests from third parties and (ii) transcription services for third-party depositions and interviews.

My Professionals and I also engaged in discussions with counsel for Mr. Michael Perry (a former director and officer of the Debtor). Prior to the Petition Date, Mr. Perry was an officer and director of the Debtor and the Bank; Mr. Perry was relieved of his duties with the Bank when the FDIC seized it, and after the § 341(a) meeting, he resigned from his positions with the Debtor. We met with Mr. Perry and his counsel (as well as counsel for the Debtor) on August 21, 2008 with the goal of obtaining information about the Debtor's assets and liabilities, the preparation of the Schedules and the Statement of Financial Affairs, and the events that led to the FDIC's seizure of the Bank and the Debtor's filing of this case.

Skadden has had primary responsibility for evaluating the hundreds of thousands of pages of documents obtained from the Debtor's former professionals, and for presenting requests for access to documents from the FDIC. As discussed further below, in the context of the FDIC's proposed sale of the principal assets of the Bank, I recently requested and obtained Rule 2004 examinations and access to substantial documents. I have has also requested a Rule 2004 examination of Ernst & Young, the Debtor's former accounting firm.

While pursuing my main goal of understanding the Debtor's assets and liabilities, I also began and continue to seek to identify sources of recovery for creditors.

{00431344.DOC / 1}

**FDIC Issues:**

It appeared from the Debtor's schedules that, prior to the Petition Date, substantially all of the books and records of the Debtor were maintained by IndyMac Bank, F.S.B. ("IndyMac Bank") and IndyMac Bank's employees and agents on IndyMac Bank's behalf. On or about July 11, 2008, the FDIC was appointed receiver for IndyMac Bank. According to the Debtor's schedules, since July 11, 2008, the FDIC has been in the custody and control of the books and records of IndyMac Bank and the Debtor. I am endeavoring to obtain access to these voluminous materials currently in the possession of the FDIC to copy them. Therefore, I requested and obtained authorization to disburse up to $30,000 for the costs of copying materials in the possession of the FDIC as well as to copy materials produced at examinations (which are described below).

I have has been informed that, prior to the time that the FDIC was appointed receiver of IndyMac Bank, Debtor's outside counsel obtained certain electronic files. The Debtor's prior counsel has provided that data, which is largely not useable in its current form. My Professionals and I need to review that data to investigate the financial affairs of the Debtor. Moreover, the United States Securities and Exchange Commission (the "SEC") has requested that I make such documents available. I must use an outside vendor to convert the files to a format that can be reviewed. Therefore, I requested and obtained authority to disburse up to $350,000 for the processing of the data and the creation of a "Concordance" database. The funding request covered not only the costs of converting the above-referenced data but other data that may be obtained as we attempt to gather books and records of the Debtor.

Consistent with my duties to investigate the financial affairs of the Debtor and to collect and reduce to money the property of the estate, I intend to conduct several examinations of third parties. These examinations will include depositions before a stenographer and/or a videographer and requests for production of documents. Therefore, I requested and obtained authority to disburse up to $15,000

for transcription and/or video recording of deposition testimony. Additionally, the 341(a) meeting of creditors to be held on September 11, 2008, needed to be transcribed.

To decrease the costs sought my professionals for noticing creditors and other parties in interest in this case (which may be more expensive than outside vendors), I requested and obtained authority to disburse up to $5,000 for printing and mailing of notice to creditors and interest holders in the Chapter 7 case.

**The Debtor's Proof of Claim Against the FDIC:**

I was required to respond to a deadline on the filing of a proof of claim against the Bank. Skadden took the lead in preparing this claim, which was served on the FDIC on October 14, 2008. KTB&S assisted with respect to bankruptcy and insolvency issues raised by the claim.

**The Trustee's Motion for a Rule 2004 Examination of the FDIC:**

The FDIC recently announced the impending sale of the Bank, and I filed a motion for a Rule 2004 Examination of the FDIC in order to determine if the FDIC has records showing that this sale might include property of the Debtor's estate. At the hearing on this matter, the Bankruptcy Court granted the motion insofar as it requested an order requiring the production of documents and access to the identified witnesses, denied the motion insofar as it requested that the production occur by January 16, 2009, and gave the FDIC a limited period of additional time to comply with the production requests.

**Continued 341 Meeting:**

I and KTB&S prepared for and attended the meeting of creditors held pursuant to § 341(a) of the Bankruptcy Code in this case on September 11, 2008, and at that meeting, KTB&S conducted the principal examination of Mr. Perry regarding the Debtor's affairs and the events that led up to the Debtor's filing of its bankruptcy petition. Also, at the meeting, Wilmington Trust Company ("Wilmington"), which serves as Property/Institutional Trustee and Delaware Trustee of IndyMac

{00431344.DOC / 1}

Capital Trusts I, VI, X and XIII and as Indenture Trustee for the notes and debentures held by IndyMac Capital Trusts VI, X and XIII, purported to vote to elect Jeffrey H. Beck as the permanent trustee in this case.

The United States Trustee reported the dispute to the Court. "Report of Disputed Election of Trustee" ("Report") [Docket No. 92], filed by the Office of the United States Trustee on September 24, 2008. Following the filing of the Report, on October 1, 2008, I had my Counsel file the "Motion for Order Confirming Interim Chapter 7 Trustee as Permanent Chapter 7 Trustee" (the "Motion") [Docket No. 95], which was prepared by Skadden with input by KTB&S. The Motion requested that the Court confirm me as permanent trustee in this case. Wilmington opposed the Motion and requested that the Court confirm Mr. Beck as the permanent trustee. Opposition to Motion for Order Confirming Interim Chapter 7 Trustee As Permanent Chapter 7 Trustee [Docket No. 114].

After the Motion was filed, the matter was resolved. The 341 meeting is being continued until after the May of 2009 in order to allow myself and my professional's additional time in which to develop information.

**Recovery of Prepetition Payments to Professionals**:

From the Schedules and information developed since the petition date, the Debtor made certain payments to professionals by the Debtor that were made shortly before the Petition Date. I have recovered $250,000 from Heller Ehrman LLP and approximately $149,000 from Orrick, Herrington & Sutcliffe, LLP. With respect to amounts that have not been returned, KTB&S assisted me in analyzing various issues relating to the Debtor's payments to Orrick, Herrington & Sutcliffe, LLP, Dykema Gossett PLLC and Allen Matkins Leck Gamble & Mallory LLP. KTB&S sent demand letters dated January 26, 2009, to both Allen Matkins and Dykema Gossett repeating the request for turnover of monies paid to them pre-petition. If no funds are forthcoming, I will instruct my counsel to commence litigation against both parties.

An additional $900,000 was recovered from counsel to former directors and officers, pursuant to a stipulated interim resolution regarding the directors' and officers' insurance policies.

**Litigation with Directors and Officers Regarding Insurance Proceeds:**

I opposed the relief sought in the Notice of Motion and Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Movants: Louis E. Caldera, Stuart A. Gabriel, Lyle E. Gramley, Gabriel E. Greene, Hugh M. Grant, Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, John F. Seymour, Bruce G. Willison, Michael W. Perry, S. Blair Abernathy, Richard H. Wohl, and A. Scott Keys) [Docket No. 91] (the "D&O Motion"), which requested, among other things, a determination by this Court that the automatic stay does not apply to paying defense costs to the Debtor's former D&Os on insurance policies owned by the Debtor's estate, or in the alternative, sought to lift the automatic stay to allow the former D&Os to access those insurance polices for payment of their defense costs for cause. The parties thereupon executed a stipulation providing for certain payments of defense costs out of insurance proceeds to the Debtor's D&Os and provided for counsel to the D&Os to return $900,000 in prepetition payments to the Debtor. Additional disputes are ongoing.

**Automatic Stay/Non-bankruptcy Litigation:**

I have been informed that prior to the Petition Date, the Debtor was a party to multiple actions across country and subject to a number of investigations by governmental agencies. KTB&S coordinated the filing of notices of the automatic stay in approximately 40 actions and is monitoring those actions.

The remaining work in this case is as follows:

**Claims**: Creditors were noticed to file claims by November 26, 2008.

**Taxes**: In September 2008, my accountants needed to file (and will in the future need to file) tax returns. In addition to gathering information on the Debtor's assets and liabilities, I obtained accounting records necessary to enable the accountants to prepare and file the Debtor's federal tax

{00431344.DOC / 1}

returns by the deadline of September 15, 2008. Just weeks before the deadline, Ernst & Young, which had been accountants for the Debtor and related entities that were part of a consolidated group for purposes of filing tax returns, advised that it would not release the information it had gathered for purposes of preparing tax returns (the "Tax Return Information") without the consent of the FDIC. The FDIC also advised that it intended to file a tax return for the Bank and certain of its affiliates, but not for the Debtor. KTB&S coordinated discussions with Ernst & Young and the FDIC to obtain the FDIC's consent for Ernst & Young to provide the Tax Return Information to me. Because of the very short time available prior to the deadline for filing tax returns, in tandem with its efforts to resolve the matter consensually, KTB&S prepared a draft emergency motion for a Rule 2004 examination of Ernst & Young, so that my counsel could have filed it on an emergency basis if I had not received the Tax Return Information in time for my accountants to prepare tax returns prior to the deadline. I have reserved his rights with respect to all of these matters.

I estimate that the funds on hand combined with future funds anticipated to be received will be more than sufficient to pay all Chapter 7 expenses of administration.

3. **PRIOR FEE APPLICATIONS AND PAYMENTS TO TRUSTEE:**

This is Applicant's first interim application for compensation. No retainer or compensation has been paid to Applicant to date. There is no provision or agreement for payment to Applicant in this case except from this estate in such sums as the Court may allow.

4.    **The following exhibits in support of the Application are attached:**

**EXHIBIT**        **DESCRIPTION**

A        Detail of costs advanced by the Trustee for which he is entitled to reimbursement through January 29, 2009

{00431344.DOC / 1}

5. **FACTORS AFFECTING THE AWARD OF COMPENSATION:**

During the Subject Period, my Staff and I have recorded and expended 455.05 hours of time in connection with the administration of this estate. Based on disbursements made thus far in the amount of $2,817,282.33 through January 29, 2009, the maximum compensation allowable to me under 11 U.S.C. §326 (a) is 107,768.47. Based upon the Court's prior ruling on the fee requests of the estate's professionals, I request an award of 100% of this amount and 100% of the expenses incurred.

In determining the value of my services to the estate, I believe the Court should consider various factors, including that the amount of reasonable compensation shall be treated as a commission and that the interim fee requested is reasonable based on the time expended, the novelty and difficulty of the issues presented and the work performed, the skill requisite to perform the services, and the results obtained.

I am a partner in the accounting firm of Crowe Horwath LLP ("Crowe")[1], a limited liability partnership. Whatever fee may be allowed in this case will be shared with the Crowe partnership and the partners. With that exception, no agreement or understanding exists for a division of fees to be received herein between myself and any person whatsoever.

---

[1] On October 7, 2008, the Court entered an order granting the employment application of Grobstein, Horwath & Company LLP ("GHC") as the Trustee's accountants. On December 8, 2008, Crowe acquired certain assets of GHC, and most of the partners of GHC became partners of Crowe. The "Notice of Disclosure of Transaction Whereby Grobstein, Horwath & Company LLP Shall Cease Employment as Accountants Effective December 7, 2008 [and] Request for Order Authorizing Employment of Crowe Horwath LLP Effective December 8, 2008" was filed on January 7, 2009. No opposition to this notice has been filed, and the Trustee expects a declaration of non-opposition and proposed order to be served and filed (and the order lodged) shortly.

{00431344.DOC / 1}

6. **CONCLUSION**:

Wherefore, Applicant respectfully requests that the Court:

    (a) approve on an interim basis fees of $107,768.47 and expenses of $883.06 for the Subject Period;

    (b) authorize the Trustee to pay 100 % of allowed amount and 100% of such expenses forthwith; and

    (c) grant such other relief that the Court may deem just and proper.

DATE: 2/17/2009

ALFRED H. SIEGEL,
CHAPTER 7 TRUSTEE

{00431344.DOC / 1}

**VERIFICATION**

I am currently the duly appointed and acting Chapter 7 Trustee of the bankruptcy estate of IndyMac Bancorp, Inc., Bankruptcy Case No. 2:08-bk-21752 BB.

I have read the foregoing **FIRST INTERIM REPORT AND ACCOUNT OF ALFRED H. SIEGEL, CHAPTER 7 TRUSTEE; AND APPLICATION OF CHAPTER 7 TRUSTEE FOR AWARD OF INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES** [August 3, 2008 through January 29, 2009] and I certify that the same is true and correct of my own knowledge, except as to those matters that are stated on information and belief, and as to those matters I believe those matters to be true.

DATE: 2/17/2009

ALFRED H. SIEGEL,
CHAPTER 7 TRUSTEE

{00431344.DOC / 1}

## Grobstein, Horwath and Company LLP
### Summary of Charges for the period 08/01/2008 to 12/07/2008

### * * * * * D R A F T   I N V O I C E   (D O  N O T  M A I L) * * * * *

*Expense Detail: Miscellaneous Expenses*

| Timekeeper | Date | Charges |
|---|---|---|
| Expense<br>Miscellaneous 8/20/08 Conference Call - 8/26 1-800 Conference Invoice | 09/06/2008 | 78.64 |
| Expense<br>Miscellaneous 8/18 Conference Call - on 8-26 invoice | 09/06/2008 | 24.33 |
| Expense<br>Miscellaneous LexisNexis search, invoice date 8/31/08 | 09/07/2008 | 80.24 |
| Expense<br>Miscellaneous FedEx fee Invoice # 2-915-34810 dated 09/12/08. | 09/15/2008 | 29.80 |
| Expense<br>Miscellaneous Choicepoint Invoice AB0001872940 | 09/22/2008 | 58.50 |
| Expense<br>Miscellaneous Overnite Express Invoice # 979619 dated 10/01/08. | 10/03/2008 | 14.54 |
| Expense<br>Miscellaneous Now Messenger Invoice # 43989 dated 09/30/08. | 10/08/2008 | 75.31 |
| Expense<br>Miscellaneous Overnite Express Invoice # 50445 dated 10/06/08. | 10/09/2008 | 14.54 |
| Expense<br>Miscellaneous Overnite Express Invoice # 984203 dated 10/13/08. | 10/21/2008 | 14.54 |
| Expense<br>Miscellaneous Overnite Express Invoice # 985541 dated 10/20/08. | 10/24/2008 | 14.54 |
| Expense<br>Miscellaneous Overnite Express Invoice # 985541 dated 10/20/08. | 10/24/2008 | 14.54 |
| Expense<br>Miscellaneous Overnite Express Invoice # 986388 dated 10/27/08. | 10/30/2008 | 15.44 |
| Expense<br>Miscellaneous Now Messenger Invoice # 44404 dated 10/31/08. | 11/04/2008 | 41.87 |

Exhibit "A"   Page 1 of 2

## Grobstein, Horwath and Company LLP
### Summary of Charges for the period 08/01/2008 to 12/07/2008

* * * * * D R A F T   I N V O I C E     (D O   N O T   M A I L) * * * * *

### *Expense Detail: Miscellaneous Expenses*

| Timekeeper | Date | Charges |
|---|---|---|
| Expense | 11/19/2008 | 26.16 |
| Miscellaneous FedEx fee, Invoice # 2-990-33145 dated 11/114/08. | | |
| Expense | 12/01/2008 | 17.12 |
| Miscellaneous Miscellaneous Overnite Express Invoice # 993081 dated 11/24/08. | | |
| Expense | 12/02/2008 | 17.12 |
| Miscellaneous Miscellaneous Overnite Express Invoice # 993081 dated 11/24/08. | | |
| Expense | 12/06/2008 | 291.09 |
| Miscellaneous Miscellaneous 1-800 Conference Call 10-23-08 Invoice 1200607793 for October 2 conference call | | |
| Expense | 12/06/2008 | 32.15 |
| Miscellaneous Miscellaneous 1-800 Conference Call 10-23-08 Invoice 1200607793 for conference call on October 22 | | |
| Expense | 12/06/2008 | 22.59 |
| Miscellaneous Miscellaneous 1-800 Conference Call 11-7-08 Invoice 1200612708 for conference call on November 7 | | |
| **Total Miscellaneous** | | **883.06** |
| **Total Expenses** | | **883.06** |

Exhibit "A" Page 2 of 2

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 15233 Ventura Boulevard, Ninth Floor, Sherman Oaks, California 91403.

On February 18, 2009, I served the foregoing document described as:

**FIRST INTERIM REPORT AND ACCOUNT OF ALFRED H. SIEGEL, CHAPTER 7 TRUSTEE; AND APPLICATION OF CHAPTER 7 TRUSTEE FOR AWARD OF INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

on the interested parties in this action by placing

_____ the original
__X__ a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED LIST**

__X__ (BY MAIL) I deposited such envelope with postage thereon fully prepaid in the United States mail at Sherman Oaks, California.

Executed on February 18, 2009, at Sherman Oaks, California.

_____ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__ (FEDERAL) I declare that I am employed in the office of Alfred H. Siegel, bankruptcy trustee, at whose direction the service was made.

_____
BITA KAMRAN

{00431344.DOC / 1}

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# SERVICE LIST

**Chapter 7 Trustee**
Alfred H. Siegel
Siegel, Gottlieb, Mangel & LeVine
15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403-2201

**Counsel to Debtor**
John C. Weitnauer, Esq.
Alston & Bird LLP
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309-3424

**Counsel to Debtor**
Dean G. Rallis, Jr., Esq.
Leib M. Lerner
Alston & Bird LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071

**Counsel to Debtor**
Dwight Smith, Esq.
Alston & Bird LLP
The Atlantic Building
950 F Street NW
Washington, DC 20004

**Office of the United States Trustee**
725 S. Figueroa Street, Suite 2600
Los Angeles, CA 90017

**Counsel to Trustee**
Laura L Buchanan, Esq.
Lee Bogdanoff, Esq.
Klee Tuchin Bogdanoff & Stern LLP
1999 Avenue of the Stars 39th Fl
Los Angeles, CA 90067

**Counsel to Trustee**
Van Durrer, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071

**Counsel to Trustee**
Joseph A. Eisenberg P.C., Esq.
Julia J. Rider, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Howard Grobstein
Grobstein, Horwath & Company LLP
15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403-2201

{00431344.DOC / 1}