Lee R. Bogdanoff (Cal. Bar No. 119542)
Matthew C. Heyn (Cal. Bar No. 227474)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone:   (310) 407-4000
Facsimile:    (310) 407-9090
Email:   mheyn@ktbslaw.com; lbogdanoff@ktbslaw.com

Bankruptcy Counsel for Alfred H. Siegel, Solely as Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>INDYMAC BANCORP, INC.,<br><br>Debtor. | Case No: 08-21752 BB<br><br>Chapter 7<br><br>**TRUSTEE'S NOTICE OF MOTION AND MOTION TO (1) APPROVE SETTLEMENT WITH AARON AND MARY WADE AND (2) AUTHORIZE THE TRUSTEE TO ENTER INTO SIMILAR SETTLEMENT AGREEMENTS WITH SIMILARLY SITUATED PARTIES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ALFRED H. SIEGEL IN SUPPORT THEREOF**<br><br>**Hearing**<br><br>**Date: APPLICATION TO SHORTEN TIME**<br>**Time:    FILED CONCURRENTLY**<br>**Place:** Courtroom 1475<br>           Roybal Federal Building<br>           255 East Temple Street<br>           Los Angeles, California 90012 |

128392.3

**TO THE HONORABLE SHERRI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL CREDITORS AND OTHER PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that Alfred H. Siegel, solely as Chapter 7 Trustee (the "Trustee") for the estate of IndyMac Bancorp, Inc. ("Bancorp"), hereby files this *Trustee's Notice of Motion and Motion to (1) Approve Settlement with Aaron and Mary Wade and (2) Authorize the Trustee to Enter into Similar Settlement Agreements with Similarly Situated Parties* (the "Motion"), which seeks entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("FRBP"): (1) approving the settlement by and between the Trustee, on behalf of the estate of IndyMac Bancorp, Inc. (the "Estate"), and former employees Aaron and Mary Wade (the "Wades"), relating to the loan extended by IndyMac Bank, F.S.B. (the "Bank") to the Wades, as such settlement is described herein, and (2) authorizing and approving, similar settlements by the Trustee, with similarly situated parties, without further order of the Court. A true and correct copy of the proposed Settlement Agreement is attached hereto as Exhibit A.

As described herein, the Wades are the makers of a promissory note ("Note") in favor of the Bank in the amount of $300,000, secured by a second lien deed of trust (the "Second Deed of Trust") against their home. Under the settlement, the parties have agreed that the Trustee will release the Second Deed of Trust, the Wades will remit to the Estate the sum of $20,000.[1] After conducting due diligence in the matter, the Trustee has determined that, due to the decline in residential home values, the value of the Estate's interest in the Second Deed of Trust is less than the settlement amount (if any value at all). The Trustee respectfully submits that this resolution is fair and reasonable under the circumstances.

The Trustee is aware of at least six other loans made to former employees that are secured by second lien deeds of trust, which appear to be of limited or no value. In order to

---

[1] All discussion and summary herein of the terms and conditions of the settlement is qualified in its entirety by the final settlement agreement document, which should be reviewed in its entirety by parties in interest.

1

minimize administrative expense and conserve judicial resources, the Trustee requests authority to enter into settlement agreements with similarly situated parties under the same basic parameters as the proposed settlement with the Wades and, in those instances where the Trustee determines that the Estate's interest in the second lien deed of trust is zero, to release such lien and exchange mutual releases related to the notes, without the payment of any cash consideration from the holder of the promissory note.

**PLEASE TAKE FURTHER NOTICE** that, in support of the Motion, the Trustee relies on the appended Memorandum of Points and Authorities and Declaration of Alfred H. Siegel (the "Siegel Decl."), as well as the record in the above-captioned bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that, concurrently with the filing of this motion, that the Trustee has filed an application to request that this Motion be heard on shortened time.  If the Court grants the Trustee's application, this Motion will be heard on February 17, 2011 at 10:00 a.m. or such other time as the Court may designate, in Courtroom 1475 of the Roybal Federal Building at 255 East Temple Street, Los Angeles, California 90012 and that, pursuant to Local Bankruptcy Rule 9013-1(f), any response or opposition to the Motion must be in writing and must be filed with the Court and served upon counsel for the Trustee at the address set forth in the upper left-hand corner of the first page no later than February 17 2011.  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve a written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

.

KLEE, TUCHIN, BOGDANOFF & STERN LLP

DATED:  February 9, 2011        */s/ Matthew C. Heyn*
                                Matthew C. Heyn
                                Attorneys for Alfred H. Siegel
                                Solely as Chapter 7 Trustee

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## OVERVIEW

As part of his investigation and administration of Bancorp's assets, the Trustee has discovered that Bancorp is the holder of, among other things, eight promissory notes of former employees of Bancorp and/or the Bank. The Trustee is informed and believes that these notes were issued as an inducement to such individuals to become employed by Bancorp and/or the Bank. Each promissory note is secured by a second lien deed of trust on each employee's home, and each contains provisions for the partial forgiveness of the indebtedness over time, contingent on the employee continuing to work for the Bank or Bancorp.

While the face value of each of these notes is in the hundreds of thousands of dollars, the value of the Estate's interest in most of these notes is limited.[2] First, the collateral securing many of the notes is worth less than the total debt on the home serving as collateral. Second, under California law, a purchase money loan secured by California real estate is effectively non-recourse as to the borrowers. *See* Cal. Code of Civil Procedure §580b. Pursuant to this Motion, the Trustee seeks approval of a settlement with the makers of one of these notes for an amount that exceeds the value of the Estate's interest in the collateral, and seeks authority to enter into similar agreements with the makers of the other notes.

The Trustee respectfully submits that the requested relief is fair, reasonable, appropriate, and beneficial to the Estate – allowing the Trustee to maximize the Estate's recovery with respect to these assets (to the extent there is recoverable value), and minimizing administrative expense and the expenditure of judicial resources in respect thereto.

---

[2] One of the former employees sold his home for a value adequate to pay off both the first and the second-lien deeds of trust. With respect to this note, the Trustee released the second-lien deed of trust after receiving the full value of the note.

3

## II.

## STATEMENT OF FACTS

### A. General Background.

On or around September 1, 2006, the Bank loaned $300,000.00 to the Wades. In connection with the loan, the Wades executed the Note and the Deed of Trust, securing the Note in the Wades' home located at 1930 Lyans Drive, La Canada Flintridge, CA 91011 (the "Property"), in favor of the Bank.

On July 11, 2008, the Office of Thrift Supervision closed the Bank and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver of the Bank. On July 31, 2008, IndyMac Bancorp, Inc. ("Bancorp") filed its petition for relief under chapter 7 of the Bankruptcy Code [Dkt. No. 1], thereby initiating the above-captioned bankruptcy case. By order entered on December 11, 2008, Alfred H. Siegel was appointed Chapter 7 Trustee in Bancorp's Chapter 7 case.

After consultation with the Trustee's professionals, the FDIC determined that the Note and Deed of Trust (along with seven other similar notes and deeds of trust) belong to Bancorp, not the Bank. On December 16, 2009, the FDIC as receiver for the Bank executed that certain "Assignment of Note and Security Documents" related to the Wades' Note in favor of Bancorp and, on December 17, 2009, executed that certain "Assignment of Deed of Trust" related to the Wades' Deed of Trust in favor of Bancorp.

On March 3, 2010, counsel for the Trustee initiated correspondence with the Wades seeking the initiation of monthly principal and interest payments. The Wades' counsel responded thereafter, contending that the Wades did not have any obligation to make payments on account of the Note. The Wades alleged that they had been promised that the Note would be forgiven in full by a prior Bank officer.

Following this initial exchange, the Wades provided information regarding their first deed of trust, the Trustee conducted diligence on the value of the Property, and the parties negotiated regarding a resolution of the outstanding indebtedness under the Note. As a result of those negotiations and other efforts, the Trustee and the Wades have reached agreement

on a settlement.

### B. The Wade Settlement.

The Trustee and the Wades have reach a settlement pursuant to the following key terms:

- The Wades will remit to the Trustee, on behalf of the Estate, the sum of $20,000.
- The Trustee will reconvey the Deed of Trust and cancel the Note.
- The parties will exchange mutual releases of claims related to the Note.

The Trustee respectfully submits that this resolution is fair and reasonable under the circumstances. After conducting due diligence in the matter, the Trustee has determined that, due to the decline in residential home values since the Note was made, the value of the Estate's interest in the Second Deed of Trust is now less than the settlement amount (if any value at all). Although the Trustee believes the Estate's rights with respect to the Note and Deed of Trust are well-founded, there can be no doubt that collecting on the Note or foreclosing on the Deed of Trust would involve additional cost, delay and risk. The Trustee has agreed to the settlement, subject to Court approval, in order to avoid the additional costs and risks associated with attempting to collect the Note.

Consensual resolution of these issues pursuant to the terms of the Settlement Agreement will provide an immediate payment of $20,000 to the Estate, with no further risk or expenditures.

The Trustee and the Wades, through their respective counsel, negotiated the settlement in good faith and at arms'-length. With the assistance of his professionals, the Trustee has determined that the Estate is receiving fair value for the release granted under the settlement. The Trustee believes that the settlement is fair, reasonable and in the best interest of this bankruptcy estate.

### C. Settlement of Similarly Situated Notes.

The Trustee is aware of approximately seven other loans made to former employees that are secured by second lien deeds of trust, which appear to be of limited or no value. In

5

order to minimize administrative expense and conserve judicial resources, the Trustee requests authority hereunder to enter into settlement agreements with similarly situated parties under the same basic parameters as the proposed settlement with the Wades: i.e., settling for an amount that is equal or less than the Trustee's determination of value of the Estate's interest in the second lien of trust, taking into account the anticipated costs and risks of seeking to foreclose upon those liens.  In those instances where the Trustee determines that the Estate's interest in the second lien deed of trust is zero, the Trustee seeks authority to release such lien without the payment of any cash consideration from the holder of the promissory note.  The Trustee respectfully submits that this is a sensible way to proceed, given the circumstances presented, the amounts involved, and the administrative expense of filing future motions with respect to these particular settlements.

## III.

## ARGUMENT

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  FRBP 9019(a).  "The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986).  Accordingly, in approving a compromise, the Court need conduct neither an exhaustive investigation into the validity of, nor a mini-trial on the merits of, the claims sought to be compromised. *United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, it is sufficient that the Court find that the compromise was negotiated in good faith and is reasonable, fair, and equitable. *In re A & C Props.*, 784 F.2d at 1381.

The Ninth Circuit has identified the following factors for consideration in determining whether a proposed compromise is reasonable, fair, and equitable:

(a) the probability of success in the litigation;

6

  (b)  the difficulties, if any, to be encountered in the matter of collection;

  (c)  the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

  (d)  the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* (citation omitted).

Consideration of these factors does not require the Court to decide the questions raised in the settled controversies, or to determine whether a proposed compromise is the best that could possibly have been achieved. Rather, the Court need only canvass the issues to determine whether the compromise falls "below the *lowest point in the zone of reasonableness*." *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972) (emphasis added); *see also Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 189 (2d Cir. 1985); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). Finally, although the Court should consider the reasonable views of creditors, "objections do not rule. It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

The settlement with the Wades represents a compromise that clearly falls within the range of reasonableness and is far above the lowest point in that range. Although the Trustee could continue to attempt to collect from the Wades and attempt to foreclose on its second deed of trust, this likely would result in litigation, the risk and expenses of which would erode and significantly delay the Estate's net recovery – which could be zero at the end of the process. Moreover, the Note and Deed of Trust appear to be purchase money obligations, which are non-recourse as against the Wades personally. *See* Cal. Code of Civil Procedure §580b ("No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure

repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.")

By contrast, consensual resolution of the disputed issues pursuant to the terms of the Settlement Agreement will provide an immediate payment of $20,000 to the Estate, with no further risk or expenditures. The Settlement Agreement was negotiated in good faith and at arms'-length, and the Trustee believes that it is fair, reasonable and in the best interest of the Estate.

Further, it is reasonable and appropriate to authorize the Trustee to enter into similar settlements and bind the Estate, without further order of the Court, with respect to the other second lien notes issued to former employees. In the coming weeks and months, the Trustee will attempt to recover what he can on account of these notes. Based upon his preliminary review of those notes, the value of the Estate's interest in each of the second lien deeds of trust is substantially less than the face amount of notes, if it is of any value at all. Allowing the Trustee to enter into similar settlements for an amount that is equal or less than the Trustee's determination of the value of the Estate's interest in the second lien of trust (taking into account the anticipated costs and risks of seeking to foreclose upon those liens), will allow the Trustee to maximize the value of these assets with a minimum of administrative expense and burden on the Court).

Where the Trustee determines that the value of the second lien is zero, the Trustee specifically requests authority to release such lien without the payment of any cash consideration from the holder of the promissory note. Where the Trustee determines that there is no potential benefit for the Estate in pursuing collection or foreclosure efforts, the Trustee should be allowed to avoid such administrative expense. This authority will grant the Trustee the flexibility to deal with such situations promptly and with a minimum of expense.

## IV.

## CONCLUSION

For the reasons and based on the authorities presented above, the Court should grant the relief requested.

KLEE, TUCHIN, BOGDANOFF & STERN LLP.

DATED: February 9, 2010

*/s/ Matthew C. Heyn*
Matthew C. Heyn
Attorneys for Alfred H. Siegel, Solely as
Chapter 7 Trustee

## DECLARATION OF ALFRED H. SIEGEL

I, Alfred H. Siegel, do hereby declare as follows:

1. I am over eighteen years of age. Except as otherwise indicated, if called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

2. I am the Chapter 7 Trustee in the above-captioned chapter 7 case of IndyMac Bancorp, Inc. ("Bancorp").

3. Bancorp commenced the above-captioned chapter 7 case on July 31, 2008. On July 11, 2008, the Office of Thrift Supervision (the "OTS") closed IndyMac Bank (the "Bank"). I was appointed the permanent Chapter 7 Trustee of Bancorp's estate (the "Estate") on December 11, 2008.

4. As part of my investigation and administration of Bancorp's assets, I have discovered that Bancorp is the holder of, among other things, eight promissory notes of former employees of Bancorp and/or the Bank. In the interests of the creditors of Bancorp, I have sought to liquidate those notes for a fair value. One such note is the note made by Aaron and Mary Wade (the "Wades") in the face amount of $300,000 (the "Note"), which is secured by a deed of trust on their home (the "Deed of Trust").

5. Through counsel, the Wades have provided me information regarding their first deed of trust. I have conducted diligence on the value of their home (including consulting with a real estate broker) and, based on that, I have negotiated with them at arms-length regarding a resolution of the outstanding indebtedness under the Note. As a result of those negotiations and other efforts, I have agreed (subject to Court approval) to the Settlement Agreement attached hereto as Exhibit A.

6. I believe the proposed settlement is fair and reasonable under the circumstances. After conducting due diligence in the matter (including consulting with a real estate broker regarding the value of the Wades' home and reviewing an appraisal on the value of the Wades home as of January, 2011), I have determined that the value of the Estate's interest in the Second Deed of Trust is now less than the settlement amount (if any

value at all). In addition, collecting on the Note or foreclosing on the Deed of Trust would involve additional cost, delay and risk. I have agreed to the settlement, subject to Court approval, in order to avoid the additional costs and risks associated with attempting to collect the Note.

7.    In the coming weeks and months, I will continue my attempts to recover what I can on account of the other notes. Based upon my preliminary review of those other notes (including consulting with a real estate broker), the value of the Estate's interest in each of the second lien deeds of trust is substantially less than the face amount of notes, if it is of any value at all.

8.    Granting me authority to enter into similar settlements for an amount that is equal or less than the Trustee's determination of the value of the Estate's interest in the second lien of trust, will allow me to maximize the value of these assets with a minimum of administrative expense and burden on the Court. If I determine that the value of the second lien is zero, I request authority to release such lien and without the payment of any cash consideration from the holder of the promissory note. Granting me this authority will give me the flexibility to deal with worthless estate property in a way that minimizes administrative costs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __9__ day of February, 2011 at __SHERMAN OAKS, CA__.

_____
ALFRED H. SIEGEL

128392.3

11