1  ANDREW L. SANDLER (Admitted *Pro Hac Vice*)
   BENJAMIN B. KLUBES (Admitted *Pro Hac Vice*)
2  BUCKLEY SANDLER LLP
   1250 24th Street N.W., Suite 700
3  Washington, District of Columbia 20037
   Telephone: (202) 349-8000
4  Facsimile: (202) 349-8080
   E-mail: asandler@buckleysandler.com, bklubes@buckleysandler.com
5
   *Special Counsel for Alfred H. Siegel, Chapter 7 Trustee*
6

7                    **UNITED STATES BANKRUPTCY COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9                        **LOS ANGELES DIVISION**

10  In re                                    Case No. 2:08-bk-21752-BB

11  INDYMAC BANCORP, INC.,                   Chapter 7

12          Debtor.                          **FINAL APPLICATION OF BUCKLEY
                                             SANDLER LLP FOR ALLOWANCE AND
13                                           PAYMENT OF FEES AND EXPENSES
                                             INCURRED AS SPECIAL COUNSEL FOR
14                                           THE CHAPTER 7 TRUSTEE FOR THE
                                             PERIOD MARCH 23, 2009 THROUGH
15                                           SEPTEMBER 30, 2017; DECLARATION
                                             OF BENJAMIN B. KLUBES IN SUPPORT
16                                           THEREOF**

17                                           [DECLARATION OF ALFRED H. SIEGEL
                                             FILED OCTOBER 17, 2017, DKT. NO. 1030]
18

19                                                   **Final Fee Hearing**
                                             Judge:  Hon. Sheri Bluebond
20                                           Date:   To be separately noticed
                                             Time:   To be separately noticed
21                                           Place:  United States Bankruptcy Court
                                                     255 E. Temple St.
22                                                   Courtroom 1539
                                                     Los Angeles, CA 90012
23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      SUMMARY OF BUCKLEY SANDLER'S ENGAGEMENT ...................................2

II.     SUMMARY OF COMPENSATION REQUESTED ...........................................7

    A.      Compensation Previously Approved ................................................ 7

        1.      Fees and Expenses Under the Second Employment Order. ......................... 7

        2.      Contingent Fees and Expenses Under the Second Employment Order ...................................................................... 9

        3.      The Remaining Period......................................................... 11

    B.      The Entire Fee Period......................................................... 11

III.    NARRATIVE HISTORY OF THE CASE .............................................12

    A.      General Background............................................................ 12

    B.      Summary of Activity During Entire Fee Period ................................ 12

IV.     CALCULATION OF CONTINGENT FEES .............................................12

    A.      Expenses .................................................................... 14

    B.      Contingent Hourly Fees ...................................................... 15

    C.      Estate Reimbursement........................................................ 16

    D.      Prior Discretionary Reserve ................................................. 17

    E.      Contingent Percentage Fee................................................... 18

V.      SUMMARY OF SERVICES RENDERED...............................................19

    A.      Project Billing and Narrative Statement of Services Rendered ............... 19

        1.      Asset Analysis and Recovery – 02......................................... 20

        2.      Government Affairs – 20 .................................................. 20

        3.      Insurance – 21 .......................................................... 21

        4.      Investigations and Review – 23 .......................................... 21

        5.      Litigation – 25 ......................................................... 22

        6.      Non-Working Travel Time - 28 ............................................ 22

        7.      Fee and Retention Matters – 33 .......................................... 23

VI.     SUMMARY OF COSTS AND EXPENSES ..............................................23

| | A. | Legal Research | 23 |
|---|---|---|---|
| | B. | Delivery Services | 23 |
| | C. | Court Fees | 24 |
| | D. | Transcript Fees | 24 |
| | E. | Conference Call and Long-Distance Telephone | 24 |
| | F. | Printing and Duplicating | 24 |
| | G. | Travel | 24 |
| | H. | Mediation | 25 |
| | I. | Consulting Expert | 25 |
| VII. | | REQUEST FOR FINAL COMPENSATION | 25 |
| | A. | The Requested Hourly Compensation and Expenses Are Reasonable | 25 |
| | B. | The Requested Contingency Fees Are Appropriate | 26 |
| VIII. | | CONCLUSION | 28 |
| | | DECLARATION OF BENJAMIN B. KLUBES | 30 |

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, (1st Cir. 1985) ..................................................................................................................................28

*Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re Circle K Corp.)*, 279 F.3d 669 (9th Cir. 2001) ......................................................................................................27

*In re Benassi*, 72 B.R. 44 (D. Minn. 1987) ..........................................................................28

*In re Hunt*, 238 F.3d 1098, (9th Cir. 2001) ..........................................................................25

*In re Merry-Go-Round Enters.*, 244 B.R. 327 (Bankr. D. Md. 2000) ..................................27

*Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869 (S.D.N.Y. 2008) .........................27

*Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465 (9th Cir. 1983) ......................25

4

5

6

7

8

9

10

11

12

## STATUTES

13

11 U.S.C. § 330 ................................................................................................................25, 31

28 C.F.R. § 58, Appendix A ......................................................................................................1

Fed. R. Bankr. P. 2002(a) ..........................................................................................................1

Local Bankruptcy Rule 2016-1 ....................................................................................1, 12, 23

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **TO THE HONORABLE SHERI BLUEBOND, CHIEF UNITED STATES BANKRUPTCY**

2   **JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE CHAPTER 7**

3   **TRUSTEE; AND OTHER PARTIES IN INTEREST:**

4         Buckley Sandler LLP ("Buckley Sandler" or "BuckleySandler"),[1] special counsel for

5   Alfred H. Siegel, solely as chapter 7 trustee (the "Trustee") in the above-captioned chapter 7 case

6   (the "Bankruptcy Case") of IndyMac Bancorp, Inc. (the "Debtor" and its bankruptcy estate, the

7   "Estate"), hereby respectfully applies for an order: (1) allowing compensation to Buckley Sandler,

8   on a final basis, for services rendered and expenses incurred during the period from March 23,

9   2009 through September 30, 2017 (the "Entire Fee Period"), in the total amount of

10  $17,751,979.54, comprised of hourly-based fees for services rendered of $7,871,706.43, fees for

11  contingent percentage-of-recovery awards of $9,541,969.74, and expenses incurred of

12  $338,303.37; (2) authorizing and directing the Trustee to pay the unpaid balance of that amount of

13  $72,758.99 to Buckley Sandler; (3) approving and allowing payment for additional fees and

14  expenses incurred preparing and prosecuting this application, including appearing at the hearing

15  thereon, not to exceed $4,675.65; and (4) granting Buckley Sandler any other relief that this Court

16  deems necessary and appropriate (this "Final Fee Application").

17        Buckley Sandler submits this Final Fee Application pursuant to Bankruptcy Code sections

18  328(a), 330, and 331, Federal Rules of Bankruptcy Procedure 2002(a)(6) and 2016, Local

19  Bankruptcy Rule 2016-1, and the *Guidelines for Reviewing Applications for Compensation &*

20  *Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, 28 C.F.R. § 58, Appendix A (the "U.S.

21  Trustee Guidelines"). This Final Fee Application is supported by the attached *Declaration of*

22  *Benjamin B. Klubes* (the "Klubes Declaration") and the *Declaration of Alfred H. Siegel in Support*

23  *of Final Fee Applications* (the "Trustee Declaration") (Dkt No. 1030, filed on October 17, 2017),

24  as well as by Buckley Sandler's previously-filed fee applications and evidence in support thereof

25  and the record of the Bankruptcy Case more generally.

26  ─────────────────

27  [1] Buckley Sandler underwent a re-branding in March 2017 and the firm's name is now two
    words instead of one. However, since prior filings referred to the firm under its one-word

28  spelling, "BuckleySandler" is used throughout this Application when quoting previous filings.

The following exhibits are included with this Final Fee Application:

**Exhibit 1** is a summary of the background and qualifications of the Buckley Sandler attorneys principally responsible for rendering services to the Trustee during the Entire Fee Period.

**Exhibit 2** is a summary of Buckley Sandler's professional fees for the Entire Fee Period, organized by activity category and month.

**Exhibit 3** is a summary of Buckley Sandler's expenses for the Entire Fee Period.

**Exhibit 4** is an itemized list of Buckley Sandler's expenses for the Entire Fee Period.

**Exhibit 5** is a summary of the total number of hours billed and the dollar amounts expended by each Buckley Sandler attorney and paralegal in rendering services during the Entire Fee Period.

**Exhibit 6** contains a complete chronological listing of each time entry for the Entire Fee Period.

Finally, **Exhibits 7, 8, and 9** are true and correct copies of the Second Employment Application (as defined below), the order approving that application (*i.e.*, the Second Employment Order, defined fully below), and the *Declaration of Lee R. Bogdanoff* containing the "Letter" referenced in the Second Employment Order.

**I.**

**SUMMARY OF BUCKLEY SANDLER'S ENGAGEMENT**

As was detailed in the prior interim fee applications of Buckley Sandler LLP,[2] the Buckley Sandler attorneys with primary responsibility for the case, Andrew Sandler and Benjamin Klubes,

---

[2] *See First Interim Application of BuckleySandler LLP for Allowance and Payment of Fees and Expenses Incurred as Special Counsel for the Chapter 7 Trustee for the Period from March 23, 2009 through July 10, 2009* [Dkt. No. 342]; *Second Interim Application of BuckleySandler LLP for Allowance and Payment of Fees and Expenses Incurred as Special Counsel for the Chapter 7 Trustee for the Period from July 11, 2009 through December 7, 2009* [Dkt. No. 390]; *Third Interim Application of BuckleySandler LLP for Allowance and Payment of Fees and Expenses Incurred as Special Counsel for the Chapter 7 Trustee for the Period from December 8, 2009 through March 31, 2010* [Dkt. No. 436]; *Fourth Interim Application of BuckleySandler LLP for Allowance and Payment of Fees and Expenses Incurred as Special Counsel for the Chapter 7 Trustee for the Period from April 1, 2010 through August 13, 2010* [Dkt. No. 488]; *Fifth Interim Application of BuckleySandler LLP for Allowance and Payment*

1  were previously members of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden").  The

2  Trustee employed Skadden as his special counsel, and the Court authorized that employment on

3  October 7, 2008.[3]  On March 20, 2009, Sandler and Klubes withdrew as members of Skadden to

4  form Buckley Sandler.  *See* Exhibit 1 (summaries of the background and qualifications of Messrs.

5  Sandler and Klubes).  Buckley Sandler is a national law firm headquartered in Washington, D.C.

6  that specializes in the representation of financial services firms in enforcement, litigation,

7  transactional, regulatory, and public policy issues.  These are areas in which Buckley Sandler

8  attorneys have extensive experience.

9        On April 13, 2009, the Trustee filed the *Application of Alfred H. Siegel, Chapter 7 Trustee,*

10  *for Order (1) Authorizing Employment of BuckleySandler LLP as Special Counsel, (2) Amending*

11  *the Order Authorizing Employment of Klee, Tuchin, Bogdanoff & Stern LLP as Bankruptcy*

12  *Counsel, and (3) Approving Reduced Hourly and Contingency Fee Compensation Arrangements*

13  *for Both Firms Pursuant to Bankruptcy Code Sections 327(a) and 328(a)* [Dkt. No. 284] (the

14  "Second Employment Application").  The Second Employment Application, attached to this

15  Application as Exhibit 7, sought, *inter alia*, (i) to employ Buckley Sandler as the Trustee's special

16  counsel and (ii) to amend the terms and conditions of the employment of Klee, Tuchin, Bogdanoff

17

18  *of Fees and Expenses Incurred as Special Counsel for the Chapter 7 Trustee for the Period from August 14, 2010 through December 31, 2010* [Dkt. No. 543]; *Sixth Interim Application of*

19  *BuckleySandler LLP for Allowance and Payment of Fees and Expenses Incurred as Special Counsel for the Chapter 7 Trustee for the Period from January 1, 2011 through April 30, 2011*

20  [Dkt. No. 593]; *Seventh Interim Application of BuckleySandler LLP for Allowance and*

21  *Payment of Expenses Incurred as Special Counsel for the Chapter 7 Trustee for the Period from May 1, 2011 through February 29, 2012* [Dkt. No. 685]; *Interim Application of*

22  *BuckleySandler LLP for Allowance and Payment of Certain Contingent Fees and Expenses Incurred as Special Counsel for the Chapter 7 Trustee for the Period from May 1, 2011*

23  *through February 28, 2014* [Dkt. No. 776]; *Interim Application of BuckleySandler LLP Requesting Allowance and Payment of Certain Contingent Fees and Expenses Incurred as*

24  *Special Counsel for the Chapter 7 Trustee from March 1, 2014 through October 31, 2014*

25  [Dkt. No. 870]; *Interim Application of BuckleySandler LLP Requesting Allowance and Payment of Certain Contingent Fees Incurred from November 1, 2014 through August 31,*

26  *2016* [Dkt. No. 1003].

27  [3]  *See Order Granting Application of Alfred H. Siegel, Chapter 7 Trustee, for Order Authorizing Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel* [Dkt. No.

28  105].

& Stern LLP ("KTB&S") effective March 20, 2009, such that KTB&S could continue to render, and Buckley Sandler could render, certain legal services required to administer the Estate and to investigate, and to the extent meritorious, to pursue, the Estate's potential causes of action.

The Second Employment Application proposed, *inter alia*, (1) reduced hourly rates for KTB&S and BuckleySandler for services provided on and after March 20, 2009; (2) caps on the aggregate compensation to be paid to KTB&S and Buckley Sandler for work performed on and after March 20, 2009 in the absence of any Recoveries; and (3) if the Estate realized Recoveries, a "waterfall" mechanism providing for the contingent payment of (a) accrued-but-unpaid hourly fees (at the reduced rates) for work performed in excess of the caps after March 20, 2009, and (b) a percentage-of-recovery-based award.  Under this arrangement, out-of-pocket expenses incurred by either firm in connection with this engagement are not subject to the fee cap and are fully reimbursable.

The details of this hybrid compensation arrangement were set forth in the Second Employment Application as follows:

A.    Hourly Fees. Commencing March 20, 2009 through the balance of the case, KTB&S and BuckleySandler will both charge 75% of their customary hourly fees presently in effect from the Estate through the balance of the case, subject to paragraph (D)(2) regarding deferral of their fees.  There will be no change in the two firms' hourly fees during the balance of the case.

B.    Fee Cap, Interim Payments and Continuation of Services.  Commencing March 20, 2009 through the balance of the case:

1.    BuckleySandler total hourly fees are capped at $4 million, subject to paragraph (D)(2) regarding deferral of their fees;

2.    KTB&S total hourly fees are capped at $1.5 million, subject to paragraph (D)(2) regarding deferral of their fees;

3.    Until the $4 million cap for BuckleySandler and $1.5 million cap for KTB&S is reached, BuckleySandler and KTB&S shall be entitled to receive payment in an amount equal to 100% of the allowed services rendered and expenses incurred pursuant to interim fee applications heard every 120 days.  The allowance of all hourly fees shall be governed by the traditional "loadstar" factors and the standards applicable under Bankruptcy Code Sections 330 and 331, provided that no upward adjustment from the hourly rate discount specified in paragraph A (Hourly Fees), and no downward adjustment in the hourly fees based on the compensation payable or paid under paragraph (D)(4), shall be requested or approved; and

4

4.    Notwithstanding the exhaustion of the respective fee caps, BuckleySandler and KTB&S shall continue to render the services for which they are respectively employed.

C.    Expenses in connection with investigation, litigation, settlement and the like involving former insiders, former advisors, and governmental units and officials, tax refund work, and other expenses in connection with the respective employments:  The Estate will pay all expenses relating thereto, whether directly or as billed by KTB&S and BuckleySandler, through the conclusion of the case.

D.    Recoupment of Advances and Deferrals.  (i) Any recovery by the Estate in the form of cash, as and when payable, or property (including deferred payments) as and when reduced to cash, from litigation, settlement and the like involving former insiders, former advisors, governmental units (including officials thereof), Federal depository institutions, regulatory and oversight agencies (including officials thereof), tax refund work, and (ii) any amounts realized and available for distribution (as and when to be distributed) on account of allowed unsecured claims, other than any disallowed or subordinated claims of governmental units, Federal depository institutions, and regulatory and oversight agencies, as a result of the disallowance or subordination, in whole or in part, of any such entities' claims (collectively, the "Recoveries") shall be made as follows:

1.    The first dollars from the Recoveries shall reimburse the Estate for all out of pocket expenses incurred per paragraph C (regarding certain expenses), i.e., all expenses incurred by BuckleySandler and KTB&S on or after March 20, 2009;

2.    If any funds remain in the Recoveries after payment of all expenses per the preceding paragraph, the next dollars shall compensate KTB&S and BuckleySandler for such amounts as they deferred from their normal hourly rates and actual total hourly charges under paragraphs A (Hourly Fees) and B (Fee Cap, Interim Payments and Continuation of Services), i.e., all incurred on or after March 20, 2009 but not paid.  To the extent the Recoveries are insufficient to pay this amount in full, compensation to the firms shall be paid pro rata;

3.    If any funds remain in the Recoveries after payment of all expenses and deferred fees per the preceding two paragraphs, the next dollars shall reimburse the Estate for all hourly fees paid up to the cap in Paragraph B(3) above, in other words, the *lesser* of $5.5 million and the amount actually paid to KTB&S and BuckleySandler for services on or after March 20, 2009 pursuant to paragraphs A (Hourly Fees) and B (Fee Cap, Interim Payments and Continuation of Services); and

4.    If any funds remain in the Recoveries after payment of all expenses, deferred fees and fee reimbursement per the preceding three paragraphs, then:

a.    Of the next $20 million or portion thereof, 12% shall be paid to BuckleySandler and 8% to KTB&S.  The balance (80%) shall remain in the Estate to be distributed as required by applicable law;

b.    Of the next $20 million or portion thereof, 15% shall be paid to BuckleySandler and 10% to KTB&S.  The balance (75%) shall remain in the Estate to be distributed as required by applicable law; and

c.    Of all remaining amounts, if any, 18% shall be paid to BuckleySandler and 12% to KTB&S.  The balance (70%) shall remain in the Estate to be distributed as required by applicable law.

1    Second Employment Application at 13-15.

2          While the Second Employment Application was pending, the Federal Deposit Insurance

3    Corporation (the "FDIC") raised several issues regarding alleged ambiguities in the Second

4    Employment Application.  In order to obviate an objection by the FDIC, the Trustee (through his

5    counsel) negotiated a clarification to the Second Employment Application, which is contained in a

6    letter sent to the FDIC's counsel that was filed with the Court at the time the Second Employment

7    Application was pending.  *See* Dkt. No. 304, Exh. 5.  The clarification provides:

8          [T]he agreement of the parties is that while the firms may recover hourly fees in
           excess of the aggregate of $5.5 million fee cap, but only to the extent of and from
9          the Recoveries, the 25% discount on the hourly fees remains in effect as to all
           hourly fees.
10

11   *Id.* ¶ 2.  Further, KTB&S and Buckley Sandler agreed that they would not adjust their hourly rates

12   over the course of the Bankruptcy Case.  In other words, even before applying the 25% discount,

13   future hourly fees would always be calculated at 2009 rates, regardless of how long the case took

14   or how much each attorney's hourly rate increased over time to reflect his or her increased

15   experience and the increased demand for his or her services.[4]

16          The Court held a hearing on the Second Employment Application on May 15, 2009, and

17   granted that application by order dated May 20, 2009 (the "Second Employment Order") [Dkt. No.

18   318, attached hereto as Exhibit 8].  The Court specifically approved the proposed compensation

19   arrangements pursuant to Bankruptcy Code section 328(a), providing, *inter alia*:

20         The terms and conditions for compensation of BuckleySandler and KTB&S
           pursuant to Bankruptcy Code Section 328(a), as set forth in the Application at
21         pages 13-15 and the Letter at pages 1-2 (including the reduced hourly rate, fee cap
           and contingent fee compensation arrangements) are incorporated by this reference
22         into this Order and are hereby approved. . . .

23   Second Employment Order ¶ 4.

24          The concessions agreed to by KTB&S and Buckley Sandler under the Second Employment

25   Order have resulted in substantial savings to the Estate.  The 25% immediate-discount savings

26

27   [4]   For attorneys who joined Buckley Sandler after 2009, their rates for work in connection with
           this case were frozen at 75% of the firm's 2009 rates, depending on their particular seniority.
28         *See* Klubes Decl. ¶ 7.

1  have been further compounded by the effective discount achieved by the freezing of KTB&S's

2  and Buckley Sandler's hourly rates at 2009 levels.  In every year since 2009, the hourly rates of

3  the attorneys in these cases have increased to reflect their increased experience and market

4  demand for their services.  Thus, while the rates for Andrew Sandler and Benjamin Klubes were

5  $930 and $825 respectively in 2009, those rates have increased over the years to $1,145 and $995

6  in 2014.[5]  In these examples, the rates of these attorneys have increased approximately 23% and

7  20% over the course of the case, yet none of these increases have been borne by the Estate.

8  Klubes Decl. ¶ 8.

9          Buckley Sandler has neither received nor been promised any compensation for the services

10  that it has rendered or the expenses that it has incurred in this case except as authorized by this

11  Court.  Neither Buckley Sandler nor any of its partners has any agreement or understanding of any

12  kind to divide, pay over, or share any portion of the fees to be awarded to Buckley Sandler with

13  any other person or attorney except as among the partners of Buckley Sandler.  Following the

14  Petition Date, neither Buckley Sandler nor any of its members acquired or received a transfer of a

15  beneficial interest in claims against the Debtor or stock of the Debtor.

16                                        **II.**

17                    **SUMMARY OF COMPENSATION REQUESTED**[6]

18  **A.      Compensation Previously Approved**

19          **1.      Fees and Expenses Under the Second Employment Order.**

20          In connection with Buckley Sandler's services and out-of-pocket costs under the Second

21  Employment Order (*i.e.*, on and after March 19, 2009), up to the cap of $4 million in fees,

22  Buckley Sandler filed seven interim fee applications.  The Court approved each of those

23  applications and the Trustee paid Buckley Sandler as follows:

24

25  [5]  The 2014 rates are used by way of example because 2014 was the last year Buckley Sandler
26      attorneys billed for their services.

27  [6]  Buckley Sandler incorporates herein by this reference all of its previously-filed fee
      applications and all evidence filed in support thereof.

28

| Application and Order | Period | Fees and Expenses Approved | Payment Received |
|---|---|---|---|
| First Interim Application [Dkt. No. 342]; Order [Dkt. No. 351] | March 23, 2009 through July 10, 2009 | $1,218,508.39[7] <br><br> Fees: $1,191,770.64 <br> Expenses: $26,737.75 | $1,218,508.39 |
| Second Interim Application [Dkt. No. 390]; Order [Dkt. No. 405] | July 11, 2009 through December 7, 2009 | $796,393.37[8] <br><br> Fees: $787,465.51 <br> Expenses: $8,927.86 | $796,393.37 |
| Third Interim Application [Dkt. No. 436]; Order [Dkt. No. 457] | December 8, 2009 through March 31, 2010 | $590,729.31[9] <br><br> Fees: $538,597.50 <br> Expenses: $52,131.81 | $590,729.31 |
| Fourth Interim Application [Dkt. No. 488]; Order [Dkt. No. 523] | April 1, 2010 through August 13, 2010 | $890,958.90[10] <br><br> Fees: $848,844.74 <br> Expenses: $42,114.16 | $890,958.90 |
| Fifth Interim Application [Dkt. No. 543]; Order [Dkt. No. 566] | August 14, 2010 through December 31, 2010 | $529,576.90[11] <br><br> Fees: $461,458.12 <br> Expenses: $68,118.78 | $529,576.90 |
| Sixth Interim Application [Dkt. No. 593]; Order [Dkt. No. 618] | Jan. 1, 2011 through April 30, 2011 | $200,059.36[12] <br><br> Fees: $171,863.49 <br> Expenses: $28,195.87 | $200,059.36 |

---

[7]  The Court approved the full amount of the fees and expenses requested in the First Interim Application.

[8]  The Court approved the full amount of the fees and expenses requested in the Second Interim Application.

[9]  The Court approved approximately 95 percent of the fees requested and the full amount of the expenses requested in the Third Interim Application.

[10]  The Court allowed approximately 98 percent of the fees requested and the full amount of the expenses requested in the Fourth Interim Application.

[11]  The Court allowed approximately 98 percent of the fees requested and the full amount of the expenses requested in the Fifth Interim Application.

[12]  The Court allowed the full amount of the fees (up to the fee cap) and expenses requested in the Sixth Interim Application.

| Application and Order | Period | Fees and Expenses Approved | Payment Received |
|---|---|---|---|
| Seventh Interim Application [Dkt. No. 685]; Order [Dkt. No. 712] [expenses only] | May 1, 2011 through February 29, 2012 | $99,223.97[13]<br><br>Expenses:  $99,223.97 | $99,223.97 |
| **Totals** | | **$17,814,220.55**<br><br>**Fees: $4,000,000.00**<br>**Expenses: $325,450.20** | **$4,325,450.20** |

As the chart above indicates, pursuant to these applications, Buckley Sandler obtained interim allowance and payment of (i) hourly professional fees incurred on and after March 20, 2009 up to the $4 million cap, and (ii) out-of-pocket expenses incurred on and after March 20, 2009, through and including February 29, 2012.

**2.    Contingent Fees and Expenses Under the Second Employment Order**

Following April 2011, in accordance with the Second Employment Order, Buckley Sandler continued to provide services to the Trustee on a contingent-fee basis.  As set forth in Section I above, and discussed further in Section IV below, these contingent fees comprised two components: (1) a contingent reduced hourly fee under paragraph D.2 of the Second Employment Application, and (2) a contingent percentage-of-recovery award under paragraph D.4.  The recovery of these contingent fees depends on the realization by the Estate of "Recoveries" and the extent of those Recoveries.

Based on the realization by the Estate of more than $18.8 million in Recoveries, Buckley Sandler filed an interim application on March 19, 2014 [Dkt. No. 776], seeking allowance and payment of contingent fees under the Second Employment Order, as well as outstanding expenses

---

[13]    The Court allowed the full amount of the expenses requested in the Seventh Interim Application.

(the "Eighth Interim Application").[14]  Pursuant to the Order granting the Eighth Interim

Application [Dkt. No. 816] (the "Eighth Interim Order"), the Court allowed and authorized

payment to Buckley Sandler of $4,394,751.54 in contingent fees and $9,571.08 in expenses.  Of

those contingent fees, (i) $3,828,204.56 represented contingent hourly fees incurred for services

rendered between May 1, 2011 and February 28, 2014, and (ii) $566,546.98 represented a

contingent percentage-of-recovery award, based on the Court-approved formula set forth in the

Second Employment Application.  The Trustee subsequently paid Buckley Sandler these amounts.

Following the entry of the Eighth Interim Order, the Ninth Circuit Court of Appeals

rendered a final decision affirming a judgment in the Trustee's favor regarding the ownership of

certain income tax refunds.  Based on the realization by the Estate of the resulting $58,593,252.20

in additional Recoveries, Buckley Sandler filed an interim application on November 12, 2014

[Dkt. No. 870], seeking (i) allowance of additional contingent fees under the Second Employment

Order, and payment of such fees, subject to a discretionary reserve by the Trustee of up to

$750,000 for additional hourly fees that KTB&S and Buckley Sandler may incur, and (ii)

outstanding expenses (the "Ninth Interim Application").  Pursuant to the order granting the Ninth

Interim Application [Dkt. No. 907] (the "Ninth Interim Order"), the Court allowed and authorized

payment to Buckley Sandler of $8,959,501.30 in fees and $3,282.09 in expenses.  Of those

allowed fees, (i) $43,501.87 represented contingent hourly fees incurred for services rendered

between March 1, 2014 and October 31, 2014, and (ii) $8,915,999.43 represented a contingent

percentage-of-recovery award, based on the Court-approved formula set forth in the Second

Employment Application.  The Trustee subsequently paid BuckleySandler $8,827,783.39,

representing 100% of the approved expenses and fees, *less* $135,000 (this $135,000 reduction

---

[14]  BuckleySandler incorporates herein by this reference the Eighth Interim Application and all
evidence filed in support thereof.  *See Interim Application of BuckleySandler LLP for
Allowance and Payment of Certain Contingent Fees and Expenses Incurred as Special
Counsel for the Chapter 7 Trustee for the Period from May 1, 2011 through February 28,
2014* [Dkt. No. 776]; *Declaration of Alfred H. Siegel Re Interim Applications of Professionals
Retained by the Chapter 7 Trustee for the Periods Through March 10, 2014* [Dkt. No. 783].

1   represented the incremental portion of Buckley Sandler's contingency fee – 18% – of the

2   $750,000 reserve that was established by the Trustee for future hourly fees).

3        In connection with the Trustee making certain end-of-year interim distributions to

4   unsecured creditors in 2016, Buckley Sandler filed an interim application on October 11, 2016

5   [Docket No. 1003], seeking (i) allowance of additional contingent fees under the Second

6   Employment Order, and payment of such fees, subject to continuation of the discretionary reserve

7   by the Trustee for additional hourly fees that KTB&S and Buckley Sandler may incur, and (ii)

8   outstanding expenses (the "Tenth Interim Application").  Pursuant to the order granting the Tenth

9   Interim Application [Docket No. 1018] (the "Tenth Interim Order"), the Court allowed and

10  authorized payment to Buckley Sandler for the period November 1, 2014 through and including

11  August 31, 2016, in the amount of $121,664.34, all of which was attributable to contingent

12  percentage-of-recovery fees, based on the Court-approved formula set forth in the Second

13  Employment Application.  The Trustee subsequently paid Buckley Sandler this amount.

14       **3.    The Remaining Period**

15       Buckley Sandler has not incurred any hourly fees or expenses since the filing of its last

16  interim fee application on October 11, 2016.  However, Buckley Sandler seeks a final contingent

17  percentage-of-recovery award in the amount of $72,758.99, as set forth in Section IV, below, and

18  seeks an additional $4,676.65 for fees incurred preparing and prosecuting this application.

19  **B.    The Entire Fee Period**

20       For the Entire Fee Period, Buckley Sandler is seeking approval, on a final basis, of

21  compensation in the amount of $17,751,979.54, comprised of hourly-based fees for services

22  rendered of $7,871,706.43, $9,541,969.74 in fees for percentage-of-recovery awards, and

23  $338,303.37 in actual and necessary expenses.  As of the date hereof, the balance owed to Buckley

24  Sandler for fees is $72,758.99, inclusive of the remaining contingent fee being sought.[15]

25  _____

26  [15]  Through the life of the Bankruptcy Case to date, Buckley Sandler has actually been paid
        $17,679,220.55.  When combined with the unpaid contingent fee amount being sought, this
27      results in a 98-cent discrepancy as against the aggregate amounts requested in this Final Fee
        Application.  Buckley Sandler has been unable to account for the discrepancy, and thus has
28      reduced the actual payment that it is now requesting to receive by 98 cents.

1    / / /

2    / / /

3    / / /

4    **III.**

5    **NARRATIVE HISTORY OF THE CASE**

6    The following sections provide a narrative summary of the major events that have occurred

7    in the Bankruptcy Case.  Given the sheer number of different events and the complexity of many

8    of those events, the narrative proceeds in a general fashion in order to avoid an excessively

9    lengthy and minutia-filled discussion.[16]

10    **A.    General Background**

11    Pursuant to Local Bankruptcy Rule 2016-1(a)(1)(A)(iv), BuckleySandler incorporates by

12    reference the General Background (and the terms defined therein) set forth in the KTB&S Final

13    Fee Application.  KTB&S Final Application, at pp. 12-13 [Dkt. No. 1029, filed on October 17,

14    2017].

15    **B.    Summary of Activity During Entire Fee Period**

16    Pursuant to Local Bankruptcy Rule 2016-1(a)(1)(A)(iv), BuckleySandler incorporates by

17    reference the Summary of Activity During Entire Fee Period (and the terms defined therein) set

18    forth in the KTB&S Final Fee Application.  KTB&S Final Fee Application at pp. 13-19 [Dkt. No.

19    1029, filed on October 17, 2017].  As noted above, Buckley Sandler did not perform services on

20    behalf of the Trustee during the Remaining Period.

21    **IV.**

22    **CALCULATION OF CONTINGENT FEES**

23    Under the Second Employment Application, as approved by the Second Employment

24    Order, Recoveries include "[a]ny recovery by the Estate in the form of cash, as and when payable,

25    or property (including deferred payments) as and when reduced to cash, from litigation, settlement

26

---

27    [16]    Buckley Sandler requests that the Court take judicial notice of the previous declarations filed
in this case and of the entries on the docket for the Bankruptcy Case and the related adversary
28    proceedings, which provide evidence in support of this background and narrative.

and the like involving former insiders, former advisors, governmental units (including officials thereof), Federal depository institutions, regulatory and oversight agencies (including officials thereof), tax refund work…." Second Employment Application at 14 (Paragraph D). The Trustee has determined that the following Recoveries have been realized:

| RECOVERIES | AMOUNT |
|---|---|
| Settlement of the D&O litigation | $15,000,000.00 |
| D&O attorneys retainers | $900,000.00 |
| Officer loans | $163,306.39 |
| High-interest loans | $952,831.72 |
| Heller settlement | $250,000.00 |
| Orrick settlement | $349,153.99 |
| Dykema settlement | $200,000.00 |
| JPMorgan settlement | $190,000.00 |
| Allen Matkins judgment | $750,000.00 |
| Alston & Bird settlement | $50,000.00 |
| Bankers' Bond settlement | $60,000.00 |
| Tax Refunds | $58,593,252.20 |
| Workers' compensation insurance settlement | $450,000.00 |
| Residential Notes sale | $219,990.07 |
| Mortgage-Backed Securities sale | $27,000.00 |
| "Remnant Asset" sale | $15,000.00 |
| **GRAND TOTAL (Entire Case)** | **$78,170,534.37** |

Trustee Decl. ¶ 10. Detailed descriptions of (i) the Recoveries realized prior to March 10, 2014 are set forth in Section VI of the Eighth Interim Application, (ii) the Recoveries realized from March 11, 2014 through October 31, 2014 are set forth in Section V of the Ninth Interim Application, and (iii) the recoveries realized from November 1, 2014 through August 31, 2016 are set forth in the Tenth Interim Application (which applications are incorporated by reference herein) and will not be repeated here. *See* Eighth Interim Application at 16-17, 19; Ninth Interim Application at 13-14; Tenth Interim Application at 12-13. There have not been any additional

Recoveries after August 31, 2016 (other than the final quantification of the unused portion of the Discretionary Reserve, as discussed further below).

The following discussion applies the formula for allocating the Recoveries to contingent fees and expenses under the Court-approved Second Employment Application.

## A.    Expenses

Under paragraph D.1 of the Second Employment Application, the first Recoveries are to be used to satisfy the out-of-pocket expenses incurred on or after March 20, 2009 and paid by the Estate.  The out-of-pocket expenses paid by the Estate (or to be paid by the Estate) are as follows:

| EXPENSES | AMOUNT |
|---|---|
| Buckley Sandler Expenses<br>March 20, 2009 through February 29, 2012 (paid) | $325,450.20 |
| KTB&S Expenses<br>March 20, 2009 through March 31, 2012 (paid) | $103,282.19 |
| Buckley Sandler Expenses<br>March 1, 2012 through March 10, 2014 (paid) | $9,571.08 |
| KTB&S Expenses<br>April 1, 2012 through March 10, 2014 (paid) | $47,621.26 |
| Total paid for document scanning (e.g., Techlaw) | $350,158.17 |
| Total paid to expert witnesses | $898,743.44 |
| Buckley Sandler Expenses<br>March 11, 2014 through October 31, 2014 (paid) | $3,282.09 |
| KTB&S Expenses<br>March 11, 2014 through October 31, 2014 (paid) | $18,796.50 |
| Buckley Sandler Expenses<br>November 1, 2014 through August 31, 2016 | $0.00 |
| KTB&S Expenses<br>November 1, 2014 through August 31, 2016 (paid) | $36,077.07 |
| **Subtotal Through August 31, 2016** | **$1,792,982.00** |
| Buckley Sandler Expenses<br>September 1, 2016 – September 30, 2017 | $0.00 |

| KTB&S Expenses<br>September 1, 2016 – September 30, 2017 (unpaid) | $748.88 |
|---|---|
| **TOTAL Expenses (Entire Case)** | **$1,793,730.88** |

Trustee Decl. ¶ 11.

As shown, the first $1,792,982.00 of the Recoveries are allocated in respect of out-of-pocket expenses incurred on behalf of the Trustee through August 31, 2016. All of those amounts have been paid. In a concurrently-filed Final Fee Application, KTB&S seeks allowance and payment for $748.88 in aggregate additional expenses incurred between September 1, 2016 and September 30, 2017. If these expenses are approved and paid, the total applicable expenses paid by the Estate will be $1,793,730.88. Pursuant to paragraph D.1 of the Second Employment Application, this amount must be deducted from the total Recoveries of $78,170,534.37, leaving a net balance of $76,376,803.49.

/ / /

/ / /

**B.    Contingent Hourly Fees**

The contingent fees due KTB&S and Buckley Sandler are comprised of two components: (1) a contingent hourly fee under paragraph D.2 of the Second Employment Application, and (2) a contingent percentage-of-recovery award under paragraph D.4. Under paragraph D.2, "[i]f any funds remain in the Recoveries after payment of all expenses per the preceding paragraph, the next dollars shall compensate KTB&S and Buckley Sandler for such amounts as they deferred from their normal hourly rates." Second Employment Application at 14-15. As discussed above, these fees are calculated at *75%* of the hourly rates in effect for KTB&S and Buckley Sandler in *2009*, regardless of when the fees were incurred, resulting in a substantial benefit to the Estate – in addition to the substantial benefit realized by the Estate in bearing these hourly fees on a contingent basis.

Pursuant to the Eighth Interim Order, Buckley Sandler earned and was awarded on an interim basis $3,828,204.56 in contingent hourly fees. Under the same order, KTB&S incurred and was awarded $3,081,036.38 in fees at these reduced rates.

15

1       Pursuant to the Ninth Interim Order, KTB&S earned and was awarded on an interim basis

2 an additional $568,088.63 in contingent hourly fees and, under the same order, Buckley Sandler

3 incurred and was awarded an additional $43,501.87 in contingent hourly fees.  Pursuant to the

4 Tenth Interim Order, KTB&S earned and was awarded on an interim basis an additional

5 $309,336.38 in contingent hourly fees and, under the same order, BuckleySandler incurred and

6 was awarded an additional $0 in contingent hourly fees.  As explained further below, these

7 amounts were within the Discretionary Reserve, leaving $440,663.62 of the Discretionary Reserve

8 unused as of August 31, 2016.

9       As set forth in KTB&S's Final Fee Application [Dkt. No. 1029], KTB&S has incurred an

10 additional $16,017.00 in contingent hourly fees during the Remaining Period.  In addition,

11 KTB&S and Buckley Sandler have budgeted for up to $15,000 and $4,675.65 ($5,000 net of a

12 small existing retainer)[17] in additional hourly fees through case closing.  If approved, these fees

13 and the fees described above are payable from the $76,376,803.49 in net Recoveries referenced in

14 the last sentence of the previous section, leaving a balance of $68,510,943.02.

15 **C.**    **Estate Reimbursement**

16       Before the contingent percentage-of-recovery award may be calculated, paragraph D.3 of

17 the Second Employment Application requires that certain of the net Recoveries be applied to

18 reimburse the Estate for the non-contingent hourly fees previously paid to KTB&S and Buckley

19 Sandler under the fee cap.  Specifically, paragraph D.3 provides that "[i]f any funds remain in the

20 Recoveries after payment of all expenses and deferred fees per the preceding two paragraphs, the

21 next dollars shall reimburse the Estate for … the lesser of $5.5 million and the amount actually

22 paid to KTB&S and [Buckley Sandler] for services on or after March 20, 2009…."  Second

23 Employment Application at 14.  The lesser of these two numbers is $5.5 million.  Accordingly,

24

25

---

26 [17] Buckley Sandler received $324.35 in refunds from vendors whose bills Buckley Sandler paid
27 and then received reimbursement from the Trustee.  Since this amount is owed to the Estate,
Buckley Sandler has credited it against the amount sought in connection with preparing
28 Buckley Sandler's Final Application.

1  $5,500,000 must be subtracted from the $68,510,943.02 in net Recoveries referenced in the

2  preceding paragraph for the benefit of the Estate, leaving a balance of $63,010,943.02.

3  **D.     Prior Discretionary Reserve**

4          As noted above, contingent hourly fees are deducted from Recoveries before the

5  contingent percentage recovery is calculated.  As a result, under the formula, the final amount of

6  the contingent percentage award payable to each of KTB&S and Buckley Sandler may fluctuate

7  depending on the amount of additional hourly fees incurred by each of those firms.

8          For this reason, and to avoid overpaying either firm, in the Tenth Interim Order the Court

9  authorized the Trustee, in his discretion, to impose a reserve on the Recoveries of up to $750,000

10 for future hourly fees that may be incurred by KTB&S and Buckley Sandler in this case (the

11 "Discretionary Reserve").  The Trustee imposed a Discretionary Reserve in the full $750,000

12 amount.  In KTB&S's Eleventh Interim Application [Dkt. No. 1018], KTB&S sought approval of

13 $309,336.38 in contingent hourly fees.  And, as set forth in KTB&S's Final Fee Application [Dkt.

14 No. 1029], KTB&S has incurred an additional $16,017.00 in contingent hourly fees during the

15 Remaining Period.

16 / / /

17 / / /

18 / / /

19 / / /

20         Ultimately, $345,029.03 of the Discretionary Reserve has been or may be incurred in

21 hourly fees by KTB&S and Buckley Sandler combined,[18] leaving $404,970.97 of the

22 Discretionary Reserve remaining as net Recoveries.

23

24

---

25 [18] This aggregate incurred amount is calculated assuming the maximum amounts requested by
   the law firms in respect of the preparation and prosecution of their final fee applications and
26 assisting the Trustee with any case-closing-related matters – $15,000 and $4,675.65 ($5,000
   net of a small existing retainer), respectively – will be utilized in full.  To the extent the full
27 amounts are not utilized, the law firms do not intend to seek to recalculate the unused amount
   of the Discretionary Reserve, which would be beneficial to the Estate.
28

**E.    Contingent Percentage Fee**

The contingent percentage-of-recovery fees are calculated by taking the net Recoveries remaining after applying all of the aforementioned deductions and, then applying the "waterfall" formula set forth in Paragraph D.4 of the Second Amended Application:

a. Of the next $20 million or portion thereof, 12% shall be paid to BuckleySandler and 8% to KTB&S.  The balance (80%) shall remain in the Estate to be distributed as required by applicable law;

b. Of the next $20 million or portion thereof, 15% shall be paid to BuckleySandler and 10% to KTB&S.  The balance (75%) shall remain in the Estate to be distributed as required by applicable law; and

c. Of all remaining amounts, if any, 18% shall be paid to BuckleySandler and 12% to KTB&S.  The balance (70%) shall remain in the Estate to be distributed as required by applicable law.

The following chart shows the application of that waterfall to the amount of available Recoveries.  At the bottom of the chart, the total amount of the contingent percentage award for each firm is adjusted to reflect the previous contingent percentage award actually paid to each firm under the Eighth Interim Order, the Ninth Interim Order, and the Tenth Interim Order.[19]

| **AVAILABLE RECOVERIES**<br>(Balance From End of Section IV.C) | $63,010,943.02 |
|---|---|
| First $20 million | $20,000,000.00 |
| KTB&S (8%) | $1,600,000.00 |
| Buckley Sandler (12%) | $2,400,000.00 |
| Next $20 million | $20,000,000.00 |
| KTB&S (10%) | $2,000,000.00 |
| Buckley Sandler (15%) | $3,000,000.00 |
| Remaining Amounts | $23,010,943.02 |

---

[19] As a cross-check on the calculations, the unpaid balances for KTB&S and Buckley Sandler match the amounts calculated when the unused amount of the Discretionary Reserve ($404,970.97), less the incremental KTB&S expenses ($748.88), is multiplied by the firms' respective contingency ratios (12% = $48,506.65; 18% = $72,759.97).  This is a logical result since everything else has remained constant since the prior interim fee period, other than the incurrence of additional KTB&S expenses and hourly fees during the Remaining Period, which were in amounts that were covered by the previously-established Discretionary Reserve, and the resulting ability to quantify the unused reserved amounts from which the final contingency fees may then be calculated.

|  |  |
|---|---|
| KTB&S (12%) | $2,761,313.16 |
| Buckley Sandler (18%) | $4,141,969.74 |

**KTB&S TOTAL – $6,361,313.16**

| Previously Paid | $6,312,806.51 |
|---|---|
| Unpaid Balance | $48,506.65 |

**BUCKLEY TOTAL – $9,541,969.74**

| Previously Paid | $9,469,209.77 |
|---|---|
| Unpaid Balance | $72,759.97 |

## V.

## SUMMARY OF SERVICES RENDERED

**A.      Project Billing and Narrative Statement of Services Rendered**

In accordance with the applicable U.S. Trustee Guidelines, Buckley Sandler has categorized all services performed for which compensation is being sought.  Buckley Sandler has attempted to place the services performed in the category that best relates to the service provided.  Because certain services may relate to one or more categories, however, services pertaining to one category may, in fact, be included in another category.  Buckley Sandler established the following billing categories:[20]

---

[20] Although Buckley Sandler created a more comprehensive list of billing categories at the outset of its representation of the Trustee (*see, e.g.*, Dkt. No. 776 at 19-20 and Ex. D thereto), most of those matters remained inactive throughout the Case.  *See Generally Exhibit* 2 (listing fees, by matter).  Accordingly, this Application only discusses the matters in which Buckley Sandler billed time for its services.

| Entire Fee Period (March 23, 2009 – September 30, 2017) | | |
|---|---|---|
| **Project Categories** | **Total Hours Billed** | **Total Fees Billed** |
| 02 – Asset Analysis and Recovery | 19.2 | $5,321.63 |
| 20 – Government Affairs | 787.4 | $282,645.38 |
| 21 – Insurance | 220.1 | $70,399.50 |
| 23 – Investigations & Review | 6,626.2 | $1,926,092.24 |
| 25 – Litigation | 19,413.3 | $5,368,856.44 |
| 28 – Non-working travel time | 286 | $85,935.00 |
| 33 – Retention and Fee Matters | 670.6 | $192,545.24 |
| **Total:** | **28,022.8** | **$7,931,795.43** |

### 1.    Asset Analysis and Recovery – 02

This category included time spent identifying potential real property to which the Debtor's estate may be able to assert an ownership claim.  This matter category only was used in connection with Buckley Sandler's First Interim Application [Dkt. No. 342].  Following that interim fee period, all time spent by Buckley Sandler identifying and recovering assets for the Estate was charged to Matter 23 (Investigations and Review, described below).

Fees:    $5,321.63    Hours:    19.2    (Entire Fee Period)

### 2.    Government Affairs – 20

Shortly after the Trustee's appointment as interim trustee, he learned that the FDIC was in possession of substantially all of the Debtor's books and records.  Buckley Sandler attorneys expended a substantial amount of effort to obtain access to these books and records.  In addition to time spent communicating with the FDIC's attorneys about the Debtor's books and records and other matters regarding the Debtor, time billed to this Matter Category consisted primarily of (1) preparation for presentations made to the FDIC, (2) research and analysis of the potential benefits of cooperating with the FDIC in bringing claims on behalf of the Estate, (3) research and analysis of claims against the FDIC, and (4) work performed with respect to the disputed furniture, fixtures and equipment ("FF&E"), including reviewing documents and preparing for interviews.  This

1    matter category only was used in connection with Buckley Sandler's First and Second Interim

2    Applications [Dkt. Nos. 342 and 390].  Following these interim fee periods, all time spent by

3    Buckley Sandler in connection with identifying and recovering the disputed FF&E was charged to

4    Matter 23 (Investigations and Review).   In addition, subsequent services performed in connection

5    with litigation involving the FDIC was charged to Matter 25 (Litigation).

6                    Fees:       $282,645.38       Hours:       787.4     (Entire Fee Period)

7        **3.    Insurance – 21**

8        Buckley Sandler's services in this Matter related to issues related to the D&O insurance

9    policies held by Debtor, including research related to, and preparation and service of, detailed

10   insurance notice letters to potential D&O defendants and the appropriate insurers in May 2009.

11   The insurance policies required the transmittal of these letters to preserve potential claims by the

12   Trustee. Time billed also included researching and analyzing various coverage issues (*e.g.*,

13   coverage exclusions).

14                   Fees:       $70,399.50        Hours:       220.1     (Entire Fee Period)

15       **4.    Investigations and Review – 23**

16       As Special Counsel, Buckley Sandler was charged with identifying assets and potential

17   claims on behalf of the Trustee.  Time spent on this matter included Buckley Sandler's efforts in

18   this regard, as well as work performed by Buckley Sandler attorneys on investigation into the

19   Debtor's financial affairs and other pre-litigation issues.  Specifically, this matter includes time

20   spent on: (1) preparation for witness interviews, time spent conducting such interviews, and

21   drafting interview memoranda, (2) review and analysis of millions of pages of documents related

22   to potential causes of action, including potential third-party claims, (3) legal and factual research

23   related to potential claims, including those related to the disputed FF&E, potential avoidable

24   transfers, and certain IndyMac tax refunds, (4) drafting of pleadings in connection with potential

25   causes of action, including the Compliant filed by the Trustee on November 13, 2009 in a related

26   Adversary Proceeding, (5) identification of a consulting expert and coordination with the

27   consulting expert related to potential claims, (6) coordination with counsel regarding third-party

28   discovery.

Fees:    $1,926,092.24    Hours:    6,626.2    (Entire Fee Period)

**5.    Litigation – 25**

The Bankruptcy Case involved significant, hard-fought litigation over many years.  Time billed on this matter primarily consisted of work related to the prosecution of the Trustee's Complaint in the D&O Adversary Proceeding, in which Buckley Sandler was lead counsel and which ultimately resulted in a $15 million settlement for the benefit of the Estate.  Such services performed by Buckley Sandler included (1) discovery-related activities, including preparing for and taking extensive discovery from the D&O defendants and certain third parties, preparing for and taking depositions, propounding and responding to discovery requests, and litigating various motions, including motions to dismiss and motions to compel production of documents and (2) activities related to mediation and settlement of the D&O Adversary Proceeding.

In addition, Buckley Sandler assisted the Trustee's professionals in litigating the Insurance Litigation (as defined in previous fee applications), and assisted KTB&S in activities related to the litigation of the Trustee's claims concerning the tax refunds (both in the lower courts and before the Ninth Circuit on appeal).  This work yielded over $58 million for the benefit of the Estate and established legal precedent on a national level.

Fees:    $5,368,856.44    Hours:    19,413.3    (Entire Fee Period)

**6.    Non-Working Travel Time - 28**

Buckley Sandler is headquartered in Washington, D.C., and the attorneys at the firm principally responsible for the matter are located in Washington, D.C.  Thus, although Buckley Sandler sought to minimize travel costs by conducting various meetings, interviews, and other events via telephone, in connection with certain Court hearings, mediation sessions, interviews, and depositions, certain attorneys were required to travel to, *e.g.*, Los Angeles, New York, and San Francisco.  To the extent that substantive work was performed by the attorney during travel, such time was charged to the applicable Matter Category.  Buckley Sandler charged only 50 percent of its regular rates for time incurred for non-working travel in this case.

Fees:    $85,935.00    Hours:    286    (Entire Fee Period)

7. **Fee and Retention Matters – 33**

As noted above, Buckley Sandler has filed 10 interim fee applications in its role as Special Counsel for the Trustee. Buckley Sandler drafted its own applications, and the services in this category pertain principally to the preparation of Buckley Sandler's fee applications.

Fees:    $192,545.24    Hours:    670.6    (Entire Fee Period)

## VI.

## SUMMARY OF COSTS AND EXPENSES

The U.S. Trustee Guidelines and Local Bankruptcy Rule 2016-1(a)(1)(F) require that an application seeking reimbursement of expenses include a summary listing of all expenses by category and month. Accordingly, annexed hereto as **Exhibit 3** is a summary of the reimbursable expenses incurred by Buckley Sandler on a monthly basis during the Entire Fee Period per expense category. Attached as **Exhibit 4** is an itemized list of Buckley Sandler's reimbursable expenses for the Entire Fee Period. The total of the costs and expenses incurred during the Entire Fee Period for which Buckley Sandler seeks final approval is $338,303.37.

To assist the Court in reviewing Buckley Sandler's request for reimbursement of the expenses incurred in connection with its representation of the Trustee, Buckley Sandler's accounting procedures for the general categories of costs and expenses for which it seeks reimbursement by this Final Fee Application are described below. The majority of the requested expenses are charged at rates customarily applied to Buckley Sandler's non-debtor clients.

A. **Legal Research**

In the course of Buckley Sandler's representation of the Trustee, it often was necessary and cost efficient to research legal and other issues by means of computer research services such as LEXIS/NEXIS, Westlaw, and PACER. Buckley Sandler bills the actual cost of these services directly to its clients without any surcharge. The total expenses incurred by Buckley Sandler in the Legal Research expense category during the Entire Fee Period were $24,537.39.

B. **Delivery Services**

When the exigencies of this case required, Buckley Sandler used messenger services and overnight courier services, such as Federal Express, to deliver documents. Buckley Sandler

1   charges its clients for the actual costs of such services, which includes service of process. The

2   total expenses incurred by Buckley Sandler in the Delivery Services expense category during the

3   Entire Fee Period were $8,873.29.

4   **C.    Court Fees**

5   Buckley Sandler bills the actual cost of court fees directly to its clients, without any

6   surcharge. The total expenses incurred by Buckley Sandler in the Court Fees expense category

7   during the Entire Fee Period were $4,043.09.

8   **D.    Transcript Fees**

9   This expense category includes actual costs incurred by Buckley Sandler for transcripts of

10  various hearings and depositions in the Debtor's case and the D&O Adversary Proceeding. The

11  total expenses incurred by Buckley Sandler in this category during the Entire Fee Period were

12  $9,944.71.

13  **E.    Conference Call and Long-Distance Telephone**

14  Buckley Sandler only seeks reimbursement for actual charges in this expense category,

15  which totaled $211.04 for the Entire Fee Period.

16  **F.    Printing and Duplicating**

17  Buckley Sandler occasionally engages outside services to perform such tasks as

18  photocopying documents. These outside services can efficiently perform larger projects that

19  would exceed Buckley Sandler's internal capabilities. Buckley Sandler charges its clients the rates

20  charged by these services, without any mark-up. The total expenses incurred by Buckley Sandler

21  in this category during the Entire Fee Period were $1,764.14.

22  **G.    Travel**

23  As noted above, the Buckley Sandler attorneys principally responsible for the matter are

24  located in Washington, D.C. Thus, although Buckley Sandler sought to minimize travel costs by

25  conducting various meetings, interviews, and other events via telephone, in connection with

26  certain Court hearings, mediation sessions, interviews, depositions, and meeting with the Trustee

27  and other affected constituencies, certain attorneys were required to travel to various locations,

28  including Los Angeles, New York, and San Francisco. This category includes travel expenses for

1  airfare, train, taxi, hotel, rental car, parking, and meals.  The total expenses incurred by Buckley

2  Sandler in this category during the Entire Fee Period were $111,288.60.

3  **H.      Mediation**

4      Buckley Sandler attorneys participated in various mediation sessions during the Entire Fee

5  Period.  In connection with these mediations, Buckley Sandler paid certain mediation fees directly

6  to JAMS, Inc., which totaled $21,813.52 during the Entire Fee Period.

7  **I.      Consulting Expert**

8      On February 22, 2010, this Court amended the terms of Buckley Sandler's and KTB&S's

9  employment, authorizing the firms to retain consulting experts with respect to the D&O Adversary

10  Proceeding, the Trustee's investigation, and/or any litigation or contested matter.  [Dkt. No. 418].

11  The Court's order further provided that Buckley Sandler and KTB&S "are authorized to bill the

12  estate as an expense all amounts due to the consulting experts as part of its fee application process

13  and are not required to attach billing records or the names of consulting experts in its fee

14  applications.  Amounts for such consulting experts will not be charged against the fee caps in the

15  Employment Application."  *Id.*  ¶ 3.b.  The total expenses incurred by Buckley Sandler in the

16  Consulting Expert expense category during the Entire Fee Period were $155,827.60.

17  **VII.**

18  **REQUEST FOR FINAL COMPENSATION**

19  **A.      The Requested Hourly Compensation and Expenses Are Reasonable**

20      Pursuant to Bankruptcy Code section 330(a)(1), the Court may award to professionals who

21  have been employed under Bankruptcy Code section 327 reasonable compensation for their

22  services, as well as reimbursement for all actual and necessary expenses.  11 U.S.C. § 330(a)(1).

23  As stated by the Ninth Circuit Court of Appeals in *Yermakov v. Fitzsimmons (In re Yermakov)*,

24  718 F.2d 1465, 1471 (9th Cir. 1983), "[t]he primary method used to determine a reasonable

25  attorney fee in a bankruptcy case is to multiply the number of hours expended by an hourly rate."

26  *See also In re Hunt*, 238 F.3d 1098, 1105 (9th Cir. 2001) (citing *In re Yermakov*).  Bankruptcy

27  Code section 330(a)(3) further provides that the Court "shall consider the nature, the extent and

28  the value of such services, taking into account all relevant factors."  11 U.S.C. § 330(a)(3).  These

25

1   factors include the time spent on the services, the rates charged for the services, whether the

2   services were necessary or beneficial, whether the services were performed within a reasonable

3   amount of time, whether the professional has demonstrated skill and experience in its field, and

4   whether the compensation is reasonable based on compensation customarily charged by

5   comparable professionals.

6        Buckley Sandler files this Final Fee Application seeking court authority to receive

7   compensation and reimbursement of expenses from the Estate consistent with the Second

8   Employment Application and applicable procedures established by the U.S. Trustee.  Under the

9   Second Employment Order, Buckley Sandler is entitled to receive payment in an amount equal to

10  100% of the allowed services rendered and expenses incurred pursuant to this Final Fee

11  Application up to the cap agreed to in the Second Employment Application.  In accordance with

12  the Second Employment Order, Buckley Sandler has charged only 75% of its 2009 hourly rates.

13  **B.    The Requested Contingency Fees Are Appropriate**

14       KTB&S and BuckleySandler are employed under Bankruptcy Code section 328(a) on a

15  contingency basis governed by detailed compensation formulas.  Under Bankruptcy Code section

16  328(a), "where the bankruptcy court has previously approved the terms for compensation of a

17  professional, when the professional ultimately applies for payment, the court cannot alter those

18  terms unless it finds the original terms 'to have been improvident in light of developments not

19  capable of being anticipated at the time of the fixing of such terms and conditions.'"  *In re*

20  *Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992).  As such, the contingency fee formula applicable to

21  Buckley Sandler's compensation was pre-approved and merely needs to be applied to the value

22  resulting based on the realized Recoveries, as detailed above.[21]

23

---

24  [21]  Although Buckley Sandler does not anticipate such an objection, any effort to revisit the
25  contingency fee arrangement now or attack the "reasonableness" of the contingency award
    would be baseless.  As stated by the Ninth Circuit in *Friedman Enters. v. B.U.M Int'l Inc. (In
26  re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000): "There is no question that a
    bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their
27  benefit to the estate if the court already has approved the professional's employment under 11
    U.S.C. § 328." *See also, e.g., Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re*

28

1       Nothing that has occurred since this Court authorized the Trustee to employ Buckley

2  Sandler has rendered the terms and conditions of Buckley Sandler's employment improvident.

3  Indeed, Buckley Sandler has skillfully rendered significant services, promptly bringing about

4  excellent results through Buckley Sandler's special experience and expertise in litigating the

5  specific issues presented in this case.

6       Given the highly favorable terms of the settlements achieved and the fact that everything

7  that occurred with respect to the litigation pursued by the Estate was foreseeable in April 2009, the

8  Court should decline any invitation to adjust the pre-approved contingency downward by

9  speculating as to what hourly fees might have been had the Estate been willing to take on the

10  litigation risk and able to fund counsel on that basis. *See, e.g., Riker, Danzig, Scherer, Hyland &*

11  *Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R.

12  869, 877-79 (S.D.N.Y. 2008) (reversing the bankruptcy court's reduction of counsel's contingent

13  fees and awarding the one-third contingent fee of $2.1 million due under the pre-approved fee

14  agreement), *aff'd* 552 F.3d 228 (2d Cir. 2009); *In re Merry-Go-Round Enters.*, 244 B.R. 327, 335-

15  38 (Bankr. D. Md. 2000) (approving a 40% contingent fee of $71 million notwithstanding that

16  such fees were almost 20 times what the fees would have been on an hourly basis, noting that it

17  would be contrary to public policy to revisit a preapproved contingency fee arrangement and

18  "discourage others among the most competent attorneys from undertaking similar high risk,

19  complex, commercial litigation in bankruptcy cases that a trustee may conclude is justified"").

20  Such an after-the-fact adjustment to the contingency fee would unfairly disregard the downside

21  risk of severely-reduced compensation that Buckley Sandler assumed when it accepted the

22  contingency engagement, and seriously undermine future bankruptcy trustees' and debtors-in-

23  possessions' ability to retain counsel on a contingency-fee basis, an ability without which such

24  clients could be unable to obtain counsel to zealously and competently advance their interests.

---

26  *Circle K Corp.)*, 279 F.3d 669, 673 (9th Cir. 2001) (instructing that a bankruptcy court is "not
permitted to engage in a § 330 reasonableness inquiry" when a professional is retained

27  pursuant to Bankruptcy Code section 328); *In re Reimers*, 972 F.2d at 1127-29 (reversing
bankruptcy court's reduction of special counsel's compensation when the court had previously

28  approved a fee arrangement providing for a contingent fee of 40% of recoveries).

1  *See, e.g.*, *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 896-99

2  (1st Cir. 1985) ("To deny the fee now because it exceeds time charges and looks high in hindsight

3  would penalize Sheehan for a job well done and would tell Sheehan and all other attorneys that

4  they should think twice before again working for businesses in reorganizations."); *In re Benassi*,

5  72 B.R. 44, 49 (D. Minn. 1987) (same).

6       Under these circumstances, the limited standard set forth in Bankruptcy Code section

7  328(a) has been satisfied, and the requested contingency compensation should be approved.

8  **VIII.**

9  **CONCLUSION**

10       Buckley Sandler believes that the legal services for which compensation is sought in this

11  Final Fee Application have been extremely beneficial to the Estate, the costs incurred have been

12  necessary and proper, and the sums requested for the services rendered and the costs incurred are

13  fair and reasonable.  Indeed, Buckley Sandler submits that the ultimate Recoveries realized and

14  now available for the Debtor's creditors are extraordinary, particularly compared to the results

15  achieved in many other failed bank holding company cases.  There can be no question that this has

16  been a highly successful chapter 7 case under the circumstances.

17      **WHEREFORE,** Buckley Sandler respectfully requests entry of an order of this Court: (1)

18  allowing, on a final basis, compensation to Buckley Sandler in the amount of $17,751,979.54,

19  comprised of hourly-based fees for services rendered of $7,871,706.43, fees for contingent

20  percentage-of-recovery awards of $9,541,969.74, and expenses incurred of $338,303.37; (2)

21  authorizing and directing the Trustee to pay the unpaid balance of that amount of $72,758.99; (3)

22  approving and allowing payment for additional fees and expenses incurred preparing and

23  prosecuting this application, including appearing at the hearing thereon, not to exceed $4,675.65;

24  and (4) granting Buckley Sandler any other relief that this Court deems necessary and appropriate.

25

26

27

28

28

1   Dated: October 19, 2017

                             **BUCKLEY SANDLER LLP**

By: _____

Andrew L. Sandler *(Admitted Pro Hac Vice)*
Benjamin B. Klubes *(Admitted Pro Hac Vice)*
1250 24th Street N.W., Suite 700
Washington, D.C. 20037
(202) 349-8000

*Special Counsel for Chapter 7 Trustee*
*Alfred H. Siegel*

29

# DECLARATION OF BENJAMIN B. KLUBES

I, Benjamin B. Klubes, do hereby declare as follows:

1.      I am over eighteen years of age.  If called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

2.      I am admitted *pro hac vice* in this case pursuant to Local Bankruptcy Rule 2090-1(b).  I am a partner of BuckleySandler LLP ("Buckley Sandler"), which serves as special counsel for Alfred H. Siegel, solely in his capacity as Chapter 7 Trustee in the above-captioned chapter 7 case of IndyMac Bancorp, Inc. ("Debtor").

3.      I submit this declaration in support of the *Final Application of Buckley Sandler LLP for Allowance and Payment of Fees and Expenses Incurred as Bankruptcy Counsel for the Chapter 7 Trustee for the Period March 23, 2009 Through September 30, 2017* (the "Final Fee Application").

4.      I helped prepare, am familiar with, and have read the Application.  To the best of my knowledge, the facts therein are true.

5.      I am one of the BuckleySandler attorneys principally responsible for rendering services to the Debtor.  The other principally responsible attorney is Andrew L. Sandler.  Other BuckleySandler attorneys rendered services on discrete matters from time to time, as necessary.

6.      The billing records filed separately as **Exhibit 6** are true and correct copies of Buckley Sandler's billing records for this case, as prepared by Buckley Sandler's billing department based on Buckley Sandler's records and the applicable billing software.  The compensation and expense reimbursements requested in the Final Fee Application are billed at rates, and in accordance with practices, no less favorable than those customarily used by Buckley Sandler in other debtor and non-debtor engagements.  In fact, in accordance with the *Application of Alfred H. Siegel, Chapter 7 Trustee, for Order (1) Authorizing Employment of BuckleySandler LLP as Special Counsel, (2) Amending the Order Authorizing Employment of Klee, Tuchin, Bogdanoff & Stern LLP as Bankruptcy Counsel, and (3) Approving Reduced Hourly and Contingency Fee Compensation Arrangements for Both Firms Pursuant to Bankruptcy Code Sections 327(a) and 328(a)* (the "Second Employment Application"), the billing statements reflect

1   75% of Buckley Sandler's 2009 rates (not including fees voluntarily written off) – resulting in a

2   substantial discount.

3         7.     In addition to only being allowed 75% of its customary hourly rates, Buckley

4   Sandler agreed in the Second Employment Application that it would not adjust its hourly rates

5   over the course of the case.  This means that Buckley Sandler is using the rates charged for its

6   attorneys in 2009, even though Buckley Sandler has increased the rates of all its attorneys since

7   that time, to reflect the changing demand for attorneys and the attorneys' additional experience.

8   For attorneys who joined Buckley Sandler after 2009, their rates for work in connection with this

9   case were frozen at 75% of the firm's 2009 rates, depending on their particular seniority (*e.g.*, a

10  mid-level associate who began work on the case in 2012 billed the Estate 75% of $385, which was

11  the 2009 pre-discounted mid-level associate rate set forth in the Second Employment Application).

12        8.     Moreover, for example, while the hourly rate for Andrew Sandler was $930 in

13  2009, and my rate was $825 in 2009, those rates have increased over the years, reaching $1,145

14  and $995 in 2014, which was the last year Buckley Sandler attorneys billed for their services.  In

15  these examples, the rates of these attorneys have increased approximately 23% and 20% over the

16  course of the case, yet none of these increases have been borne by the Estate.

17        9.     Neither Buckley Sandler nor any of its partners has any agreement or

18  understanding of any kind or nature to divide, pay over, or share any portion of the fees or

19  expenses to be awarded to Buckley Sandler with any other person or attorney except as among the

20  partners of Buckley Sandler.

21       10.    Attorneys at Buckley Sandler have reviewed Buckley Sandler's time records in this

22  case on a regular basis, reviewing each line-item entry.  To the best of my knowledge,

23  information, and belief, formed after reasonable inquiry, all the work that has been performed by

24  Buckley Sandler is within the scope of work contemplated by the orders authorizing Buckley

25  Sandler's employment in this case.

26       11.    I am familiar with the Bankruptcy Code, the Federal Rules of Bankruptcy

27  Procedure, the Local Bankruptcy Rules, and the Guidelines for Reviewing Applications for

28  Compensation & Reimbursement of Expenses Filed Under 11 U.S.C. § 330, 28 C.F.R. § 58,

31

1  Appendix A (the "U.S. Trustee Guidelines"), which are promulgated by the Office of the United

2  States Trustee. I believe that the Final Fee Application complies with applicable law and the

3  requirements of the U.S. Trustee Guidelines. Specifically, I have reviewed Local Bankruptcy

4  Rule 2016-1 and I believe that the Final Fee Application complies with the rule, to the extent that

5  it applies to this fee application.

6         I declare under penalty of perjury that the foregoing is true and correct to the best of my

7  knowledge, information, and belief. Executed on October 19, 2017, at Washington, D.C.

8

9         _____

10                        BENJAMIN B. KLUBES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28